**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE GOLDBERG,        ) | |
|        ) | |
|        Plaintiff,        ) | |
|        ) | |
|        v.        ) | Case No. 09 C 6455 |
|        ) | |
| 401 NORTH WABASH VENTURE LLC and        ) | |
| TRUMP CHICAGO MANAGING        ) | |
| MEMBER, LLC,        ) | |
|        ) | |
|        Defendants.        ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff, Jacqueline Goldberg, filed a complaint ("Complaint") against 401 North

Wabash Venture LLC ("401 North Wabash") and Trump Chicago Managing Member, LLC

("Trump") asserting claims for breach of contract and violations of the Illinois Condominium

Act ("Condo Act"), the Illinois Consumer Fraud and Deceptive Business Practices Act

("ICFA"), the Interstate Land Sales Full Disclosure Act ("ILSA"), and the Illinois Securities Act

("ISA").[1]  Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6) ("Motion"), which the Court grants in part and denies in part for the following reasons.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a

claim upon which relief may be granted."  *Hallinan v. Fraternal Order of Police of Chicago*

*Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  Pursuant to Rule 8(a)(2), a complaint must

---

[1]  The Court previously dismissed Deutsche Bank Trust Company Americas and the only count in which that party was named as a defendant, Count VI, which sought to state a claim for constructive trust.  (*See* R. 33, 2/10/10 Minute Order.)

include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.E.2d 1 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.E.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (court construes complaint in light most favorable to plaintiff, drawing all reasonable inferences in plaintiff's favor). Further, in deciding the Motion, the Court can consider exhibits attached to the Complaint. *See Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

# BACKGROUND

As alleged in her Complaint, Plaintiff, Jacqueline Goldberg, entered into agreements ("Purchase Agreements") with Defendants to purchase two hotel condominium units ("HCUs") at Trump International Hotel and Tower ("Trump Tower"), located at 401 North Wabash in Chicago, Illinois.  (R. 1-1, Compl. at ¶ 1.)  Defendant 401 North Wabash's managing member is Defendant Trump, and its principal business has been constructing Trump Tower and marketing HCUs.  (*Id.* at ¶¶ 5-6.)

Trump Tower is a ninety-two-story building that consists of private condominium residences, HCUs, a health club, meeting rooms, ballrooms, public parking, parking for the condominium residences, retail space, restaurants, concierge desk, and lobby, among other things.  (*Id.* at ¶¶ 8-9.)  There are approximately 339 HCUs in Trump Tower, about 55% of which the Trump Defendants had sold between 2003 and September 2009.  (*Id.* at ¶ 11.)

Prior to entering into the Purchase Agreements with Plaintiff, the Trump Defendants provided her with various written materials, including documents entitled (1) Trump International Hotel Owner Use and Rental, (2) Frequently Asked Questions ("FAQ"), (3) Project Overview, (4) Property Reports, and (5) Amended Property Reports.  (*Id.* at ¶¶ 14-17, 20.)  The FAQ provided, among other things, that:

- "The hotel program will be managed through a specialized computer reservation system that assigns 'rotation points' to guestrooms as they are occupied.  The hotel rooms with the least number of rotation points are the next to be rented in the system."[2]

- "When an owner, or the designated guest of an owner, occupies their personal

---

[2] There was an exception to the rotation-points system if a renter requested a particular HCU.  (*Id.* at ¶ 21.)

guestroom, the reservation system does not assign any points for that night.
Therefore, you are encouraged to stay in your personal guestroom since the
reservation system will make up for the 'vacancy' of the room after your
departure."

(*Id.* at ¶¶ 18-19.)

Additionally, the Trump Defendants represented to Plaintiff that:

- At no additional cost beyond the monthly assessment, each HCU owner would
  have a membership with the Trump Tower's health club, which the owner could
  use at any time. (*Id.* at ¶¶ 21, 29.)

- Each HCU owner would own a percentage of the common elements, including
  Trump Towers' meeting/function rooms, laundry facilities, storage areas, and
  ballrooms. Accordingly, the Condominium Association would receive a share of
  revenues, estimated to be roughly $5 million per year, generated from the meeting
  rooms and ballrooms. (*Id.* at ¶¶ 21, 28, 32, 36.)

- When HCU owners rented their units, they would be entitled to receive the gross
  revenue from the rental, which consisted of the rental rate, less a per-use fee,
  HCU monthly costs, credit-card fees, and travel-agent fees. (*Id.* at ¶ 21.)

Plaintiff entered into the first of the Purchase Agreements, to purchase HCU 2238 for

$1,239,500, on August 2, 2006, paying an earnest money deposit at that time of $114,950. (*Id.* at

¶¶ 50, 54.) Plaintiff entered into the second of the Purchase Agreements, to purchase HCU 2240

for $971,687, on August 8, 2006, paying an earnest money deposit at that time of $92,668.70.

(*Id.* at ¶¶ 51, 55.) The Purchase Agreements provided Plaintiff with (1) an interest in the

common elements of meeting/function rooms, storage rooms, laundry facilities, and ballrooms;

and (2) a membership in the Trump Tower health club that entitled Plaintiff to use the health

club at any time. (*Id.* at ¶¶ 52-53, 56-57.) Furthermore, the Purchase Agreements provided,

Seller reserves the right, in its sole and absolute discretion, to modify the
Condominium Documents, together with the Articles of Incorporation of the
Association and the Statement of Record required by the Interstate Land Sales
Full Disclosure Act (the 'HUD Report'), provided that Seller shall notify
Purchaser or obtain the Purchaser's approval of any changes in the Condominium

Documents, the HUD Report and any such other documents, as the case may be, when and if such notice or approval is required by law.[3]

(R. 1-12, Exs. L, M, Purchase Agreements at § 4(a).)  By April 2009, Plaintiff had paid to the Trump Defendants a total of about $516,487.40 toward the purchase of her HCUs.  (R. 1-1, Compl. at ¶ 72.)

The October 1, 2007, and October 25, 2007, Property Reports, which Plaintiff received in October and November 2007, provided that HCU owners would no longer own a percentage of the meeting/function rooms, ballrooms, storage areas, and laundry facilities.  (*Id.* at ¶¶ 39, 41, 73-74.)  They further provided that HCU owners' health club memberships would only entitle them to use the health club when they occupied their HCU.  (*Id.* at ¶ 41.)  None of these changes was approved by 75% of the HCU owners.  (*Id.* at ¶ 43.)  Also in October 2007, the Trump Defendants issued to Plaintiff an HCU Rental Agreement, which provided that:

- Owners' use of their HCU would have an adverse impact on their HCU's priority in the rental-reservation allocation.

- Each time owners rented their HCU, they would be charged an administrative fee of 3% of the gross room rental fee, a $6-per-night-reservation fee, and a $30-per-night-marketing cost.

- Trump Tower's Hotel Manager would have "sole discretion" to allocate HCU rental reservations.

(*Id.* at ¶ 47.)

On June 3, 2009, the Trump Defendants agreed with Plaintiff not to proceed with the closings on her HCUs.  (*Id.* at ¶ 75.)  Plaintiff filed her Complaint on September 10, 2009,

---

[3]  The "Condominium Documents" included the "Condominium Declaration, By-Laws, Budget, Floor Plans and such other documents required by Chapter 13-72 of the Municipal Code of Chicago and Section 22 of the [Condo] Act."  (R. 1-12, Exs. L, M, Purchase Agreements at § 4(a).)

alleging that Defendant 401 North Wabash breached the Purchase Agreements (Count V) and

that Defendants violated § 22 of the Condo Act (Count I), § 2 of the ICFA (Count II), §§ 1703

and 1709 of the ILSA (Count III), and §§ 5, 8, and 13 of the ISA (Count IV).

## ANALYSIS

## I.      Illinois Condominium Act

Plaintiff alleges that Defendants violated the Condo Act by (1) failing to disclose the

information contained in the October 2007 Property Reports prior to sale, and (2) making

material changes in the October 2007 Property Reports without approval by seventy-five percent

of the HCU buyers in Trump Tower.  The Condo Act provides in relevant part:

> All of the information required by this Section which is available at the time shall
> be furnished to the prospective buyer before execution of the contract for sale.
> Thereafter, no changes or amendments may be made in any of the items furnished
> to the prospective buyer which would materially affect the rights of the buyer or
> the value of the unit without obtaining the approval of at least 75% of the buyers
> then owning interest in the condominium.  If all of the information is not available
> at the time of execution of the contract for sale, then the contract shall be voidable
> at option of the buyer at any time up until 5 days after the last item of required
> information is furnished to the prospective buyer, or until the closing of the sale,
> whichever is earlier.  Failure on the part of the seller to make full disclosure as
> required by this Section shall entitle the buyer to rescind the contract for sale at
> any time before the closing of the contract and to receive a refund of all deposit
> moneys paid with interest thereon at the rate then in effect for interest on
> judgments.

765 Ill. Comp. Stat. § 605/22.

The Condo Act's purpose "is 'to prevent prospective purchasers from buying a unit

without being fully informed and satisfied with the financial stability of the condominium as

well as the management and rules and regulations which affect the unit.'"  *Mikulecky v. Bart*,

355 Ill. App. 3d 1006, 1012, 825 N.E.2d 266, 272, 292 Ill. Dec. 10, 16 (Ill. App. Ct. 2004)

(quoting *Nikolopulos v. Balourdos*, 245 Ill. App. 3d 71, 77, 185 Ill. Dec. 278, 614 N.E.2d 412

(1993)); *see also Giacomazzi v. Urban Search Corp.*, 86 Ill. App. 3d 429, 435, 407 N.E.2d 621, 626, 41 Ill. Dec. 123, 128 (Ill. App. Ct. 1980). Accordingly, "where an initial sale or offering for a sale is made, the seller must make full disclosure of and provide copies to prospective buyers of certain information. . . ." *Borys v. Josada Builders, Inc.*, 110 Ill. App. 3d 29, 30, 441 N.E.2d 1263, 1265, 65 Ill. Dec. 749, 751 (Ill. App. Ct. 1982). "[I]f this information is not available at the time the contract for sale is executed, then the contract is voidable at the option of the buyer up until five days after the last item of required information is furnished to the prospective buyer, or until the closing of the sale, whichever is earlier." *Id.* at 30-31, 441 N.E.2d at 1265, 65 Ill. Dec. at 751. "If a seller fails to make full disclosure as required by [Section 22], then the buyer is entitled to rescind the contract and receive a refund of all deposit moneys paid plus interest." *Id.* at 31, 441 N.E.2d at 1265, 65 Ill. Dec. at 751. "The remedy of rescission due to the seller's failure to disclose is provided to the prospective buyer only as a remedy prior to closing." *Luster v. Jones*, 70 Ill. App. 3d 1019, 1033, 388 N.E.2d 1029, 1038, 27 Ill. Dec. 66, 75 (Ill. App. Ct. 1979); *Johnson v. Nationwide Indus., Inc.*, 450 F. Supp. 948, 954 (N.D. Ill. 1978).

## A.     Non-Disclosure

Defendants argue that Plaintiff's non-disclosure claim fails because: (1) Plaintiff contractually agreed that she had received all disclosures that the Condo Act required, (2) the claim is implausible because it does not allege that the undisclosed information was available at the time Plaintiff entered into the Purchase Agreements, and (3) the claim is time-barred. Plaintiff responds that (1) there is no authority for the proposition that information must have been available at the time she signed the Purchase Agreements for the Condo Act to have required disclosure, and (2) her pleading burden should be relaxed "since she has not yet had an

opportunity to conduct discovery on her claims." (R. 31, Resp. Br. at 11-12.)

Plaintiff's first argument is belied by the Condo Act's plain language, which provides that "[a]ll of the information required by this Section *which is available at the time* shall be furnished to the prospective buyer before execution of the contract for sale." 765 Ill. Comp. Stat. Ann. § 605/22 (emphasis added). Additionally, it would, of course, be difficult to disclose information that is not available.

Furthermore, Plaintiff's Condo Act claim does not allege that the purportedly-undisclosed information was available at the time that she entered into the Purchase Agreements.[4] Indeed, in entering into the Purchase Agreements, Plaintiff "acknowledge[d] that Seller delivered to [her] prior to [her] execution of this Purchase Agreement a copy of . . . all other items required by Section 22 of the [Condo] Act. . . . [She] acknowledges that [she] has had the opportunity to review [them]." (R. 1-12, Exs. L, M, Purchase Agreements at § 4(a).) Plaintiff's allegation that Defendants violated the Condo Act by failing to earlier disclose the information contained in the October 2007 Property Reports and the HCU Rental Agreement does not save her claim because, without an allegation or reasonable inference that the purportedly-undisclosed information was available at the time that Plaintiff entered into the Purchase Agreements, the Complaint "do[es] not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950.

As to Plaintiff's second argument, the Supreme Court has roundly rejected her contention that the pleading requirements are relaxed when a plaintiff has not yet had an opportunity to

---

[4] While that allegation appears in later Counts in the Complaint, the Condo Act claim does not incorporate those allegations by reference. (*See* R. 1-1, Compl. at 16 .)

conduct discovery.  *See Iqbal*, 129 S.Ct. at 1954 ("Because respondent's complaint is deficient

under Rule 8, he is not entitled to discovery, cabined or otherwise."); *Twombly*, 550 U.S. at 559,

127 S.Ct. at 1967 ("It is no answer to say that a claim just shy of a plausible entitlement to relief

can, if groundless, be weeded out early in the discovery process through careful case

management given the common lament that the success of judicial supervision in checking

discovery abuse has been on the modest side." (internal quotation and citation omitted)).  The

Seventh Circuit has echoed the Supreme Court, holding that a plaintiff's "argument that the

exact details of the contract will become clear during discovery runs counter to the holding of

*Twombly*, which dictates that the complaint itself must contain sufficient factual detail to

describe the parameters of the contract before discovery may commence."  *Bissessur v. Indiana

Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009); *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th

Cir. 2009) ("The Court's specific concern in *Bell Atlantic* was with the burden of discovery

imposed on a defendant by implausible allegations perhaps intended merely to extort a

settlement that would spare the defendant that burden.").  As such, the Court will not excuse the

deficiency of the failure-to-disclose claim on the grounds that Plaintiff has not yet had the

benefit of discovery.

Finally, Defendants argue that Plaintiff did not rescind the Purchase Agreement within

the Condo Act's five-day provision, and Plaintiff responds that the five-day provision does not

apply because "[t]he information was available to the Trump Defendants before Plaintiff signed

her Purchase Agreements."  (R. 31, Resp. Br. at 13.)  The Condo Act does contain a time

limitation that "the contract shall be voidable at option of the buyer at any time up until 5 days

after the last item of required information is furnished to the prospective buyer, or until the

closing of the sale, whichever is earlier."  765 Ill. Comp. Stat. § 605/22.  That provision only

applies, however, "[i]f all of the information is not available at the time of execution of the

contract for sale."  *Id.*  Plaintiff's argument assumes that the information was available at the

time Plaintiff entered into the Purchase Agreements.  As explained above, however, there is no

inference or allegation in the Complaint that the information was available at that time.

### B.    Amendment

Plaintiff's improper-amendment claim fares no better.  Defendants argue that the

amendment claim fails because there is no statutory remedy under the Condo Act for a failure to

obtain approval for the amendment, and Plaintiff responds that Defendants' interpretation would

render meaningless the Condo Act's purpose of encouraging full disclosure.  (R. 31, Resp. Br. at

12.)  A close examination of the Condo Act reveals that there is no statutory remedy for failing

to obtain approval for the amendment from 75% of the HCU owners.

Under Illinois law, "[t]he most fundamental rule of statutory construction is to give effect

to the intent of the legislature."  *King v. First Capital Fin. Servs. Corp.*, 215 Ill. 2d 1, 26, 828

N.E.2d 1155, 1169, 293 Ill. Dec. 657, 671 (Ill. 2005).  "The best evidence of legislative intent is

the language used in the statute itself and that language must be given its plain and ordinary

meaning."  *Id.*  "When the statute's language is clear, it will be given effect without resort to

other aids of statutory construction."  *Metzger v. DaRosa*, 209 Ill. 2d 30, 35, 805 N.E.2d 1165,

1167, 282 Ill. Dec. 148, 150 (Ill. 2004).  "'Under the guise of construction, a court may not

supply omissions, remedy defects, annex new provisions, substitute different provisions, add

exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain

meaning of language employed in the statute.'"  *King*, 215 Ill. 2d at 26, 828 N.E.2d at 1169, 293

Ill. Dec. at 671 (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309-10, 257 Ill. Dec. 406, 753 N.E.2d 1032 (Ill. 2001)).

Where – as here – an Illinois statute does not contain specific language granting a private right of action, a court may nevertheless determine that such a right is implied in the statute. *See Metzger*, 209 Ill. 2d at 35, 805 N.E.2d at 1167, 282 Ill. Dec. at 150. Specifically, courts may imply a private right of action in an Illinois statute if: "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.'" *Id.* (quoting *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460, 243 Ill. Dec. 46, 722 N.E.2d 1115 (1999)); *Cuyler v. United States*, 362 F.3d 949, 954-55 (7th Cir. 2004) (noting the Illinois Supreme Court's "increasing reluctance to imply private rights of action" (quoting *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 464, 243 Ill. Dec. 46, 722 N.E.2d 1115 (1999)); *Jandeska v. Prarie Int'l Trucks, Inc.*, 383 Ill. App. 3d 396, 893 N.E.2d 673, 677, 323 Ill. Dec. 401, 405 (Ill. App. Ct. 2008).

The Condo Act does not include an implied right of action for violations of its amendment provision. As an initial matter, there does not appear to be any authority recognizing such a right. Furthermore, such a remedy is not necessary because the Condo Act already provides remedies to further its purpose. As Plaintiff correctly notes, the Condo Act's purpose is to encourage full disclosure. *See Mikulecky*, 355 Ill. App. 3d at 1012, 825 N.E.2d at 271, 292 Ill. Dec. at 16. Here, alternative remedies exist to further that purpose. Indeed, the Condo Act contains two separate remedies for violating the Act: (1) the contract is voidable if all of the

information is not available at the time that the sales contract is executed, and (2) a buyer can rescind the contract at any time before closing if the seller discloses information that was available before the sales contract was executed.

As the Illinois Supreme Court has noted, "'[w]here a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions.'" *Metzger*, 209 Ill. 2d at 44, 805 N.E.2d at 1172, 282 Ill. Dec. at 155 (quoting *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 442, 170 Ill. Dec. 633, 593 N.E.2d 522 (19992)). This maxim of statutory construction, known as *expressio unius est exclusio alterius*, "is based on logic and common sense. It expresses the learning of common experience that when people say one thing they do not mean something else. The maxim is closely related to the plain language rule in that it emphasizes the statutory language as it is written." *Metzger*, 209 Ill. 2d at 44, 805 N.E.2d at 1172, 282 Ill. Dec. at 155. Ultimately, the Illinois Supreme Court "has implied a private right of action under a statute 'only in cases where the statute would be ineffective, as a practical matter, unless such an action were implied." *Id.* at 39, 805 N.E.2d at 1170, 282 Ill. Dec. at 153. The Condo Act, which plaintiffs have used to pursue claims for dozens of years, would not be ineffectual without the remedy that Plaintiff now seeks. Had the Illinois legislature intended to provide a separate remedy under Section 22's amendment provision, it could have done so. Because it did not, and because it did not intend to include a separate remedy for such violations, the Court will not read an implied remedy into the statute.

## II. Consumer Fraud and Deceptive Businesses Practices Act

Defendants next argue that Plaintiff fails to state an ICFA claim because the Complaint does not allege that any of Defendants' statements to Plaintiff – which, Defendants argue, were

non-actionable contractual promises or estimated budgets – were false when made. Defendants

premise this argument on a misreading of the Complaint, and Plaintiff has adequately stated an

ICFA claim.

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers,

and business persons against fraud, unfair methods of competition, and other unfair and

deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417, 775

N.E.2d 951, 960, 266 Ill. Dec. 879, 888 (Ill. 2002); *Rockford Mem'l Hosp. v. Havrilesko*, 368 Ill.

App. 3d 115, 121, 858 N.E.2d 56, 61, 306 Ill. Dec. 611, 616 (Ill. App. Ct. 2006). "It eliminated

many of the common-law fraud elements, creating a new cause of action that affords consumers

broad protection." *Havrilesko*, 368 Ill. App. 3d at 121, 858 N.E.2d at 61, 306 Ill. Dec. at 616;

*Miller v. William Chevrolet/Geo, Inc.*, 326 Ill. App. 3d 642, 654-55, 762 N.E.2d 1, 11, 260 Ill.

Dec. 735, 745 (Ill. App. Ct. 2001) ("The Act offers 'a clear mandate to the Illinois courts to

utilize the Act to the greatest extent possible to eliminate all forms of deceptive or unfair

business practices and provide appropriate relief to consumers.'" (quoting *Totz v. Continental

DuPage Acura*, 236 Ill. App. 3d 891, 901, 177 Ill. Dec. 202, 602 N.E.2d 1374, 1380 (Ill. App.

Ct. 1992))). "It is to be liberally construed to effect its purposes." *Havrilesko*, 368 Ill. App. 3d

at 121, 858 N.E.2d at 61, 306 Ill. Dec. at 616; *Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th

Cir. 1996).

"To prevail on a claim for damages under the ICFA, [a plaintiff] must prove: (1) a

deceptive act or practice by [the defendant]; (2) that the act or practice occurred in the course of

conduct involving trade or commerce; (3) that [the defendant] intended [the plaintiff] to rely on

the deception; and (4) that actual damages were proximately caused by the deception." *Oshana*

*v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citing *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801, 850 (Ill. 2005); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 267 Ill. Dec. 14, 776 N.E.2d 151, 164 (Ill. 2002)); *Thacker*, 105 F.3d at 386; *Demitro v. General Motors Acceptance Corp.*, 388 Ill. App. 3d 15, 19, 902 N.E.2d 1163, 1168, 327 Ill. Dec. 777, 782 (Ill. App. Ct. 2009). Plaintiff is correct that, generally speaking, actions brought under the ICFA are subject to Rule 9(b)'s heightened pleading requirements because they involve averments of fraud. *See Duggan v. Terzakis*, 275 F. Supp. 2d 968, 973 (N.D. Ill. 2003) (noting that courts must "evaluate Rule 9(b)'s particularity requirement in light of the purposes of: (1) protecting defendants' reputations from harm, (2) minimizing strike suits and fishing expeditions, and (3) providing defendants with adequate notice" (internal quotations omitted)); *Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 994 (N.D. Ill. 2002; *but see Strohmaier v. Yemm Chevrolet*, 211 F. Supp. 2d 1036, 1043 (N.D. Ill. 2001) (Rule 9(b) does not apply to ICFA claims that are not based on fraudulent acts). Defendants did not challenge the ICFA claim on Rule 9(b) grounds in their opening brief. Even if they did, however, as explained below the Complaint specifies what misstatements and omissions Defendants made, when they made them, how they made them, and in what documents they made them.

Defendants argue that the Court should dismiss the ICFA count because it does not allege that Defendants made a false or misleading statement or omission. (R. 34, Reply Br. at 6.) For an omission to be actionable under the ICFA, "the plaintiff must establish that the fact concealed was known to the defendant at the time of the concealment." *Havrilesko*, 368 Ill. App. 3d at 122, 858 N.E.2d at 62, 306 Ill. Dec. at 617. The ICFA count alleges that Defendants made several

false statements and omissions "to fraudulently induce [Plaintiff] to purchase [her] units." (R. 1-1, Compl. at ¶¶ 88-90.) Specifically, the Complaint alleges that Defendants concealed, suppressed, or failed to reveal that: (1) as a condition of her participation in the HCU Rental Reservation Program, Defendants failed to reveal that they were going to require Plaintiff to contractually agree that (a) "each use of her HCUs would adversely affect her ability to rent her HCUs through the Trump Defendants' HCU Rental Reservation Program" (*id.* at ¶ 89a), (b) she would be responsible for paying "additional previously undisclosed daily charges" (*id.* at ¶ 89b), (c) Defendants would "have complete discretion on how to allocate HCU rental opportunities" (*id.* at ¶ 89c), and (d) she would have "to pay for all damages to her unit caused by any guests [who rented her unit] . . . as well as all charges . . . incurred by such guests for which they failed to pay" (*id.* at ¶ 89g); (2) Defendants "were going to remove the Hotel Meeting/Function Rooms, Ballrooms, storage areas and laundry facilities from the common elements" (*id.* at ¶ 89e); (3) Defendants "were going to keep all rental fees and commissions generated by the Trump Tower Meeting/Function Rooms and Ballrooms" (*id.* at ¶ 89e); and (4) Plaintiff's health-club membership "would only entitle [her] to use it when she was actually occupying her unit" (*id.* at ¶ 89f). These allegations satisfy the deceptive-act element.[5] *See Havrilesko*, 368 Ill. App. 3d at 122, 858 N.E.2d at 62, 306 Ill. Dec. at 617; *Miller*, 326 Ill. App. 3d at 655, 762 N.E.2d at 12, 260 Ill. Dec. at 746. While Defendants note that the Purchase Agreements allowed Defendants to modify certain documents, Defendants point to no provision in those agreements that would allow Defendants to misrepresent, omit, or conceal information.

---

[5] Because these allegations adequately state an ICFA claim, the Court will not address Defendants' attack on the meeting-room allegations.

Furthermore, Defendants are correct that breaches of contractual promises, without more, are not actionable under the ICFA.  *See Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir. 2006).  Indeed, as the Seventh Circuit teaches, "a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it.  That type of 'misrepresentation' occurs every time a defendant breaches a contract."  *Id.* (quoting *Avery*, 216 Ill. 2d 100, 296 Ill. Dec. 448, 835 N.E.2d at 844); *Dahm v. First Am. Title Ins. Co.*, No. 06 C 5031, 2008 WL 1701901, at *5 (N.D. Ill. Apr. 9, 2008).  The Complaint, however, alleges more than Defendants' failure to abide by its contractual promises.  As summarized above, the Complaint alleges that Defendants fraudulently induced Plaintiff to enter into the Purchase Agreements by making various materially false statements and omissions.  Ultimately, "[a]llegations that a party gave false information to a potential purchaser of real property implicates consumer protection concerns and states a claim under the Act."  *Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 296 Ill. App. 3d 593, 605, 694 N.E.2d 1108, 1117, 230 Ill. Dec. 830, 839 (Ill. App. Ct. 1998) (compiling cases); *Siegel v. The Levy Org. Dev. Co., Inc.*, 153 Ill. 2d 534, 544, 607 N.E.2d 194, 199, 180 Ill. Dec. 300, 305 (Ill. 1992).

Finally, the Complaint alleges that Defendants' conduct was not only deceptive, but also unfair (R. 1-1, Compl. at 92), and unfair conduct is actionable under the ICFA.  *See Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960, 266 Ill. Dec. at 888; *Demitro*, 388 Ill. App. 3d at 19, 902 N.E.2d at 1168, 327 Ill. Dec. at 782; *Havrilesko*, 368 Ill. App. 3d at 121, 858 N.E.2d at 62, 306 Ill. Dec. at 617.  "In determining whether conduct is unfair, courts consider whether the practice offends public policy, whether it is oppressive, and whether it causes consumers substantial injury."  *Demitro*, 388 Ill. App. 3d at 20, 902 N.E.2d at 1168, 327 Ill. Dec. at 782.  "'All three

criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'"  *Id.* (quoting *Robinson*, 201 Ill. 2d at 418, 266 Ill. Dec. 879, 775 N.E.2d 951).  Defendants have not argued that the Complaint's unfairness allegations are deficient.

## III.  Interstate Land Sales Full Disclosure Act

Defendants' attack on the ILSA claim fails for one of the same reasons that its attack on the ICFA claim fails: the premise – that Plaintiff has not alleged that Defendants knew their statements were false when made – is factually inaccurate.  Furthermore, the Complaint adequately pleads its fraud-based ILSA claim with particularity.

"The ILSA is designed to ensure that a land buyer, prior to purchase, is informed of facts which would enable a reasonably prudent individual to make an informed decision about purchasing the property."  *Shirley v. Mann*, No. 90 C 0008, 1993 WL 13666177, at *6 (N.D. Ill. Oct. 25, 1993); *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 853 (11th Cir. 2009); *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 642 F. Supp. 2d 1344, 1349 (S.D. Fla. 2009); *Burns v. Duplin Land Dev., Inc.*, 621 F. Supp. 2d 292, 301 (E.D. N.C. 2009).  It is to be broadly construed to effectuate its purpose.  *See Olsen v. Lake Country, Inc.*, 955 F.2d 203, 205 (4th Cir. 1992); *Burns*, 621 F. Supp. 2d at 301.  "'In addition to setting up specific disclosure regulations, the [ILSA] also contains a general anti-fraud provision that makes it illegal to obtain money or property in connection with a development by means of a material false statement or any omission of a material fact necessary to make the statement made not misleading.'"  *Sewell v. D'Alessandro & Woodyard, Inc.*, 655 F. Supp. 2d 1228, 1255 (M.D. Fla. 2009) (quoting *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 791 n.4 (11th Cir. 1991)).  Rule 9(b)'s heightened pleading

requirements apply to ILSA actions.  *Degirmenci*, 642 F. Supp. 2d at 1352; *Sewell*, 655 F. Supp. 2d at 1256.

Section 1709 of the ILSA "allows a purchaser to bring an action at law or in equity for sales made in violation of § 1703."  *Tait v. 430 Hibiscus, L.P.*, No. 08-80806-CIV, 2009 WL 455439, at *2 (S.D. Fla. Feb. 23, 2009); *Shirley*, 1993 WL 13666177, at *6.  Section 1703 of the ILSA prohibits fraud in connection with property sales.  *See* 15 U.S.C. § 1703.  To prove a claim under Section 1709, "plaintiffs must first show that they qualify for ILSA protection.  Second, plaintiffs must show that defendants made an untrue statement of material fact in, or omitted from, their property report in violation of § 1703(a)(1) or in their dealings with purchasers in violation of § 1703(a)(2)."  *Shirley*, 1993 WL 13666177, at *6.  "Plaintiffs need not prove that defendants intended to defraud or deceive or that plaintiffs relied on the property report," but "need only [] show that the misrepresentation or omission existed in the property report at the time the property was sold."  *Id.*

As explained above, the Complaint alleges that Defendants made several material misstatements and omissions in connection with the sale of HCUs.  The Complaint specifies what those misstatements and omissions are, when they were made, and in what documents they were made.  The Complaint therefore adequately alleges an ILSA claim.  *See id.*

## IV.  Illinois Securities Act

Defendants next argue that Plaintiff's ISA claim fails as a matter of law because it is time-barred and because Plaintiff did not allege that she satisfied the ISA's notice requirement. The ISA's objective "is to protect innocent persons who may be induced to invest their money in speculative enterprises over which they have little control.'"  *Klein v. George G. Kerasotes*

*Corp.*, 500 F.3d 669, 672 (7th Cir. 2007) (quoting *People v. Bartlett*, 294 Ill. App. 3d 435, 228 Ill. Dec. 845, 690 N.E.2d 154, 156 (Ill. App. Ct. 1998)).  It "is 'paternalistic in character and should be liberally construed to better protect the public' from the fraud, dishonesty, incompetence and irresponsibility of persons selling securities." *Aste v. Metropolitan Life Ins. Co.*, 312 Ill. App. 3d 972, 976, 728 N.E.2d 629, 633, 245 Ill. Dec. 547, 551 (Ill. App. Ct. 2000); *Lucas v. Downtown Greenville Investors Ltd. P'ship*, 284 Ill. App. 3d 37, 49, 671 N.E.2d 389, 398, 219 Ill. Dec. 475, 484 (Ill. App. Ct. 1996).  The ISA "provides express civil remedies for improper . . . transactions in securities: sales are voidable if the aggrieved party acts within six months of learning about the impropriety and within three years of the original sale; equitable relief is another option." *First City Sec., Inc. v. Shaltiel*, 44 F.3d 529, 534 (7th Cir. 1995).

### A.    Statute of Limitations

Pointing to language in the ISA that "no action shall be brought for relief under this section . . . after 3 years from the date of sale," Defendants argue that the statute of limitations bars Plaintiff's ISA claim.  (R. 34, Resp. Br. at 12 (quoting 815 Ill. Comp. Stat. 5/13D).)  Defendants omit any reference, however, to the latter part of Section 13D, which allows for equitable tolling of the statute when a plaintiff neither knew nor reasonably should have known of the alleged violation.  *See* 815 Ill. Comp. Stat. 5/13D; *Klein*, 500 F.3d at 672; *Ferguson v. Roberts*, 11 F.3d 696, 704 (7th Cir. 1993); *Lucas*, 284 Ill. App. 3d at 46, 671 N.E.2d at 396, 219 Ill. Dec. at 482.  Equitable tolling is highly fact dependent and cannot be determined at this early stage of the litigation.  *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004).  Accordingly, the Court will not dismiss the ISA claim on statute-of-limitations grounds at this stage.

## B.    Notice

The ISA's six-month-notice rule "'is not a statute of limitations, but rather, an equitable feature built into the statute to protect against stale claims.  Its purpose is to prevent purchasers, who have sufficient knowledge of the remedy available to them, from waiting the entire statute of limitations to decide whether the elect recision.'"  *766347 Ontario Ltd. v. Zurich Capital Mkts. Inc.*, 249 F. Supp. 2d 974, 988 (N.D. Ill. 2003) (quoting *Martin v. Orvis Bros. & Co.*, 25 Ill. App. 3d 238, 246, 323 N.E.2d 73, 79 (1974)).  "[T]he time for notice begins to run not from the time of knowledge of the underlying facts, but rather from the time of knowledge that those facts give rise to a right of recision."  *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1236 (N.D. Ill. 1990) (Rovner, J.) (compiling cases).  "'Knowledge that a sale of securities is voidable is a mixed question of law and fact.'"  *766347 Ontario*, 249 F. Supp. 2d at 988 (quoting *Fewell v. Kozack*, No. 98 C 2924, 1999 WL 966447, at *8 (N.D. Ill. Oct. 19, 1999)).

While Plaintiff alleges that she provided Defendants with written notice of her decision to pursue remedies under the ISA (R. 1-1, Compl. at ¶ 107), she has not alleged *compliance* with the six-month-notice requirement.  This alone is grounds for dismissal.  *See Denten v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 887 F. Supp. 176, 180-81 (N.D. Ill. 1995); *Kleban v. S.Y.S. Rest. Mgmt., Inc.*, 912 F. Supp. 361, 369 n.3 (N.D. Ill. 1995); *Endo v. Albertine*, 812 F. Supp. 1479, 1496 (N.D. Ill. 1993); *Wislow v. Wong*, 713 F. Supp. 1103, 1107 (N.D. Ill. 1989). Accordingly, the Court dismisses Plaintiff's ISA count without prejudice.

## V.    Breach of Contract

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must

allege four elements: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007). Courts "construe contracts by giving their unambiguous terms clear and ordinary meaning, in an effort to determine the parties' intent." *Reger Dev.*, 592 F.3d at 764 (citing *Reynolds v. Coleman*, 173 Ill. App. 3d 585, 123 Ill. Dec. 259, 527 N.E.2d 897, 902 (1988); *Harrison v. Sears, Roebuck & Co.*, 189 Ill. App. 3d 980, 137 Ill. Dec. 494, 546 N.E.2d 248, 253 (1989)). Furthermore, courts "do not look at any one contract provision in isolation; instead [they] read the document as a whole." *Reger Dev.*, 592 F.3d at 764 (citing *Martindell v. Lake Shore Nat'l Bank*, 15 Ill. 2d 272, 154 N.E.2d 683, 689 (1958)).

Count V alleges that Defendant 401 North Wabash breached the Purchase Agreements by modifying the definition of "common elements" in violation of Section 22 of the Condo Act – and therefore breaching Section 4 of the Purchase Agreements – by failing to obtain the consent of 75% of the buyers then owning HCU interests. The relevant provision of the Purchase Agreements provides:

> Seller reserves the right, in its sole and absolute discretion, to modify the Condominium Documents, together with the Articles of Incorporation of the Association and the Statement of Record required by the Interstate Land Sales Full Disclosure Act (the 'HUD Report'), provided that Seller shall notify Purchaser or obtain the Purchaser's approval of any changes in the Condominium Documents, the HUD Report and any such other documents, as the case may be, when and if such notice or approval is required by law.

(R. 1-12, Exs. L, M, Purchase Agreements at § 4(a).)

Defendant 401 North Wabash argues that Plaintiff's breach-of-contract claim attempts to bring a private cause of action for a violation of the Condo Act, and that Defendant furthermore had sole discretion to modify the definition of "common elements." There would be no issue were Plaintiff merely asking the Court to enforce the parties' contractual agreement that Defendant 401 North Wabash would abide by Section 22 of the Condo Act by obtaining *Plaintiff's* approval before modifying the definition of "common elements." But Section 22 contains no such requirement, and Plaintiff points to no provision that would have required Defendant 401 North Wabash to obtain her approval before making the modification. *See* 765 Ill. Comp. Stat. § 605/22 (specifying that "no changes or amendments may be made in any of the items furnished to the prospective buyer which would materially affect the rights of the buyer or the value of the unit *without obtaining the approval of at least 75% of the buyers then owning interest in the condominium*" (emphasis added)). Without more, the breach-of-contract count fails to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss, and Counts I, IV, and V are dismissed without prejudice. Plaintiff has leave to file an amended complaint on or before May 7, 2010, consistent with this opinion.


Dated:  April 22, 2010                    ENTERED:

                                          _____
                                          AMY J. ST. EVE
                                          United States District Court Judge