# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 6455 | **DATE** | 8/24/2012 |
| **CASE TITLE** | Goldberg vs. 401 North Wabash Venture LLC et al | | |

**DOCKET ENTRY TEXT**

Defendants' motion to exclude the expert opinions of Robert Levin [145] is granted in part, denied in part, and denied in part without prejudice. Reply to the motion for summary judgment is due 9/7/12. No further extensions will be granted.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

In connection with their pending motion for summary judgment, Defendants 401 North Wabash Venture LLC and Trump Chicago Managing Member, LLC (collectively, "Defendants") move to exclude the expert opinions of Robert Levin, pursuant to Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). (R. 145.) Plaintiff Jacqueline Goldberg relies on Mr. Levin's opinions in her response to the motion for summary judgment. For the reasons explained below, Defendants' motion is granted in part, denied in part, and denied without prejudice in part.

### BACKGROUND

This action arises out of a dispute over the sale of two hotel condominium units ("HCUs") in the Trump International Hotel and Tower in Chicago, Illinois ("Trump Tower"). Plaintiff Jacqueline Goldberg alleges that Defendants "lured her into signing Purchase Agreements to buy" two HCUs in Trump Tower "in violation of federal and state consumer protection laws by," among other things:

> using detailed Property Reports, eye-catching financial statements, and fancy brochures to misrepresent that HCUs also included the ownership of the Trump-branded luxury hotel property and business operations where the HCUs were situated . . . that [Defendants] calculated would generate over $5 million in revenue; an ownership interest [that Defendants] stripped unilaterally from HCU buyers and reclaimed for themselves right before the hotel opened.

(R. 132, Pl.'s Resp. at 1.) For a detailed discussion of the factual and procedural background of this case, including a discussion of the parties' claims, see generally the Court's Memorandum Opinion and Order, dated April 22, 2010, which granted in part, and denied in part, Defendants' motion to dismiss. (R. 36.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

During discovery, Plaintiff disclosed Mr. Robert Levin as an expert pursuant to Rule 26(a)(2). According to Mr. Levin, Plaintiff retained him:

> to review, analyze and provide opinions on certain matters relating to the hotel condominium units offered for sale at Trump International Hotel and Tower in Chicago . . . [; and] to review, analyze and provide opinions on matters relating to the established customs and practices of aspects of the real estate, condominium and professional property management industry, and, in particular, the creation, development, operation and management of condominium properties.

(R. 149-1, Expert Report at 1.)

According to his Expert Report, Mr. Levin holds an undergraduate degree in finance from the University of Illinois, and an MBA from the University of Wisconsin. (*Id.* at 1-2.) He is a licensed managing real estate broker, a licensed community association manager, and a certified property manager. (*Id.*) Mr. Levin is the past president and a current board member of the Apartment Building Owners and Managers Association, and has also served in a senior capacity with the Institute of Real Estate Management. (*Id.*)

Mr. Levin is the former president and owner of Wolin-Levin Inc., a property management firm where he managed thousands of primarily large high-rise apartments and condominiums near Lake Shore Drive in Chicago, Illinois. (*Id.*) Mr. Levin has extensive experience in the commercial real estate industry, including "working with large, sophisticated and established real estate developers on, among other things, the formation of condominium associations," including the preparation of property reports. (*Id.*) His experience includes the operation, management, and administration of condominiums – from inception by the developer to control by the condominium association. Mr. Levin is familiar with many of the applicable state and law locals governing condominium developments. (*Id.*)

In preparing his Expert Report, Mr. Levin reviewed and analyzed the evidentiary record in this case, to which he applied his "education, experience and expertise." (*Id.* at 2.) He offers ten general opinions in his Expert Report. (*Id.* at 4-6.) In the present motion, Defendants challenge each of Mr. Levin's proffered opinions. (R. 149, Def.'s Mem. at 6.)

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert*[.]" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)); *see also Lapsley v. Xtek, Inc.*, --- F.3d ----, 2012 WL 3055865, at *6 (7th Cir. July 27, 2012) ("The purpose of [the Daubert] inquiry is to vet the proposed testimony under Rule 702's requirements that it be "'based on sufficient facts or data,'" use "'reliable principles and methods,'" and "'reliably appl[y] the principles and methods to the facts of the case.'") (quoting Fed. R. Evid. 702)). Whether to admit expert testimony rests within the discretion of the district court. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); *Lapsley*, 2012 WL 3055865, at *6 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'") (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)). "A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley*, 2012 WL 3055865, at *1. The proponent of the expert "bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis*, 561

F.3d at 705.

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011).

District courts employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Myers v. Illinois Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811-12 (7th Cir. 2012). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

## ANALYSIS

**I.     Scope of the Court's Ruling**

As an initial matter, Defendants' motion is denied without prejudice to the extent it challenges opinions of Mr. Levin that Plaintiff does not rely upon to defeat summary judgment. After the Court rules on the pending motion for summary judgment, Defendants may, if appropriate, file a renewed motion before trial as to any other opinions of Mr. Levin.

Defendants filed the present *Daubert* challenge to Mr. Levin after Plaintiff relied on Mr. Levin's opinions in her response to the motion for summary judgment. At the status conference on July 19, 2012, Defendants represented that Plaintiff relied heavily on Mr. Levin's opinions in her response, and for that reason, requested that the Court address their *Daubert* challenge before Defendants filed their reply. Although Mr. Levin indeed offers numerous opinions and a lengthy expert report, Plaintiff's response in opposition to summary judgment does not rely heavily on Mr. Levin's opinions, but instead refers intermittently to his opinions to bolster other arguments. (R. 132, Pl.'s Resp. at 11, 15 & n.9, 21, 22, 23.) The Court limits its consideration to the admissibility of the opinions that Plaintiff relies upon to defeat summary judgment:[1]

1. "Opinion One": "established developers, like the Trump Defendants, make decisions about the ownership of the condominium property before selling unit" (R. 132, Pl.'s Resp. at 11, 14)

2. "Opinion Two": "the manner in which Trump Tower Chicago HCUs were marketed and sold misrepresented information to buyers and was contrary to and undermined industry practices and policies" (*id.* at 11, 22)

3. "Opinion Three": "the ownership interest in perpetuity of the luxury hotel property and

---

[1]For purposes of this Order, the Court will refer to these opinions as Opinions One through Five.

        operations are material" and "the changes were material in that HCU buyers lost the ability to control the hotel property in a manner which is in their best interests" (*id.* at 11, 21)

4. "Opinion Four": the practices employed by the Trump Defendants "were oppressive and substantially injured consumers" (*id.* at 23)

5. "Opinion Five": "the litany []of] explanations provided by the Trump Defendants for the changes they made" are "meritless" and should be "discredited" (*id.* at 22)

## II. Application

### A. Opinions One and Two – Industry Custom and Practice

Opinions One and Two relate to industry custom and practice. In Opinion One, Mr. Levin opines that "established developers, like the Trump Defendants, make decisions about the ownership of the condominium property before selling unit." (*Id.* at 11, 14.) In Opinion Two, Mr. Levin opines that the "manner in which Trump Tower Chicago HCUs were marketed and sold misrepresented information to buyers and was contrary to and undermined industry practices and policies." (*Id.* at 11, 22.) Defendants seek to exclude these opinions on the basis of Mr. Levin is not qualified; his methodology is not reliable; and his opinions would not assist the trier of fact.

The motion is granted in part, and denied in part, as to Opinions One and Two. Mr. Levin may opine as to whether Defendants' conduct was consistent with industry custom and practice. Mr. Levin is qualified to do so based on his experience, education and training; his methodology is reliable; and his opinions would be helpful to the trier of fact. *See* Fed. R. Evid. 702; *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002) (observing that in certain fields, experience may well be the "predominant, if not the sole basis for a great deal of reliable expert testimony"); *WH Smith Hotel Servs., Inc. v. Wendy's Int'l, Inc.*, 25F.3d 422, 429 (7th Cir. 1994) (affirming admission of expert testimony on customs in the commercial real estate industry); *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 3234240, at *5 (N.D. Ill. Aug. 6, 2012) (denying *Daubert* challenge to expert who would opine on the standard of care in the pharmaceutical industry); *Fed. Ins. Co. v. Arthur Andersen, LLP*, No. 03 C 1174, 2006 WL 6555232, at *3 (N.D. Ill. Jan. 18, 2006) (citing *Lippe v. Bairnco Corp.*, No. 96 CV. 7600, 2002 WL 15630, *2 (S.D.N.Y. Jan. 7, 2002) ("An expert may properly testify as to 'the customs and standards of an industry, and [] opine as to how a party's conduct measured up against such standards.'").)

As described above, Mr. Levin holds numerous academic degrees and professional licenses and has worked in the real estate industry for over three decades. He has held leadership positions in industry trade associations, authored articles, and received awards for his work. Mr. Levin is the former president and owner of a property management firm that "managed a portfolio of almost 20,000 units including commercial and residential condominium and rental properties" in the same general vicinity as Trump Tower. Mr. Levin has worked with sophisticated real estate developers and is quite familiar with condominium development and management at all stages. To the extent Defendants argue that Mr. Levin has not provided more detail about his experiences to render him qualified, that is an issue of weight that Defendants may explore if this case proceeds to trial. Furthermore, Mr. Levin's expertise, including his experience and education, as well as his work in connection with this case, provides his opinions with a reliable basis for purposes of admission under Rule 702 and *Daubert*. *See Jordan v. City of Chi.*, No. 08 C 6902, 2012 WL 254243, at *3 (N.D. Ill. Jan. 27, 2012) ("An expert may be qualified to render opinions based on experience alone.") (citing Fed. R. Evid. 702 – adv. comm. notes ("In certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony.")); *accord Mihailovich v. Laatsch*, 359 F.3d 892, 919 (7th Cir. 2004) ("[T]he Daubert framework is a flexible one that must be adapted to the particular circumstances of the case and the type of testimony being

proffered [.]"). Finally, Mr. Levin's testimony about industry practice and custom may assist the trier of fact in, among other things, evaluating Plaintiff's argument that Defendants concealed their development plans, misrepresented information, and offer only pre-textual reasons to suggest otherwise. *See United States v. O'Brien*, 119 F.3d 523, 533 (7th Cir. 1997) (relying in part on non-compliance with industry custom to affirm finding of intent); *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, No. 09 C 6141, 2011 WL 87444, at *2 (N.D. Ill. Jan. 10, 2011) ("The court will also allow [the expert] to testify concerning franchise industry practices or procedures to the extent that testimony will inform the trier of fact on issues or evidence relating to Plaintiffs' fraud and negligent misrepresentation claims."); *Needham v. Innerpac, Inc.*, No. 04-CV-393, 2006 WL 2710617 (N.D. Ind. Sept. 19, 2006) ("Evidence of industry custom may, in fact, be relevant to aid the factfinder in determining the intent of the parties."); *Int'l Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 88 C 9838, 1991 WL 693319, at *11 (N.D. Ill. Sept. 16, 1991) ("[Industry] customs and practices may well be material to the question of whether the reinsurers were defrauded, i.e., what IIC's agent's representations would reasonably have meant to one in the reinsurers' position and whether IIC's behavior was so contrary to customary practices that fraud could be inferred."); *Hill v. PS Ill. Trust*, 368 Ill. App. 3d 310, 320, 305 Ill. Dec. 755, 856 N.E.2d 560 (Ill. Ct. App. 2006) (finding allegation that business practice "was contrary to well-establish industry practices" relevant to claim under the Consumer Fraud Act).

### B. Opinion Three – Materiality

In Opinion Three, Mr. Levin opines that "the ownership interest in perpetuity of the luxury hotel property and operations are material" and the "changes were material in that HCU buyers lost the ability to control the hotel property in a manner which is in their best interests." (R. 132, Pl.'s Resp. at 18, 28.) Specifically, Mr. Levin opines that:

> [T]he undivided percentage ownership interest in perpetuity of condominium property which included the significant features and amenities of the luxury hotel and the revenue generated from the luxury hotel operations are unique, valuable and significant aspects of condominium ownership which materially affect the rights of condominium unit owners and the value of their condominium units.
>
> . . .
>
> [T]he changes reflected in the Fourth Amended Property Reports stripped from hotel condominium buyers the ownership as condominium property of the significant features and amenities of the luxury hotel condominium property, diminished significantly the ability of the condominium association to own, operate and control the hotel condominium property and, as a result, buyers did not receive an undivided percentage interest in the significant features and amenities of the luxury hotel condominium property which they were sold.

(R. 149-1, Expert Report at 4.)

Defendants seek to exclude Mr. Levin's materiality opinions on the basis that he is not qualified; his methodology is not reliable; and his opinions would not assist the trier of fact.
(R. 149, Def.'s Mem. at 17, 21-22.) The Court rejects each of these arguments. As described above, Mr. Levin has extensive and relevant experience in commercial real estate and high-rise condominium development and management, including experience, background, and training in matters relating to finance, operations, condominium governance and administration, and sale. Applying his expertise to this case, as he would any other, provides Mr. Levin with a reliable basis upon which to opine for purposes of admission under Rule 702 and *Daubert*. *See Jordan*, 2012 WL 254243, at *3. The question of materiality in this case arises out of a complex

commercial real estate transaction between two sophisticated parties for the purchase and sale of hotel condominium units in a luxury high-rise. *See United States ex. rel Jones v. Brigham and Women's Hosp.*, 678 F.3d 72 (1st Cir. 2012) (allowing expert to testify as to materiality in an action alleging fraud in a grant application). Mr. Levin's testimony will assist the jury with these issues.

### C. Opinion Four – Oppressive and Injurious Conduct

In Opinion Four, Mr. Levin opines that Defendants' conduct in this case was "oppressive and substantially injured consumers." (R. 132, Pl.'s Resp. at 30.) Defendants challenge this opinion on the basis that it is an "improper legal conclusion," and additionally that Mr. Levin lacks a reliable basis or the requisite qualifications to give the opinion. The Court agrees in part. Mr. Levin may opine that certain conduct harmed consumers based on his background, experience, and work in this case. That opinion is largely the same as his opinions on materiality, and is admissible for the same reasons discussed above. (*See infra*.) Mr. Levin may not, however, opine on whether Defendants' conduct was "oppressive." That opinion would go beyond his expertise in commercial real estate and delve into matters of consumer protection, upon which he is not qualified to opine and would lack a reliable basis upon which to do so. *See* Fed. R. Evid. 702.

### D. Opinion Five – Credibility

In Opinion Five, Mr. Levin purports to "discredit[] in detail the meritless explanations provided by [Defendants] for the changes they made." (R. 132, Pl.'s Mem. at 22.) Defendants seek to exclude these opinions on the basis that, among other things, they "impermissibly opine as to Defendants' credibility and therefore will not assist the trier of fact." (R. 149, Def.'s Mem. at 29.) The Court agrees in part. It is well settled that "an expert cannot testify as to credibility issues," *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000), and thus Mr. Levin's opinions about the credibility of the "explanations provided by [Defendants]" are inadmissible. As discussed above, however, Mr. Levin may opine on the consistency of Defendants' explanations with industry custom, practice and policies, to assist the jury in evaluating the evidence, if this case proceeds to trial. (*See infra* at page 4-5.)

### CONCLUSION

Defendants' motion to exclude the expert opinions of Mr. Levin is granted in part, denied in part, and denied in part without prejudice.