**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE GOLDBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09 C 6455 |
| ) | |
| 401 NORTH WABASH VENTURE LLC and ) | |
| TRUMP CHICAGO MANAGING ) | |
| MEMBER LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On June 4, 2010, Jacqueline Goldberg ("Goldberg") filed an Amended Complaint in this case against 401 North Wabash Venture LLC and Trump Chicago Managing Member LLC (collectively, the "Trump Defendants") asserting claims against both Trump Defendants under the Illinois Condominium Property Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois Securities Act, and the Federal Interstate Land Sales Full Disclosure Act, and asserting a single claim for breach of contract against Defendant 401 North Wabash Venture LLC. (R. 48, Amend. Compl.) The Court granted summary judgment for the Trump Defendants on the Illinois Securities Act claim (Count IV), but denied summary judgment as to the other claims. (R. 170, Sum. Jgmt. Op.) Before ruling on the summary judgment motion, the Court addressed the Trump Defendant's motion ("Original *Daubert* Motion") to exclude the testimony of Goldberg's expert, Robert Levin ("Levin") to the extent that his opinions related to the pending summary judgment. (R. 160, Daubert Op.) The Court addressed five of Levin's opinions and granted Trump Defendant's motion in part and denied it in part without prejudice

to renew after the summary judgment ruling. (*Id*.)

The Court set the case for trial May 13, 2013. (R. 174.) In anticipation of trial, the Trump Defendants filed a renewed motion to exclude the opinions and testimony by Levin which the Court did not address in ruling on the Original *Daubert* Motion. (R. 172, Defs.' Mot.) The Court held a *Daubert* hearing on January 9, 2013, during which the parties had the opportunity to conduct direct and cross examination of Levin. For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

This action arises out of a dispute over the sale of two hotel condominium units in the Trump International Hotel and Tower in Chicago, Illinois. Goldberg "claims that the Trump defendants unlawfully lured her into signing Purchase Agreements by misrepresenting that [hotel condominium units] included the ownership and control of [] condominium common elements the hotel property and business operations, such as the ball rooms and food beverage operation." (R. 178, Pl.'s Resp. at 1.) The Court presumes familiarity with the factual and procedural background of this litigation, and incorporates herein by reference the background information set forth in the Court's written opinions dated August 24, 2012 (R. 160) and October 15, 2012 (R. 170).

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert*[.]" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for

admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)); *see also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 804 (7th Cir. 2012) ("The purpose of [the *Daubert* ] inquiry is to vet the proposed testimony under Rule 702's requirements that it be "based on sufficient facts or data," use "reliable principles and methods," and "reliably appl[y] the principles and methods to the facts of the case.") (quoting Fed. R. Evid. 702)). Whether to admit expert testimony rests within the discretion of the district court. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); *Lapsley*, 689 F.3d at 810 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable' ") (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis*, 561 F.3d at 705.

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Ortiz v. City of Chi.*, 656 F.3d 523, 526 (7th Cir. 2011).

District courts employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2)

3

the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152).

## ANALYSIS

In his expert report, Levin disclosed ten summary opinions. (R. 173-1, Defs.' Mem., Ex. A, Levin Report at 7-9.) The Trump Defendants seek to exclude testimony on five of those opinions, specifically Opinions One, Two, Four, Five and Eight.[1] (R. 173, Defs.' Mem. at 6-13.)

**I.    Opinions One and Two - Design of Property Reports and Marketing Materials**

The Trump Defendants seek to exclude Opinions One and Two, which describe what Levin believes the Trump Tower Chicago Property Reports and marketing materials "were designed to" accomplish. In relevant part, Opinion One states:

---

[1] At the *Daubert* hearing, the Trump Defendants urged the Court to also set out "ground rules" regarding the admissibility of other opinions and sub-opinions contained in Levin's expert report. The Trump Defendants, for example, asked the Court to prohibit Levin from offering opinions containing certain words, such as believed, knew, designed and concluded. The Trump Defendants, however, bear the burden of bringing to the Court's attention any specific opinions with deficiencies. It is not the responsibility of the Court to review Levin's seventy-two page report and *sua sponte* determine which statements meet the mandates of *Daubert*. *See Gross v. Town of Cicero, Ill.,* 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in the record.") (citing *U.S. v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)). The Court cannot, and will not, make blanket and sweeping generalizations about the admissibility of opinions contained in Levin's report, other than those brought to the Court's attention in the Trump Defendants' motion.

> . . . the Trump Tower Chicago Property Reports and marketing materials . . . **were designed to lead reasonably prudent buyers to conclude and, in fact, reasonably prudent buyers would conclude**, that they were purchasing and would own as condominium property an undivided percentage interest in a luxury hotel which was operated on behalf of the owners by the Trump Organization as a Trump-branded luxury hotel.

(Levin Report at 4 (emphasis added).) Opinion Two states:

> . . . the Trump Tower Chicago Property Reports and marketing materials . . . **were designed to lead reasonably prudent buyers to conclude and, in fact, reasonably prudent buyers would conclude**, that the undivided percentage ownership interest they were purchasing included the ownership and operation of the significant features and amenities of the Trump-branded luxury hotel, such as the meeting rooms, function rooms and ballrooms, the food and beverage operations to service the hotel, and revenue generated from the luxury hotel operations, such as Spa Services and Valet Parking.

(*Id* (emphasis added).)

The Trump Defendants object to these two opinions on three grounds: (1) these opinions are inadmissible because they relate to the Trump Defendants' state of mind; (2) Levin is not qualified to express these opinions; and (3) these opinions are unreliable because Levin fails to explain how his experiences, when applied to the facts, compel his conclusions. (Defs.' Mem. at 7-10.) The Court finds that these two opinions are admissible in part.

Opinions One and Two, as drafted, are not state of mind opinions, as Levin specifically states in his report. (Levin Report at 3.) Rather, Levin provides opinions about the significance of information contained in and portrayed by the marketing materials and property reports. Courts regularly permit expert testimony pertaining to the designed effect of marketing materials on a potential consumer. *See, e.g.*, *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 541 (E.D. Pa. 2007) ("[W]hen an issue before the court pertains to the effect of a marketing an advertising campaign on a potential consumer, courts regularly permit expert testimony to aid the jury on the precise topic of marketing strategies."); *Schwab v. Philip Morris USA, Inc.*, 2005

WL 2401647, at *4–5 (E.D.N.Y. Sept. 29, 2005) (denying motion to preclude expert testimony when an issue was the design and intent of the tobacco industry in marketing "light" or "low" tar cigarettes); *see also Agrigenetics, Inc. v. Pioneer Hi-Bred Intern., Inc.*, No. 08-cv-802-TWP-TAB, 2010 WL 4683936, at *5 (S.D. Ind. Nov. 10, 2010) (permitting testimony by experts "who have experience specific to the branding industry that gives them an understanding well beyond that of the average juror."). Additionally, Levin may testify about the practices within the industry regarding what type of information condominium developers put in these materials and for what purposes. In other words, Levin can testify regarding how developers design these materials, and opine on the significance of the Trump materials having been designed in a certain way, based on the customs and practices of the industry, without reaching the issue of the Trump Organization's intent when designing the materials.

Notably, the cases which the Trump Defendants cite for the proposition that "state of mind and intent are not appropriate areas of expert opinion" are inapposite as they do not relate to experts opining on the effect marketing materials are designed to have. (*See* Defs.' Mem. at 7 (citing *George v. Kraft Foods Global, Inc.*, 800 F. Supp. 2d 928, 933 (N.D. Ill. 2011) (finding expert's report regarding defendant's state-of-mind in selecting and communicating funds in an employee benefit plan was too speculative and not relevant because the cause of action did not have a state of mind element); *Klaczak v. Consolidated Medical Transport Inc.*, No. 96 C 6501, 2005 WL 164981, at *8-10 (striking sections of an expert report including opinions about whether defendant willfully or knowingly took certain fraudulent actions or knew there was a kick-back scheme and finding experts could not opine on the ultimate issue of whether defendant committed fraud).) Moreover, the Trump "Defendants do not dispute that an expert with the

6

right qualifications and a sound methodology can testify about certain matters to the impact of marketing materials." (Defs.' Reply at 3.) The Trump Defendants argue, rather, that Levin does not have the proper qualifications and methodology, which, as discussed below is incorrect.

Levin is qualified to offer his expert opinion on the design of the marketing materials and property reports. As discussed in detail in the Court's opinion on the Original *Daubert* Motion, Levin has over thirty years experience in the real estate, condominium, and professional property management industry. (Levin Report at 5.) In that opinion, the Court concluded that "Mr. Levin may opine as to whether Defendants' conduct was consistent with industry custom and practice. Mr. Levin is qualified to do so based on his experience, education and training; his methodology is reliable; and his opinions would be helpful to the trier of fact." (Daubert Op. at 4.)

Specifically, Levin has experience assisting large, sophisticated real estate developers with preparing, reviewing, and finalizing documents establishing condominium associations, including property reports. (Levin Report at 5.) According to Levin, he has worked with over twenty different developers, regarding more than fifty different buildings. At the *Daubert* hearing, Levin testified that condominium developers hire him to review marketing materials, budgets, and property reports to determine if they are consistent with each other and if they accurately describe what the developers intend to sell. He also testified that he is aware of industry customs and practices regarding the type of information that developers usually put into their marketing materials and property reports, as well as the purpose of including such information. Notably, condominium developers have sought his opinion regarding what information would be attractive to potential condominium buyers. Levin also testified that he has experience reviewing property reports, budgets, and marketing materials after-the-fact to

7

verify that developers delivered a property consistent with those materials. He, therefore, can draw upon his experience to assist the jury with understanding the purpose of property reports and marketing materials in the industry and why a condominium developer, such as Trump, would include certain information in such materials.

At the hearing, the Trump Defendants argued that Levin lacks the requisite expertise to opine about the design of these materials because his background includes work exclusively with residential condominiums, as opposed to hotel condominiums. Although the property at issue is part of a hotel condominium property, Levin testified that the documents utilized for the deal at issue were the same type of documents used for a residential condominium sale. Indeed, he testified that there were no material differences between the documents used in this case and those used in the residential condominium deals he has handled over the last thirty years. Moreover, the Trump property is a luxury condominium and Levin testified that he has worked with approximately 70% of the luxury condominium properties in Chicago. Levin's years of experience with condominium developments, particularly with luxury condominiums, sufficiently prepare him to opine on the documents and materials used in the sale of the Trump luxury condominium. Any differences in the hotel and residential condominium industries affect the weight of Levin's opinions, not their admissibility.

Furthermore, the Trump Defendants' argument that Levin's methodology is unreliable because he applies his personal experience and knowledge of industry customs and practices to actions taken by the Trump Defendants is misguided. (Defs.' Mem. at 9.) Levin's analysis is not inherently unsound because he draws upon his experience and industry knowledge rather than a proven formula, surveys, or established data. *See, e.g.*, *Metavante Corp. v. Emigrant Sav.*

*Bank,* 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data."). Rather, as the Supreme Court has recognized, "there are many different kinds of experts, and many different kinds of expertise." *Kumho Tire Co.,* 526 U.S. at 150. Indeed, the Advisory Committee Notes to Rule 702 state:

> Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.

Fed. R. Evid. 702. Furthermore, Levin does more than simply assert the "bottom line," as he provides background about the property reports and marketing materials, including their role in the sales process and what they contain, and applies that to documents that the Trump Defendants used. *Metavante*, 619 F.3d at 761 (requiring an expert to explain why certain actions were commercially reasonable based on his experience in the industry rather than just asserting the bottom line conclusion); (Levin Report at 10-29.)

The Trump Defendants also contend that Levin does not explicitly connect the dots between specific facts and specific experiences in his report to elucidate his conclusions. (Defs.' Mot. at 11.) Levin provides sufficient information, however, about the bases for his opinions throughout his report, including the facts he analyzed to reach his conclusions. Moreover, during the *Daubert* hearing Levin explained in more detail how he applied his experience to the facts at hand. Specifically, Levin testified that he reviewed and compared the marketing materials, budgets, and property reports, along with the statements of the Trump employees in their depositions, in the same manner he would if hired to give an opinion to a condominium developer as part of his work. He explained that throughout his thirty year career he has

9

conducted analysis similar to that which he conducted here. *See Lapsley v. Xtex, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) ("The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury.") (quoting *Kumho Tire Co.,* 526 U.S. at 152). In fact, he has given over a hundred opinions to condominium developers regarding the content and design of property reports and marketing materials similar to those which he gives here. Levin, therefore, is qualified to offer Opinions One and Two with respect to the design of the materials at issue. Moreover, as Goldberg notes, "while jurors may have some knowledge regarding general marketing practices, it is likely that many of them never considered buying non-residential luxury property nor a hotel business operation. [] Levin's testimony will 'assist' the jury in understanding these important issues." (Pl.'s Resp. at 11.)

For the foregoing reasons, Levin may testify as to the information contained in the property reports and marketing materials at issue, as well as the design and purpose of such materials in the industry. He may also opine as to what purpose and design the specific information contained in the reports and materials at issue would have when a condominium developer includes such information. He may not, however, take his opinions a step further and opine upon the mental state that any Trump employee or the Trump Organization specifically possessed in creating these documents, as he has not demonstrated expertise or specialized knowledge to offer such additional opinions.

Finally, although Levin has experience to opine on the design of these materials, he does not, however, have sufficient expertise to opine on what reasonably prudent buyers would

10

conclude, or what they in fact did conclude in this case. Levin testified that most of his experience relates to work with condominium developers rather than with potential purchasers. Indeed, in his report, he describes his experience with purchasers, namely members of condominium associations and boards, as relating to the "operation, management and administration of condominium properties." (Levin Report at 2.) In his report, he does not identify any specific experience assisting buyers with purchasing properties or with interpreting marketing materials or property reports. Additionally, at the hearing, he testified that he is not a psychologist, who may have expertise on how a purchaser interprets language or materials. Levin also conceded during his testimony that he did not hold any focus groups, conduct any surveys, or interview any buyers in order to evaluate how buyers would view and interpret the Trump Defendants' marketing materials and property reports. *See, e.g., LG Elec. v. Whirlpool Corp.*, No. 08 C 242, 2010 WL 2921633, at *2 (N.D. Ill. July 22, 2010) (allowing an expert to testify in a false advertising case about the impact alleged misrepresentations would have on potential purchasers based on the results of surveys that he designed to test the effect on purchasers). Levin, therefore, has not demonstrated that he possesses any specialized knowledge or experience that would allow him to assess how a reasonable purchaser would view or interpret certain condominium documents.

In fact, when asked during the hearing about what type of value a buyer would have believed he was receiving for certain amenities described in the Trump materials, Levin stated that he would not speculate about what a buyer might think. Indeed, any testimony Levin would provide about how potential buyers would interpret the Trump materials, or what conclusions purchasers would or did draw from these materials, would be too speculative to be admissible.

11

*See Daubert*, 509 U.S. at 590 (stating that expert opinion must be more than "subjective belief or unsupported speculation"). Levin, therefore, may not testify to the portions of Opinions One and Two regarding what a reasonably prudent buyer would or did conclude based on a review of the Trump marketing materials and property reports.

**II.     Opinions Four and Five - What the Trump Organization Believed**

The Trump Defendants also seek to exclude testimony regarding what the Trump Organization believed. Specifically, they seek to exclude Levin's Opinions Four and Five. Opinion Four states:

> . . . the Trump Organization **believed** that the ownership as condominium property of an undivided percentage interest in the significant features and amenities of the luxury hotel operated by the Trump Organization on behalf of the owners as a Trump-branded hotel would be attractive to the market for luxury hotel condominium units.

(Levin Report at 4 (emphasis added).) Levin's Opinion Five is that:

> . . . the Trump Organization **concluded, believed and was aware** prior to the inception of the Trump Tower Chicago project that it would be a "disaster," "bad for the building," and contrary to the interests of the Trump Organization, for the hotel condominium association to, in fact, own and operate the significant features and amenities of a Trump-branded luxury hotel.

(*Id*. at 5 (emphasis added).) The Trump Defendants argue that Opinions Four and Five are inadmissible for the same three reasons as Opinions One and Two, namely that (1) the opinions are inadmissible state of mind opinions; (2) Levin is not qualified; and (3) the opinions are unreliable. (Defs.' Mem. at 12.)

Unlike Opinions One and Two, however, Levin does not have any expertise to support these opinions and these opinions will not assist the jury. *See, e.g., Aponte v. City of Chicago, No.,* No. 09–CV–8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011) ("[E]xpert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable

12

of drawing its own conclusions without the introduction of a proffered expert's testimony."). According to the Seventh Circuit, "expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person, assists the jury in understanding facts at issue, or puts the facts in context." *U.S. v. Welch*, 368 F.3d 970, 974 (7th Cir. 2004). Specifically, Levin has no specialized expertise to offer these opinions of the Trump Defendants' state of mind and subjective knowledge as compared to any juror interpreting the words and actions of the Defendants.

Specifically, in Opinions One and Two, Levin opines on what beliefs the Trump Defendants held, and at what point in time. Levin has provided no basis, however, for why he would have a better understanding of the thoughts or intentions of the Trump Defendants than the jury. To the contrary, Levin testified that he could not recall ever giving an opinion, at any point during his lengthy career, regarding what a developer concluded, believed, or was aware of years prior. Indeed, Goldberg does not even contend that Levin is applying any specialized knowledge or experience to conclude the Trump Defendants held certain beliefs. Rather, according to Goldberg, Levin bases Opinions Four and Five on admissions by Trump employees and internal Trump business records, which the jury can similarly review and interpret. (Pl.'s Resp. at 13; Levin Report at 28-34.) Indeed, Levin even included quotes from deposition transcripts in Opinion Five itself. He also testified that the deposition testimony on which he based Opinions Four and Five is easy to understand. The jury, therefore, does not need assistance to interpret and understand the Trump Defendants testimony and Levin does not possess any particularized expertise to offer any assistance.

13

Additionally, according to Goldberg, Opinions Four and Five "[have] to do with including in [Levin]'s analysis of the facts of this case the admissions made by Trump employees – including Donald Trump himself – regarding the business decisions they made and the business reasons they provided for those decisions." (*Id.*) Effectively, these opinions are relaying the admissions of Trump employees without applying any expertise to analyze those decisions. Such testimony does not assist the jury and therefore is not proper testimony for an expert.

Furthermore, Levin testified that in Opinion Five he was evaluating the credibility of the witnesses whose depositions he read. Levin has no expertise to evaluate the credibility of these witnesses. Moreover, "assessing credibility is in the 'exclusive province' of the trier of fact." *Jordan v. City of Chi*, No. 08 C 6902, 2012 WL 88158, at *3-4 (N.D. Ill. Jan. 11, 2012). Levin, therefore, cannot offer such credibility assessments at trial.

Finally, the Court previously held that Levin may opine as to "the consistency of Defendants' explanations with industry custom, practice and policies, to assist the jury in evaluating the evidence." (Daubert Op. at 6.) Nothing in this opinion changes that previous finding. Levin may not, however, go a step further and conclude that the Trump Defendants held certain beliefs at any point in time.

### III. Opinion Eight - Misrepresentation

The Trump Defendants argue that the Court should exclude Opinion Eight, which states in relevant part:

> . . . the Trump Organization **misrepresented** available information in marketing and selling Trump Tower Chicago hotel condominium units before it issued the Fourth Amended Property Reports.

14

(Levin Report at 5 (emphasis added).) In its August 24, 2012 order on the Original *Daubert* Motion, the Court addressed Opinion Eight, described therein as Opinion Two, and found it admissible in part. (Daubert Op. at 3 (emphasis added).) Specifically, the Court concluded that "Mr. Levin's testimony about industry practices and custom may assist the trier of fact in, among other things, evaluating [Goldberg's] arguments that Defendants concealed their development plans, **misrepresented information**, and offer only pre-textual reasons to suggest otherwise." (Daubert Op. at 5 (emphasis added).) The Court explained in open court before the *Daubert* hearing that its previous ruling on Opinion Eight stands, but clarified that Levin would not be able to testify as to any affirmative intent on the part of the Trump Defendants to misrepresent information.

As the Court stated at the hearing, Levin has no specialized knowledge or experience to support his analysis or conclusion that the Trump Defendants "misrepresented" information. Although Rule 704 allows an expert to opine on ultimate issues in a case, which would include misrepresentation here, such an opinion must still meet the admissibility requirements of the Rules. *See* Fed. R. Evid. 704. Specifically, Rule 702 requires an expert to be qualified. *See* Fed. R. Evid. 702. Levin, however, lacks sufficient qualifications to meet this requirement regarding his opinion that the Trump Defendants "misrepresented" information.

As with Opinions Four and Five, the jury is as capable as Levin to evaluate the evidence and determine whether the Trump Defendants affirmatively misrepresented information. *See DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) ("He could give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer

15

that money was the real reason); but he could not testify as an expert that GM had a particular motive."); *Johnson v. Wyeth LLC*, No. 10–C–2690, 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012) (precluding plaintiff's experts from offering "opinions concerning defendants' motive, intent, knowledge, or other state of mind"); *In re Yasmin and YAZ (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, 09–md–2100, 2011 WL 6302287, at *12 (S.D. Ill. Dec. 16, 2011); *U.S. Gypsum Co. v. Lafarge N. Am., Inc.*, 670 F. Supp. 2d 768, 775 (N.D. Ill. 2009) (citing Dahlin v. Evangelical Child and Family Agency, No. 01 C 1182, 2002 WL 31834881, at *3 (N.D. Ill. Dec. 18, 2002) ("testimony that does little more than tell the jury what result to reach is unhelpful and thus inadmissible, and testimony regarding intent – essentially an inference from other fact – iis even more likely to be unhelpful to the trier of fact") (internal citation omitted)); *Nat'l Jockey Club v. Ganassi*, No. 04–3741, 2009 WL 2177217, at *8 (N.D. Ill. July 21, 2009) ("intent of the parties must be determined by the jury, and expert opinion testimony is not necessary on this point"). Indeed, Levin has no knowledge of the mental state of the Trump Defendants when they created these materials, and has no expertise to assess whether they intentionally included the alleged misrepresentations in these materials. Levin may not, therefore, opine as to whether the Trump Defendants had the intent to misrepresent information in their materials, but may testify, as discussed in the Court's previous opinion, that the materials contained misrepresentations.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to exclude Opinions Four and Five in their entirety, and Opinions One, Two, and Eight in part, and directs the parties to adhere to the limitations contained in this opinion.[2]

**DATED: January 18, 2013**

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**

---

[2] Defendants also argue, in a footnote in their motion and in a brief paragraph in their reply brief, that the Court should preclude Levin from giving narrative testimony of facts. (Mot. at 10 n. 4; Reply at 7.) The Court deems these arguments waived for purposes of this *Daubert* motion. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are waived"); *Long v. Teachers' Retirement Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (cursory arguments made in footnotes are waived). Defendants also waived any argument that Levin cannot testify that "features and amenities of the Trump-branded luxury hotel, such as the meeting rooms, function room and ballrooms" were "significant" representations, as noted in Opinion Two, as Defendants raised this issue for the first time in its reply brief. (Reply at 3.)