**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE GOLDBERG, )<br> )<br>           Plaintiff, )<br> )<br>          v. )<br> )<br>401 NORTH WABASH VENTURE LLC and )<br>TRUMP CHICAGO MANAGING )<br>MEMBER LLC, )<br> )<br>          Defendants. ) | Case No. 09 C 6455 |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

On October 16, 2012, the Court granted summary judgment in favor of Defendants 401

North Wabash Venture LLC and Trump Chicago Managing Member LLC (collectively, the

"Trump Defendants") on Count IV of Plaintiff Jacqueline Goldberg's ("Goldberg") Amended

Complaint. (R. 169.)  The Court denied summary judgment as to Count I – violations of the

Illinois Condominium Property Act (the "Condominium Act"); Count II – violations of the

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); Count III – violations

of the Federal Interstate Land Sales Full Disclosure Act ("Interstate Land Sales Act"); and Count

V – Breach of Contract.  (R. 48, Amend. Compl.)  The Court set the case for trial on May 13,

2013.  (R. 174.)   The Trump Defendants now move to strike Goldberg's demand for a jury trial,

arguing that Goldberg is not entitled to a jury trial based on the relief she seeks under these

counts.  (R. 190, Mot.)  For the following reasons the Court grants the motion as to Count I, but

denies it as to the remaining counts.

## BACKGROUND

This action arises out of a dispute over the sale of two hotel condominium units in the Trump International Hotel and Tower in Chicago, Illinois. Goldberg "claims that the Trump defendants unlawfully lured her into signing Purchase Agreements by misrepresenting that [hotel condominium units] included the ownership and control of [] condominium common elements the hotel property and business operations, such as the ball rooms and food beverage operation." (R. 178, Pl.'s Resp. at 1.) The Court presumes familiarity with the factual and procedural background of this litigation, and incorporates herein by reference the background information set forth in the Court's written opinions dated August 24, 2012 (R. 160) and October 15, 2012 (R. 170).

## LEGAL STANDARD

"The right to a jury trial in federal court hinges on federal procedural law." *Dexia Credit Local v. Rogan,* 629 F.3d 612, 625 (7th Cir. 2010) (citing *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004)). Federal Rule of Civil Procedure 38(a) preserves a party's right to a jury trial as provided by the Seventh Amendment to the Constitution or as otherwise provided by federal statute. *Id*; *see also* Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to the Constitution-or as provided by a federal statute-is preserved to the parties inviolate.") The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . .." U.S. Const., Amdt. 7. To determine whether a particular action will resolve legal rights and thus give rise to a jury trial right, the Court must examine both the nature of the claim for relief and the remedy sought. *Id.* (citing *Marseilles*

*Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 648 (7th Cir. 2002)).
Specifically, the Seventh Circuit employs a two-part test. *Id.* First, the Court must "compare the
. . . action to 18th-century actions brought in the courts of England prior to the merger of the
courts of law and equity. Second, [the Court must] examine the remedy sought and determine
whether it is legal or equitable in nature." *Id*; *see also Tull v. U.S.*, 481 U.S. 412, 417-18, 107 S.
Ct. 1831, 1835, 95 L. Ed. 2d 365 (1987). The second inquiry, regarding the nature of the remedy
sought, is more important than the search for an 18th Century analogue. *Id*; *see also Chauffeurs,
Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S. Ct. 1339, 108 L. Ed. 2d
519 (1990); *Marseilles*, 299 F.3d at 648.

Federal Rule of Civil Procedure 12(f) provides that a district court "may strike from a
pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous
matter." Fed. R. Civ. P.12(f); *see also Delta Consulting Grp., Inc. v. R. Randle Const., Inc*., 554
F.3d 1133, 1141 (7th Cir. 2009). Motions to strike pursuant to Rule 12(f) are usually
discouraged. *See Smith v. Bray*, 681 F.3d 888, 903 (7th Cir. 2012). Motions to strike are
appropriate, however, if they serve to expedite litigation, which can include striking jury
demands. *See, e.g., Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992)
(allegations may be stricken if the matter bears no possible relation to controversy); *see also
DeliverMed Holdings, LLC v. Medicate Pharm. Inc.,* Nos. 10–cv–684–JPG–DGW,
10–cv–685–JPG–DGW, 2012 WL 345380, at *2 (S.D. Ill. Feb. 1, 2012) (finding that the
"pending motion to strike, if meritorious, may expedite the case by removing unwarranted jury
demands."). The party moving to strike bears the burden of proof. *See Otero v. Dart*, No. 12 C
3148, 2012 WL 5077727, at *2 (N.D. Ill. Oct. 18, 2012) (citing *E & J Gallo Winery v. Morand*

*Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003)).

## ANALYSIS

As noted above, the Seventh Circuit has held that the "nature of the remedy" inquiry is the more important part of the test for whether a plaintiff's claims entitle her to a jury. *Dexia,* 629 F.3d at 625. In other words, "whether the remedy sought is equitable or legal in nature" will determine Goldberg's right to a jury trial on most of her claims. (*Id.*) The Trump Defendants argue that Goldberg's claims do not support her jury demand because she seeks "entirely equitable relief – for which the right of trial by jury does not exist." (R. 191. Def.'s Mem. at 2.) Specifically, Defendants claim that Goldberg merely seeks the equitable remedies of rescission and restitution damages to return to the status quo before Goldberg entered into the Purchase Agreements with the Trump Defendants. The Trump Defendants also argue that the Court should strike the jury demand for Count II because there is no right to a jury trial under the ICFA and Goldberg's punitive damages claims are frivolous. (*Id.* at 7-14.)

Goldberg does not contest that rescission is an equitable remedy or that she has no right to a jury trial if she seeks only equitable remedies. According to Goldberg, however, she seeks legal remedies, such as compensatory and punitive damages, in addition to, or as an alternative to, rescission. (R. 198, Resp. at 5-6.) In addition to rescission and an injunction, Goldberg's prayers for relief include "compensatory damages including, but not limited to, the return of her $516,487.40 in deposit monies . . . plus interest on such monies . . . and any other monetary damages available under applicable law." (*See* Amend. Compl. at Counts I, II, III, V.) Goldberg also argues that she can seek alternative remedies and then, after trial, pick which remedy to pursue, which she intends to do. (Resp. at 3.)

4

Notably, Goldberg does not directly address Defendants' arguments regarding the Condominium Act (Count I) and thus has waived any argument specifically relating to Count I. *See, e.g., U.S. v. Foster,* 652 F.3d 776, 792 (7th Cir. 2011) ("Failure to respond to an argument results in waiver.") Based on Goldberg's failure to address Defendants' argument that money damages are not available under the Condominium Act[1], and the fact that Goldberg did not seek punitive damages under Count I, the Court grants Defendants' motion as to Count I because the only relief available under the Condominium Act is equitable in nature. The Court addresses the remaining counts in turn.

## I. Count III (Interstate Land Sales Act) and Count V (Breach of Contract)

The prayers for relief in Count III and Count V seek an order enjoining the closing on Goldberg's HCUs; allowing Goldberg to rescind the Purchase Agreements; awarding compensatory damages including her deposit and interest "and any other monetary damages available under applicable law;" and awarding attorney's fees and costs. (Amend. Compl. at 28, 33.) The Trump Defendants acknowledge that Goldberg references "compensatory" and "other monetary damages" in her Amended Complaint, but argue that these labels are "wrong" and "irrelevant" because the only damages Goldberg has sought are those restoring the status quo, specifically, returning her deposit and any interest due on that money. (Def.'s Mem. at 4.)

Defendants note that, in her required initial Rule 26(a) disclosures, and two subsequent amendments to those disclosures, Goldberg does not provide any computation or description of

---

[1] Specifically, under the Condominium Act, "[f]ailure on the part of the seller to make full disclosure as required by this Section shall entitle the buyer to rescind the contract for sale at any time before the closing of the contract and to receive a refund of all deposit moneys paid with interest thereon at the rate then in effect for interest on judgments." 765 ILCS 605/22.

monetary damages other than her earnest money deposit and related interest. (Reply at 3; R.

199-4, Reply Ex. B at ECF 3, 8; R. 199-4 at ECF 7 (stating that her "claims for damages include,

but are not limited to, the approximately $561,000 in earnest money deposits that [she] made

under the terms of the Purchase Agreements, including the interest on such deposits as well as

any statutory interest allowed under the law, punitive damages, and statutory attorney's fees and

costs.").) This lack of detail is not dispositive, however, as Goldberg does state in her Rule 26(a)

disclosures that some of the witnesses will testify about her potential actual and compensatory

damages. Moreover, whether she can prove these damages with sufficient certainty is an issue

for trial, not for this motion.

Furthermore, Goldberg also seeks monetary damages explicitly in both Count III and

Count V of the Amended Complaint. In Count III, she alleges that she

> has been damaged through, among other things, the loss of her deposit monies, the
> interest on such monies, the value of her HCUs, the loss of monies and benefits she was
> to derive from the purchase of her HCUs, including but not limited to, her proportionate
> share of the revenue and commissions from the Trump Tower Meeting/function
> Ballrooms, unlimited use of her HCUs without impingement of her ability to earn rental
> income through the Trump Defendants' HCU Rental Reservation Program, rental income
> from her HCUs when she is not suing them and access to the Trump Tower Health Club
> when she is not occupying HCUs.

(Amend. Compl. Count III ¶ 77.) Under the Interstate Land Sales Act, a plaintiff may bring a

suit in law or equity, and "the [C]ourt may order **damages**, specific performance, or such other

relief as the court deems fair, just, and equitable." 15 U.S.C. § 1709 (emphasis added).

Goldberg's prayer for "any other monetary damages available under [the Interstate Land Sales

Act]," therefore, would include a prayer for damages, like those which she articulated.

In Count V, Goldberg alleges that she "is entitled to. . . an award of compensatory

damages proximately caused by Defendant's material breaches and/or substantial non-

performance of its obligations under the Purchase Agreements." (*Id*. Count IV ¶ 79.) She also

includes a prayer for "any other monetary damages available under [breach of contract law]."

Defendants do not contest that Illinois common law supports recovery of actual damages for

breach of contract claims. Goldberg's allegations, therefore, sufficiently assert a right to a jury

trial on Counts III and Count V.

The Trump Defendants attempt to undermine Goldberg's jury right by calling upon the

doctrine of election of remedies. Specifically, they argue that Goldberg elected to pursue the

remedy of rescission and cannot, therefore, also pursue the inconsistent remedy of actual

damages. (Def's. Mem. at 4.) Under the election of remedies doctrine, "when a party has two

remedies proceeding upon opposite and irreconcilable claims of right, the one adopted excludes

the other." *Haymer v. Countrywide Bank, FSB*, No. 10 C 5910, 2011 WL 3205365, at *3 (N.D.

Ill. July 28, 2011) (citing *Medcom Holding Co. v. Baxter Travernol Labs., Inc*., 984 F.2d 223,

228 (7th Cir. 1993)). Indeed, "[u]nder Illinois common law, the doctrine of election of remedies

is applicable only where a party has elected inconsistent remedies for the same injury or cause of

action." *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, No. 09 C 4963, 2011WL 3439253, *7

(N.D. Ill. Aug. 5, 2011) (citing *Hanson-Suminski v. Rohrman Midwest Motors, Inc*., 386 Ill.

App.3d 585, 596-97, 461, 898 N.E.2d 194, 325 Ill. Dec. (Ill. 2008)).

Defendants are correct that "'[a] remedy based on affirmance of a contract (e.g.,

damages) is generally inconsistent with one based on the disaffirmance of the contract (e.g.,

rescission).'" *PHL Variable Ins. Co. v. Robert Gelb Irrevocable Trust,* No. 10 C 957, 2010 WL

4363377, at *3 (N.D. Ill. Oct. 27, 2010) (quoting *Lempa v. Finkel*, 278 Ill. App.3d 417, 663

N.E.2d 158, 215 Ill. Dec. 408 (Ill. App. Ct. 1996)). The Seventh Circuit, quoting the Third

Circuit, has explained, however, that

> [t]he so-called 'inconsistency of remedies' is not an inconsistency between the remedies themselves . . . [I]t means that a certain state of facts relied upon as the basis of a certain remedy is inconsistent with and repugnant to another certain state of facts relied upon as the basis of another remedy. When a certain state of facts under the law entitles a party to alternative remedies, both founded upon the identical state of facts, these remedies are not considered inconsistent remedies, though they may not be able to 'stand together'; the enforcement of the one remedy being a satisfaction of the party's claim. In such case the invocation of the one remedy is not an election which will bar the other . . .

*Medcom,* 984 F.2d at 228 (citing *Abdallah v. Abdallah*, 359 F.2d 170, 174-75 (3rd Cir. 1966)).

Here, Goldberg has included multiple counts in her Amended Complaint, and various remedies in each count, based on a common set of facts. *See, e.g.,* Fed. R. Civ. P. 8(a) (allowing a party to seek alternative types of relief). She has not, as Defendants argue, simply elected rescission as her remedy. Asserting rescission as *one* of the remedies she seeks does not preclude her from alternatively seeking affirmance of the Purchase Agreements and related damages. Rather, she "may seek, but not obtain, both remedies." *Najjar v. Daleh,* No. 09 C 3554, 2011 WL 1770077, at *5 (N.D. Ill. May 9, 2011) ("[U]nder Illinois law, '[t]he victim of a fraud may elect one of two remedies. He may choose to keep the benefit of his bargain, leaving the contract in place and recovering damages for his injuries. In the alternative, he may elect rescission and restitution.'") (quoting *In re Green*, 241 B.R. 187, 199 (Bkrtcy. N.D. Ill.1999)); *see also Friederichsen v. Renard,* 247 U.S. 207, 213, 38 S. Ct. 450 (1918) (allowing a plaintiff, who sued to cancel a contract for exchange of lands and a deed, to amend his petition to alternatively seek monetary relief finding that he did not already elect an inconsistent remedy).

Moreover, "[t]he doctrine of election of remedies 'should be confined to cases where (1) double compensation of the plaintiff is threatened or (2) the defendant has actually been misled by the plaintiff's conduct or (3) res adjudicata can be applied.'" *Shelbourne*, 2011WL 3439253,

8

*7 (quoting *Kel-Keef Enter., Inc. v. Quality Components Corp.*, 316 Ill. App. 3d 998, 1008, 738

N.E.2d 524, 250 Ill. Dec. 308 (Ill. App. Ct. 2000) (citation omitted); *see also Olympia Hotels*

*Corp. v. Johnson Wax Develop. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990) (finding that the

election of remedy doctrine "seeks to prevent double recovery"). None of these circumstances

are present here. This is not a case where, for example, a defendant might be prejudiced if it

continued to perform aspects of a contract, based on a plaintiff's lawsuit for damages on the

contract, but the plaintiff later sued for rescission. *Cf., Medcom.*, 984 F.2d at 229. Here,

Goldberg did not close on the property at issue, but instead halted the transaction when she

discovered the alleged fraud and sought either equitable or legal relief from the court. (*See*

Amend. Compl. ¶ 74 ("Pursuant to an agreement entered into between Goldberg and the Trump

Defendants or around June 3, 2009, the Trump Defendants agreed not to proceed with the

closings on her HCUs.").)

There is also no threat of double recovery as Goldberg will not be able to enjoy a

judgment simultaneously rescinding and affirming the contract. The Court, therefore, will not

require her to elect which remedy she wishes to recover at this time. *See, e.g., Olympia*, 908

F.2d at 1371-72) (finding that "[i]t would be unreasonable to make [the plaintiff] choose between

the two forms of damages before trial and verdict" because the jury might only find that the

plaintiff had a good claim on either breach of contract or fraud and plaintiff would recover

nothing if the court forced her to choose a remedy); *see also Williamson?Company, LLC v. AML*

*& Assocs., Inc.,* No. 09 C 2631, 2009 WL 2391841, at *2 (N.D. Ill. Aug. 3, 2009) ("With no

election of remedies thus having taken place in the sense defined by the caselaw, [plaintiff] is not

stuck with the adverse consequences . . . that would flow from the pursuit of its contract remedy

to judgment."); *Donaldson v. Pharmacia Pension Plan*, 435 F. Supp.2d 853, 869 n. 5 (S.D. Ill. 2006) (quoting *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1144 (E.D.N.C. 1986)) ("Although plaintiffs may not obtain a duplicative recovery, there is no requirement that they elect one remedy over another prior to final judgment.").

Indeed, "[t]he point . . . is not that an election of remedies is required but that once made it may be final either by operation of res judicata or because a change of ground would create unreasonable surprise or unduly complicate or delay the litigation." *Olympia*, 908 F.2d at 1372 (interpreting Wisconsin case law which applies the same election of remedies analysis as Illinois). Because Goldberg has pled multiple remedies, and has not elected rescission as her only remedy at this stage, the Court denies Defendants' motion to strike Goldberg's jury demand as to Count III and Count V.[2]

---

[2] In their brief, Defendants tersely state in two sentences an additional argument based on the Purchase Agreements: "Nor are money damages available under Count V, for breach of contract. That is because the Purchase Agreements plainly state that upon breach by Seller, Purchaser's 'sole and exclusive remedy' is a refund of her earnest money." (Def.'s Mem. at 5 (citing Purchase Agreements, Dkt. No. 1-13 ¶12(b)).) Defendants do not signpost this argument when introducing its arguments earlier in their brief, elaborate on this argument at any other point in their brief, or mention it at all in their Reply. Defendants also offer no analysis of the Purchase Agreements' language or any case law to support this argument. Defendants, therefore, have waived this two-sentence, conclusory argument. *See U.S. v. Dickerson* 705 F.3d 683, 691 (7th Cir. 2013) (recognizing that an undeveloped argument is waived) (citing *U.S. v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)"); *see also U.S. v. Stafield*, 689 F.3d 705, 712 (7th Cir. 2012) ("Undeveloped arguments are considered waived.") (citing *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver."))).

## II.      Count II (Illinois Consumer Fraud and Deceptive Business Practices Act)

The Trump Defendants also seek to strike the jury demand as to Count II, the ICFA

claim.  Defendants' argument regarding Count II that Goldberg seeks only rescission fails for the

same reasons as stated above regarding Counts III and V.  Specifically, in Count II, in addition to

rescission and restitution, Goldberg seeks all monetary damages available under the ICFA as

well as punitive damages.  (Amend. Compl. at 26-27.)  Additionally, Goldberg alleges that she

> has been damaged through, among other things, the loss of her deposit monies, the
> interest on such monies, the value of her HCUs, the loss of monies and benefits she was
> to derive from the purchase of her HCUs, unlimited use of her HCUs without
> impingement of her ability to earn rental income through the Trump Defendants' HCU
> Rental Reservation Program, rental income from her HUCs when she is not using them
> and access to Trump Tower Health Club when she is not occupying her HCUs.

(*Id*. Count II ¶ 84.)   Also, in her deposition, Goldberg testified that she suffered damages from

the stress and anxiety caused by being the victim of Defendants' allegedly fraudulent business

practices and her inability to use the half-million dollar deposit she gave Defendants for a

different purpose.  (R. 198-3, Ex. 2, Goldberg Dep. at 170-72, 188-90); *see also Haymer*, 2011

WL 3205365 at *3 ("Under the ICFA, actual damages include compensation for mental

suffering.").  Her allegations establish a claim for monetary damages as an alternative to

rescission at this stage.

Additionally, in Count II, Goldberg seeks punitive damages, which Defendants concede

"are traditionally considered legal in nature."  (Def.'s Mem. at 8.)  Moreover, "the ICFA permits

recovery of punitive damages."  *Oshana v. Coca-Cola*, 471 F.3d 506, 512 (7th Cir. 2006).

Defendants argue, however, that Goldberg's demand for punitive damages is "frivolous" because

(1) Goldberg cannot obtain punitive damages because she has no actual damages, and (2) the

facts do not justify an award of punitive damages.  (*Id*. at 8-10.)  First, as discussed above, the

Court finds that Goldberg has sufficiently pled a demand for compensatory and monetary damages. Defendants' first argument is therefore moot.

Second, Defendants' latter argument fails because the Court cannot make factual determinations at this time. Moreover, during summary judgment, the Court found that, based on the factual record at that stage, the fact-finder could conclude that the Trump Defendants "never intended to convey the HCUs in the manner described in the Property Report and Marketing Materials that Ms. Goldberg received . . . and that Defendants therefore misrepresented and concealed material information." *Goldberg v. 401 N. Wabash et al.*, No. 09 C 6455, 2012 WL 4932653, at *19 (N.D. Ill. Oct. 16, 2012). Goldberg has asserted sufficient facts to make a plausible claim that Defendants acted "with fraud, actual malice, deliberate violence or oppression, or . . . willfully, or with such gross negligence as to indicate a wanton disregard for the rights of others," as required to warrant punitive damages. *In re Zimmer Nexgen Knee Implant Products Liab. Litig.*, MDL No. 2272, No. 11 C 5468, 2012 WL 3582708, at *13 (N.D. Ill. Aug. 16, 2012) (citing *Slovinski v. Elliot*, 237 Ill.2d 51, 58, 927 N.E.2d 1221, 340 Ill. Dec. 210 (Ill. 2010); *see also Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 78 F.3d 266 (7th Cir. 1996) ("Illinois courts do not favor punitive damages and insist that plaintiffs must establish 'not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness."). At this stage, the Court need not determine whether Goldberg will sufficiently prove a basis for punitive damages at trial, only that she has asserted such a basis. Goldberg, therefore, has asserted legal claims, in addition to her equitable claims, by seeking monetary and punitive damages in Count II.

The Trump Defendants additionally argue that, regardless of whether Goldberg seeks an equitable or legal remedy, there is no right to a jury trial under the ICFA. (Def.'s Mem. at 7-8.) Specifically, Defendants urge the Court to follow the Illinois courts, which do not recognize a right to a jury trial under the ICFA. (*Id.*) "The right to a jury trial in federal court, [however], hinges on federal procedural law." *Dexia*, 629 F.3d at 625. Furthermore, the Court here must follow the Seventh Amendment, "which is binding on federal courts but not state courts, [and] may create a right to a jury trial in federal court even where no such right exists in state court." *Kremers*, 714 F. Supp.2d at 916 (citing *Simler v. Conner*, 372 U.S. 221, 222, 83 S. Ct. 609, 9 L. Ed. 2d 691 (1963); *Wartman v. Branch 7, Civil Div., Cnty. Court, Milwaukee Cnty., State of Wis.*, 510 F.2d 130, 134 (7th Cir. 1975)). The Seventh Circuit has not yet decided whether there is a right to a jury trial in federal court under the ICFA. Numerous federal courts in this Circuit, however, have decided that plaintiffs in federal court have a right to a jury under the ICFA. *See, e.g., also DeliverMed Holdings,* 2012 WL 345380 at *2; *Kremers v. The Coca-Cola Co.,* 714 F. Supp. 2d 912 (S.D.Ill. 2009); *Cellular Dynamics, Inc. v. MCI Telecom. Corp.*, No. 94 C 3126, 1997 WL 285830, at *7 (N.D. Ill. May 23, 1997); *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.,* No. 92 C 2379 1993 WL 451410, at *2 (N.D. Ill. Nov. 2, 1993); *Inter-Asset Finanz AG v. Refco, Inc.*, No. 92 C 7833, 1993 WL 311772, at *4 (N.D. Ill. Aug. 12, 1993).

Defendants cite no case that stands for the proposition that a federal plaintiff does not have a right to a jury trial under the ICFA. They also offer no justification or legal analysis as to why the Seventh Amendment would not provide a right to a jury trial in federal court. Rather, Defendants cite to cases that did not analyze the issue because the plaintiffs "recognized" or "agreed" that there was no right or the party waived its right to the jury trial. (Def's. Mem. at 8.)

13

Defendants also cite to a 1993 federal district court decision. (Def.'s Mem. at 7.) In that 1993

decision, the judge merely stated, in dicta, without analysis, that the issue of fraud under the

ICFA is to be decided by the judge not the jury. *Midland Mgmt. Corp. v. Comp. Consoles Inc.*,

No. 87 C 0971, 1993 WL 69624, at *2 (N.D. Ill. Mar. 11, 1993). Notably, the judge further

explained that "[i]n a dual bench-jury trial the jury's verdict binds the judge with respect to any

factual issues common to the jury- and judge-tried claims." *Id.* The jury, therefore, may

consider fraud in a case, like here, where the other claims require the jury to assess the

potentially fraudulent conduct of the defendants. Rather than accepting Defendants' suggestion

to follow Illinois precedent based on federal caselaw lacking substantive analysis, the Court opts

to follow the persuasive, well-reasoned authority from its sister federal trial courts in this Circuit

which have found that there is a right to a jury trial on an ICFA claim in federal court.

As the court in *Kremers* explained, to determine if a jury right exists, the Court must:

"(1) compare the statutory action in question to analogous 18th-century actions existing at the

time the Seventh Amendment was ratified, which antedates, of course, the merger of the courts

of law and equity in the federal judicial system; and (2) examine the remedy sought, and

determine whether the claim and the remedy are legal or equitable in nature." 714 F. Supp.2d at

916 (citing *Tull*, 481 U.S. at 417-18; *U.S. v. One 1976 Mercedes Benz 280S*, 618 F.2d 453,

456-58 & n. 8 (7th Cir. 1980)). The Court previously found that Goldberg seeks both legal and

equitable claims, as required by the second inquiry. It, therefore, must compare an ICFA action

to analogous 18th-century actions existing at the time of the adoption of the Seventh

Amendment. *See, e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687,

708-09, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) ("The Seventh Amendment thus applies not

14

only to common-law causes of action but also to statutory causes of action analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.").

The Court agrees with the court in *Kremers* that an ICFA deceptive trade practices claim resembles a common law fraud claim with the additional requirement that a plaintiff prove intent to deceive or reasonable reliance on a misrepresentation. *Id.* at 917; *see, e.g., CDX Liquidating Trust v. Venrock Assocs.*, No. 04 C 7236, 2005 WL 3953895, at *3 (N.D. Ill. Aug. 10, 2005) (finding that, historically, courts have construed fraud claims as legal claims rather than equitable claims); *see also Williams Elecs. Games, Inc. v. Garrity,* 366 F.3d 569, 578 (7th Cir. 2004) ("[A] suit complaining of fraud is treated as a case at law if a legal rather than an equitable remedy is sought."). Indeed, United States Supreme Court "decisions establish beyond peradventure that in cases of fraud or mistake, as under any other head of chancery jurisdiction, a court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount can be recovered at law in an action sounding in tort or for money had and received." *Kremers*, 714 F. Supp. 2d at 917 (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 47-48, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989)). Furthermore, ICFA claims "sound basically in tort." *City of Monterey*, 526 U.S. at 709 (citing *Curtis v. Loether*, 415 U.S. 189, 195-96, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974)). Specifically, "the [ICFA] statute merely defines a new legal duty, and authorizes the court to compensate a plaintiff for injury caused by the defendant's wrongful breach." *Kremers*, 714 F. Supp. 2d at 918 (citing *Curtis* 415 U.S. at 195). The ICFA is, therefore, analogous to 18th-century actions at law, giving Goldberg a right to a federal jury trial on Count II.

15

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to strike the jury demand as to Count I and denies it as to Counts II, III, and V.  The Court will try all of the legal issues to the jury first and the jury's facutal findings will bind the Court as it evaluates the equitable relief sought in Count I.  *See, e.g., Williams Elecs.,* 366 F.3d at 578 ("And of course when an equitable remedy is sought in conjunction with a legal remedy the legal claim is tried first and the jury's findings bind the judge, in order to vindicate the right to a jury trial on legal claims.") (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962); *Snider v. Consolidation Coal Co.*, 973 F.2d 555, 559 (7th Cir. 1992)); *Chromas Techs.,* 356 F.3d at 735 ("Even when a plaintiff is entitled to a jury trial on his legal claims, the district court must nonetheless make an independent judgment as to any equitable issue . . . [however] the jury's determination of factual issues common to both the legal and equitable claims would bind the court.").

**DATED: March 11, 2013**

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**

16