**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE GOLDBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 09 C 6455 |
| ) | |
| 401 NORTH WABASH VENTURE LLC and ) | |
| TRUMP CHICAGO MANAGING ) | |
| MEMBER LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants' Motion in Limine No. 5 to exclude evidence of prior litigation. For the following reasons, the Court grants in part and denies in part the Motion.

**BACKGROUND**

The Court assumes familiarity with the factual and procedural history of this litigation as set forth in its October 16, 2012 Memorandum Opinion and Order. (R. 170, Order Granting in Part and Denying in Part Summ. J) ("Summ. J. Order"). In sum, Plaintiff alleges that Defendants "lured her into signing agreements to purchase two hotel condominium units ("HCUs")" in the Trump International Hotel and Tower ("Trump Tower") "by misrepresenting that the units included ownership of certain Trump-branded luxury hotel property and business operations that would generate over $5 million in revenue." (Summ. J. Order 1) (internal quotation marks and alterations omitted).

In its Motion in Limine No. 5, Defendants 401 North Wabash Venture LLC ("Wabash LLC") and Trump Chicago Managing Member LLC (collectively, "Defendants") seek to preclude Plaintiff Jacqueline Goldberg from "mentioning, inquiring about, adducing or presenting evidence" relating to *NKJ, LLC, et al. v. 401 N.Wabash Venture, LLC, et al.*, No. 08 CH02902 (Ill. Cir. Ct. 2008) (the "NKJ Litigation") or "any other litigation filed against Defendants or any of their affiliates." (Defs.' Mot. ¶¶ 1, 19.) Defendants contend such evidence is either irrelevant under Federal Rule of Evidence 401 ("Rule 401") or risks undue prejudice or confusion under Federal Rule of Evidence Rule 403 ("Rule 403").

## LEGAL STANDARDS

Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). In limine rulings avoid delay and allow the parties the opportunity to prepare themselves and witnesses for the introduction or exclusion of the applicable evidence. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Trial courts have broad discretion in ruling on evidentiary issues before and during trial. *See Christmas v. City of Chicago*, 682 F.3d 632, 640 (7th Cir. 2012). Moreover, regardless of the Court's initial ruling on a motion in limine, the Court may alter its discretionary ruling during trial. *See Luce*, 469 U.S. at 41-42; *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006). The Court will only grant a motion in limine when the evidence is clearly inadmissable for any purpose. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Betts v. City of Chicago, Ill.*, 784 F. Supp. 2d 1020, 1023 (N.D. Ill. 2011).

Pursuant to Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). Federal Rule of Evidence 402 "provides the corollary that, with certain exceptions, '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not admissible.'" *Boros*, 668 F.3d at 907; *see also* Fed. R. Evid. 402.

## ANALYSIS

### I. NKJ Litigation

Defendants assert that in January of 2008, the same counsel representing Plaintiff in the present case filed suit against Defendants on behalf of parties that "contracted to purchase [hotel condominium units], refused to close and then sued to rescind their agreements." The litigation also "was premised upon the theory that Defendants concealed changes [Wabash LLC] made to the Property Report and Rental Management Agreement in October 2007." (R. 215, Defs.' Mot. ¶ 5.) The NKJ Litigation "was resolved by confidential settlement with Defendants contesting liability." (Defs.' Mot. ¶ 9.) Plaintiff contends that evidence of the existence of "the NKJ Litigation" itself and the "fact that other HCU buyers in sworn pleadings made the exact same allegations as Ms. Goldberg" is relevant for two purposes: (1) issues of materiality of the Defendants' representations and Plaintiff's reasonable expectations as an HCU buyer; (2) to rebut Defendants' "self-serving" statements "touting their own good faith performance and good-faith conduct" and various factual defenses. (R. 236, Pl.'s Resp. 16-18.) Plaintiff proffers that the "proof of the existence of the NKJ Litigation will be provided by first-hand testimony from Trump employees, among others." (*Id.* at 20.) Finally, in anticipating an objection that the

3

evidence is merely forbidden "propensity evidence" under Rule 404, Plaintiff claims that it is admissible under Rule 404(b) as evidence of Defendants' "motive, opportunity, intent, plan, knowledge, identity, or absence of mistake." (*Id.* at 19.)

In the alternative, Defendants argue that even if evidence of the existence of the NKJ Litigation is relevant, the Court should exclude it under Rule 403 because any minimal probative value of such evidence is substantially outweighed by the danger of unfair prejudice and confusion. (Defs.' Mot. ¶ 12.) Specifically, Defendants argue that the claims in the NKJ Litigation are almost identical to those in the present suit and thus risk leaving the jury with the mistaken impression that the mere existence of litigation against Defendants means that they "did something wrong." (*Id.* ¶ 12.) Defendants further contend that the risk of unfair prejudice is "especially heightened" if the jury learns that Defendants settled the NKJ Litigation.[1] (*Id.* ¶ 13.)

### A. NKJ Litigation as Evidence of Reasonable Expectations or Materiality

A review of the background principles regarding the various use of prior litigation as evidence is necessary. A statement made in one lawsuit can be evidence, but not a judicial admission, in another law suit. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996). Moreover, while the "outcome of a lawsuit cannot be used in subsequent suits as evidence of underlying facts . . . references to the existence of prior litigation may be allowed." *Burbach Aquatics, Inc. v. City of Elgin, Ill.*, 08 CV 4061, 2011 WL 148394, at *2 (N.D. Ill. Jan. 18, 2011).

---

[1] This ruling does not address any obligations that may pertain to the parties under confidential settlement agreements governing the litigation in question.

Here, Plaintiff apparently seeks to offer the testimony of Trump employees "among others" as evidence of both the existence of the NKJ Litigation and the fact that the NKJ plaintiffs made the same allegations in sworn pleadings against Defendants as Plaintiff on the issue of Plaintiff's reasonable expectations and the materiality of Defendants' representations. To this extent, the Court agrees the probative value of such evidence, if any, is substantially outweighed by the danger of unfair prejudice or confusion under Rule 403. In her Response, Plaintiff does not identify any source for this evidence besides the first-hand testimony of Trump employees. Thus, any testimony these employees could offer on the existence of the litigation is only minimally probative as to the asserted purpose for the evidence–whether other *buyers* regarded Defendants' representations as to the revenue producing facilities of the hotel as material and that they expected that the HCUs included interests in such facilities.

Moreover, the risk of unnecessary delay or confusion of the issues under Rule 403 substantially outweighs any slight probative value. *See Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) (noting "potential for confusing or even misleading the jury by engaging in a series of mini-trials" by admitting evidence of prior allegations against defendant). The introduction of such evidence would consist of several mini-trials of the facts surrounding these other buyers' claims. Thus, the Court grants Defendants' Motion in Limine No. 5 with respect to any testimony of Trump employees[2] referencing the NKJ Litigation.

---

[2] In their Reply, Defendants contend that the Court should not permit Plaintiff to testify about "what she knows" about the NKJ Litigation. Because the same reasoning underlying this ruling with respect to the Trump employees applies equally to Plaintiff, Plaintiff's counsel may not seek to elicit such testimony. Furthermore, it is likely that Plaintiff's knowledge regarding the NKJ Litigation is based merely on hearsay.

B.  **Relevance of Litigation to Rebut Self-Serving Good Performance/Conduct Statements, Evidence that Other Buyers "Did Not Care" about the Ownership Interest in the Revenue Producing Facilities of the Hotel, and Evidence that Plaintiff Refused to Close on the HCUs "For Reasons Unrelated to the Loss of Ownership"**

Plaintiff similarly argues that evidence of the NKJ Litigation is relevant to rebut: (1) "self-serving statements the [] Defendants injected into this case touting their own good performance and good-faith conduct," such as deposition testimony from Mr. Donald Trump that he has been involved in "very little litigation from unit owners who are unhappy" and that he "cares" about such matters; (2) evidence that other buyers did not care about the ownership interest in the revenue producing facilities of the hotel; and (3) evidence that Plaintiff refused to close on the HCUs "for reasons unrelated to the loss of ownership." (Pl.'s Resp. 17-18.) In their Reply, Defendants do not foreclose the possibility of offering the first category of such testimony. With respect to the first category, Defendants assert that they will not offer such testimony if the Court grants the present Motion. With respect to the second category, as this concerns the subject of Plaintiff's Motion in Limine No. 6 to exclude evidence that other HCU buyers closed on their units, the Court will not address it in this ruling. Regarding the third category–evidence of the NKJ Litigation is not relevant because the filing of a law suit by other individuals does not make more or less probable the reasons why Plaintiff did not close on the HCUs. If Mr. Trump or any other Trump employees testify that very little litigation has taken place regarding the HCUs, they will open the door to cross examination on the NKJ Litigation. If Plaintiff believes that any witness has opened the door with this testimony, she must first front the issue with the Court outside the presence of the jury.

## C. NKJ Litigation - Rule 404(b)

In an effort to head off any argument that their proffered use of NKJ Litigation evidence is merely prohibited "propensity" evidence, Plaintiff contends that such evidence is also admissible under Federal Rule of Evidence 404(b) as evidence of Defendants' "motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident." (Pl.'s Resp. 19.) According to Plaintiff, evidence of the allegations in the sworn pleadings of the NKJ Litigation shows that 1) Defendants' representations to Plaintiff were not "inadvertent"; 2) the Defendants "planned and made a concerted effort to promote the HCUs as including 'an ownership interest in the revenue producing facilities of the hotel.'" (*See* Pl.'s Resp. 19.)

"Rule 404(b) provides that evidence of other acts is inadmissible 'to prove the character of a person in order to show action in conformity therewith' but may be admissible for other purposes, such as proof of motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident." *United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011) (citation omitted). When determining whether evidence is properly admitted under Rule 404(b), the Court considers whether: (1) the evidence is directed toward establishing a matter at issue other than the defendant's propensity to commit the conduct in question, (2) the evidence shows that the other act is similar and close enough in time to be relevant to the matter at issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice pursuant to Federal Rule of Evidence 403. *See id.*; *see also United States v. Gomez*, __ F. 3d __, 2013 WL 1352540, at *3 (7th Cir. Apr. 5, 2013); *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 646 (7th Cir. 2011). Under the second factor, the question of "how similar is similar

enough" depends on the theory that makes the evidence admissible, and courts reach this decision on a case-by-case basis. *See United States v. Foster*, 652 F.3d 776, 785 (7th Cir. 2011) (quoting *United States v. Torres*, 977 F.2d 321, 326 (7th Cir. 1992)). "Rule 404(b) involves a discretionary decision for which the trial judge is best suited because of 'his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceeding.'" *Okai v. Verfuth*, 275 F.3d 606, 611 (7th Cir. 2001) (quotation omitted).

As an initial matter, the use of Rule 404(b) as a basis of admissibility is questionable. Here, Plaintiff argues that "the fact that other HCU buyers in sworn pleadings made the exact same allegations as Ms. Goldberg shows that the representations made . . . were not inadvertent." (Pl.'s Resp. 19.) Thus, Plaintiff's purpose in admitting the evidence appears primarily to be to establish the "existence" of the litigation. This scenario is distinguishable from other cases in which courts have admitted Rule 404(b) evidence to show intentional misrepresentation based upon past conduct. *See Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 517 (7th Cir. 1997) (upholding admission of Rule 404(b) evidence of testimony of other landlords that the defendant had made similar misrepresentations to them in negotiating leases); *Bone Care Int'l LLC v. Pentech Pharms., Inc.*, No. 08-CV-1083, 2010 WL 4176983, at *4 (N.D. Ill. Oct. 19, 2010) (permitting expert testimony on drafter's role in drafting patent ancestor applications with purported misrepresentations to establish intent to deceive PTO during prosecution of related patent). In addition, to the extent Plaintiff seeks to admit evidence of litigation concerning the 2007 amendment to the Property Report at issue here–Plaintiff is not strictly seeking to admit evidence of "other" acts of Defendants, as much as to present evidence that other individuals also claimed liability on the basis of the same acts involved here. Even if the NKJ Litigation

8

involves some "other" acts of Defendants, the danger of unfair prejudice and confusion of the issues because the allegations are "exactly the same" substantially outweighs any probative value of such evidence under Rule 403. The Court will not admit evidence of the NKJ Litigation under Rule 404(b).[3]

## II. Friends and Family Litigation

In their Motion, Defendants acknowledge that Wabash LLC has been a defendant in three other kinds of lawsuit related to Trump Tower: (1) "suits by non-closing purchasers of residential condominiums seeking to avoid the liquidated damages provision in their purchase agreements; (2) "two suits by 'friends and family' of Defendants who purchased a residential condominium in 2003-2004 at a discount and whose contract were later allegedly canceled by Wabash"; and (3) "suits brought by contractors who worked on the construction of Trump Tower." (Defs.' Mot. ¶ 4.) Defendants assert that "[m]ost of this [o]ther litigation has been resolved by dismissal; some by confidential settlement," and that "[n]one has resulted in a judgment against Defendants." (*Id.* ¶ 5.) In response, Plaintiff clarifies that she seeks to offer evidence of the "Friends and Family Litigation." (Pl.'s Resp. 21.)[4] According to Plaintiff, that litigation concerns allegations that Defendants "promoted the fact that they offered to their 'friends and family' when the project first began in 2003 the opportunity to buy condominiums

---

[3] The Court reminds the parties that as mere allegations, pleadings are not evidence. *See Tibbs v. City of Chicago*, 469 F.3d 661, 663 n.2 (7th Cir. 2006). Moreover, to the extent Plaintiff seeks to introduce the complaint to prove the truth of its allegations, the affidavit and the statements within are hearsay. *Pacheco v. Will County Sheriff's Office*, No. 08 C 5403, 2010 WL 3155983, at *5 (N.D. Ill. Aug. 9, 2010).

[4] Because Plaintiff has not established the relevancy of the referenced litigation concerning non-closing purchasers and liquidated damages or the Trump Tower contractors, the Court grants Defendants' Motion with respect to these lawsuits.

at discounted prices in order to fuel early sales at the project" only to "cancel[] the discount deals unilaterally" four years after their "friends and family" signed the Purchase Agreements. (*Id.*) Plaintiff further contends that Defendants in their own defense "stated that the deals were cancelled because it was no longer in their financial interest to fulfill those promises, and that they had contract language in the deals to 'cover them' for the eventuality." (*Id.*)

Defendants contend that any evidence of other litigation against Defendants is not relevant and unfairly prejudicial under Rule 403. (*Id.* ¶ 16.) Plaintiff again invokes Rule 404(b) and argues that such evidence is admissible to prove (1) the "bait and switch modus operandi of the Trump Defendants to make big promises to generate publicity and fuel sales while privately planning to change the deal after the promotional benefits expired"; and (2) the absence of mistake on the part of Defendants' in including "the ownership of the revenue producing elements of the hotel over the course of four different iterations of the Property Reports." (*Id.*)

Plaintiff's reliance on Rule 404(b) similarly fails. Here, Plaintiff apparently argues that the sworn pleadings are evidence of prior litigation,[5] which in turn, is probative of Defendants' absence of mistake in its alleged misrepresentation. Again, Plaintiff's focus in her proffer of evidence appears to be on establishing the existence of litigation–the filing of suit by other individuals–and not any specific prior acts of Defendants from which a jury could infer the absence of mistake or modus operandi because of their similarity to the acts in question here. Moreover, even if the Court were to evaluate the evidence of the acts purportedly underlying the Friends and Family litigation under Rule 404(b), it would not be admissible. Although, applying

---

[5] As with the NKJ Litigation, to the extent Plaintiff seeks to introduce the pleadings in other litigation for the truth of the pleadings' allegations, this use is inadmissible hearsay. *See* Fed. R. Evid. 801, 802.

the second factor, there is some similarity in kind and temporal proximity between the acts because Defendants' alleged cancellation of the contracts for their financial benefit pertains to the same building and relative time period, this is not a sufficient similarity from which to infer the absence of a mistake in Wabash LLC's including or not including information in different versions of the Property Report. *United States v. Best*, 250 F.3d 1084, 1092 (7th Cir. 2001) (evidence of defendant's crack possession at house defendant rented rebutted suggestion that his presence in the crack house was the result of an innocent mistake). Under the third factor, Plaintiff has not proffered sufficient evidence to prove the acts because she relies on hearsay and allegations in other court proceedings. Finally, even more so than the NKJ Litigation, the danger of delay and confusion of the issues would substantially outweigh the probative value of such evidence under Rule 403. As with the NKJ Litigation, presentation of this evidence–which would likely be subject to factual dispute–would unnecessarily insert a "mini-trial" into the proceedings of little probative value. *See Duran*, 653 F.3d at 646.

Nor is the evidence admissible under Rule 404(b) to establish modus operandi. To qualify under Rule 404(b), modus operandi evidence must be both "idiosyncratic" and "bear a singular strong resemblance to the pattern of the offense charged." *United States v. Miller*, 673 F.3d 688, 700 (7th Cir. 2012) (quoting *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996)). "Generic" patterns are insufficient, because allowing such evidence of modus operandi "would gut the Rule, rendering it useless as a check on character evidence that would otherwise be inadmissible." *United States v. Thomas*, 321 F.3d 627, 635 (7th Cir. 2003). Here, Plaintiff fails to explain how Defendants' alleged cancellation of the purchase agreements for their own financial benefit is particularly "idiosyncratic" or bears a "singular" resemblance to the pattern

11

of the alleged misrepresentation here. Moreover, modus operandi evidence is generally only admissible to prove the identity of the defendants, which here is not in dispute. *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3840336, at *3 (N.D. Ill. Aug. 30, 2011) (quoting *Connelly*, 874 F.2d at 417 n. 7 ("Rule 404(b) does not specifically enumerate modus operandi proof as an exception for similar act evidence but this court has approved the introduction of modus operandi evidence under the 'identity' exception to Rule 404(b).")). Thus, the Court grants Defendants' Motion with respect to the evidence of the Friends and Family Litigation to prove modus operandi or absence of mistake.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion.

**DATED: April 11, 2013**

        **ENTERED**

        _____
        **AMY J. ST. EVE**
        **United States District Court Judge**