**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUELINE GOLDBERG,<br><br>Plaintiff,<br><br>v.<br><br>401 NORTH WABASH VENTURE LLC and TRUMP CHICAGO MANAGING MEMBER LLC,<br><br>Defendants. | ) | Case No. 09 C 6455 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff, Jacqueline Goldberg ("Goldberg"), moves to bar Defendants', 401 North Wabash Venture L.L.C. and Trump Chicago Managing Member, L.L.C (the "Trump Defendants"), expert witness, Brent Howie ("Mr. Howie") from offering certain opinions at trial. (R. 204, Mot.) For the following reasons, the Court denies Ms. Goldberg's motion.

**BACKGROUND**

Mr. Howie is the co-owner and President of Provident Management Corporation, a privately held hotel-condo management and consulting company. (R. 206-1, Ex. A, Howie Rept. at ECF 5.) He has over 30 years of experience in the hotel-condo industry on an array of properties, including high-end luxury hotel-condos. (*Id*. at ECF 5.) Since 1980, he has provided services for at least two dozen different hotel-condominium projects. (*Id*. at ECF 7.) Mr. Howie's work with a hotel-condo project typically begins in the pre-construction phase. (*Id*. at ECF 6.) Mr. Howie utilizes a process called "condominium mapping" in which he identifies "each area and component of the property and determines how the area should be legally 'mapped,' *i.e*., whether it should be identified as a condominium unit, commercial area,

common element or limited common element." (*Id.* at ECF 6.) He is "also closely involved in planning, drafting and if needed, amending the documents necessary to the development and operation of the project, including: the hotel-condo property reports or prospectus; the declaration of condominium and related documents; the agreements between the condominium association ("Association") and the property manager; the rental management agreements; the association's projected operating budgets; and the hotel operator's budgets." (*Id*. at ECF 6-7.)

**LEGAL STANDARD**

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert*[.]" *Lewis v. CITGO Petroleum Corp*., 561 F.3d 698, 705 (7th Cir. 2009). "The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)); *see also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 804 (7th Cir. 2012) ("The purpose of [the *Daubert* ] inquiry is to vet the proposed testimony under Rule 702's requirements that it be "based on sufficient facts or data," use "reliable principles and methods," and "reliably appl[y] the principles and methods to the facts of the case.") (quoting Fed. R. Evid. 702)). Whether to admit expert testimony rests within the discretion of the district court. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); *Lapsley*, 689 F.3d at 810 ("we 'give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'") (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)). "The proponent of the expert bears

the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis*, 561 F.3d at 705.

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Ortiz v. City of Chi.*, 656 F.3d 523, 526 (7th Cir. 2011). It is clear that an expert may render opinions based on his or her experience alone. "In certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony." Fed. R. Evid. advisory committee note. The Seventh Circuit has repeatedly stated that "genuine expertise may be based on experience or training." *U.S. v. Conn,* 297 F.3d 548, 556 (7th Cir. 2002), quoting *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996); *see also Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 761 (7th Cir. 2010).

District courts employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert

in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152).

**ANALYSIS**

Ms. Goldberg argues that the Trump Defendants plan to elicit certain opinions, which are legally inadmissible under Federal Rule of Evidence 702 and *Daubert*. (R. 206, Mem. at 1.) Specifically, Ms. Goldberg seeks to exclude the following opinions:

> (1) hotel condominium unit ("HCU") buyers "do not want" to own the revenue producing facilities of the hotel property – the meeting, ballrooms, food and beverage operations, etc. – because they prefer "hands-free management" (the "HCU buyer preference" opinion); and
>
> (2) the Trump Defendants are "similar to" other developers who would not have known when the Trump Tower project began that the industry "best practice" was to separate and not to provide HCU buyers the ownership and control of the revenue producing facilities of the hotel property (the "Trump 'is similar' to developers who [would not] know' opinion)

(Mem. at 2, 9 (internal citations omitted).)

Defendants concede that "[b]ecause the Court has precluded Plaintiff's expert Robert Levin [] from testifying about 'what reasonably prudent buyers would conclude, or what they in fact did conclude' from Defendants' written materials, Defendants acknowledge that Mr. Howie should not opine about the preferences or conclusions of HCU purchasers and owners." (R. 227, Resp. at 2.) Defendants, therefore, "do not contest this aspect of the Motion." (*Id*.) As a result, the Court denies Plaintiff's motion as to the "HCU buyer preference" opinion as moot.

## I. The "Trump 'Is Similar' To Developers Who Would Not Know" Opinion

In his report, Mr. Howie offers the opinion that:

> Developers (or their executives) that are experienced and sophisticated in the development of hotels and/or residential condominiums, but that are not experienced in relevant hotel-condo developments, very likely would not know merely based on that previous experience the importance of [not including as common elements of the Association any essential physical property facilities that would be required for a successful and competitive hotel operation]. In particular, they typically would not independently conclude that it is problematic for the hotel-condo, the HCU owners and the Association to include essential facilities of the hotel as hotel-condo common elements.

(R. 206-1, Howie Rept. at ECF 15.) As a subset to that opinion, Mr. Howie offered the following opinion:

> Based upon the facts that I have been given, at the time Wabash developed Trump Tower, the Trump Organization had developed only one other hotel-condo, and it did not contain ballrooms, conference rooms or any other large-scale commercial facilities. Thus, at the relevant time, the Trump Organization was similar to those developers I have encountered over the years who have considerable experience with residential condos and/or hotels but little experience in the specialized hotel-condo industry.

(*Id*. at ECF 16.)

Goldberg argues that the Court should exclude this latter opinion, the "Trump 'is similar' to developers who would not know" opinion, because Mr. Howie has no legally sufficient basis to support the opinion. (Mem. at 12.) Specifically, Ms. Goldberg argues (1) that Mr. Howie cannot testify as to what the Trump Defendants knew or did not know when the Trump Tower project began, or at any other time as that would be an improper state of mind opinion; and (2) Mr. Howie has no reliable basis for this opinion.

### A. State of Mind

Although the Court will not allow an expert to offer a baseless opinion about a person's state of mind, as explained in its previous *Daubert* opinions regarding the admissibility of Mr. Robert Levin's ("Levin") opinions, the Court disagrees with Ms. Goldberg's characterization of

this opinion as an improper state of mind opinion. Rather, Mr. Howie opines on the similarity between the Trump Organization and other developers based on their prior experience. Indeed, Defendants explain that this opinion does not concern Defendants' state of mind, but "simply compares the Trump Organization's objective and historical development experience with that of Mr. Howie's other sophisticated developer client." (Resp. at 6.) Moreover, it directly responds to Mr. Levin's opinion that it is common industry practice for "established developers like the Trump Defendants" to make condo ownership decisions before selling units. (Resp. at 6 (citing R. 160 at 3).) This opinion does not require Mr. Howie to speculate regarding the thoughts or impressions which the Trump Defendants held at any time, but rather offers an opinion on what similarly situated developers would know based on similar experience.

**B. Reliable Basis**

Ms. Goldberg also argues that Mr. Howie lacks a sufficiently reliable basis to offer this opinion. Specifically, Ms. Goldberg argues that Mr. Howie cannot compare the Trump Organization to other developers with whom he has worked because he is "personally not familiar with Mr. Trump's experience." (Mr. Howie Dep. at 322:15-24.) Ms. Goldberg further contends the Court should bar this opinion because Mr. Howie based it on assumptions provided by Defendants' counsel and did not confirm the accuracy of those factual assumptions. (Mem. at 12-13; Howie Rept. at ECF 9-10; R. 206-2, Ex. B, Howie Dep. at 340.)

Indeed, it appears that Mr. Howie based his opinion almost exclusively on the facts which Defendants' counsel told him to assume and his own experience. (Howie Rept. at ECF 9-10.) At his deposition, Mr. Howie testified that he reviewed one or two of the property reports, but did not rely upon that review to produce his report. (Howie Dep. at 262:3-263:6.) He did not review any deposition testimony; business records maintained by the Trump Organization

relating to the development of the project; documents subpoenaed or produced in this case; Mr. Levin's report; or any books, treatises or publications regarding this case. (*Id.* at 263:7-264:7.) He relied, rather, on a set of facts which Defendants contend are "objectively verifiable, well supported by the factual record in this case, and indisputably true." (Resp. at 8.) In fact, several witnesses testified consistently with these assumptions at their depositions. (*Id.* (citing 227-1, Exs. A, B, C).)

Ms. Goldberg argues that the record contradicts the facts Mr. Howie assumed to form his opinions, yet cites only to paragraphs of the Statement of Undisputed Facts she filed in support of her response to Defendants' Motion for Summary Judgment to establish their falsity. (Mem. at 13-14 (citing R. 133, ¶¶ 1-13, 19-21.) First, admissions made for purposes of summary judgment would not bind Defendants at trial. *See, e.g.*, *CIVIX-DDI, LLC v. Hotels.com, L.P.* , No. 05 C 6869, 2012 WL 6591684, at *9 (N.D. Ill. Dec. 18, 2012) (citing Rule 56(g)). Second, the Statements of Undisputed Facts to which Ms. Goldberg cites do not directly contradict the facts upon which Mr. Howie relied, particularly when read in connection with Defendants' objections to those facts. (*See* R. 133, ¶¶ 1-13, 19-21; 165, ¶ 5.) Moreover, "[u]nder settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert." *Williams v. Ill.*, 132 S. Ct. 2221, 2228, 183 L. Ed.2d 89 (2012). At trial, therefore, Mr. Howie may "explain the facts on which his [] opinion is based without testifying to the truth of those facts." *Id.* Defendants must, however, introduce through other witnesses evidence of these facts upon which Mr. Howie relies.

Furthermore, the gaps in Mr. Howie's knowledge and preparation do not undermine his ability to offer this opinion, but rather potentially may affect his credibility and the strength of

his conclusions. Notably, Ms. Goldberg concedes that an expert may testify based on assumptions, even assumptions provided by counsel. (R. 241, Reply at 2); *see also Richman v. Sheahan*, 415 F. Supp.2d 929, 942 (N.D. Ill. 2006) ("The question is not whether the opinion is based on assumptions, but whether there is some factual support for them."). She misguidedly argues, however, that Mr. Howie's failure to verify these assumptions constitutes a failure in his methodology, which a *Daubert* inquiry addresses. The methodology Mr. Howie used, however, was to compare the Trump Organization to other developers, utilizing his experience and the assumed facts, which Defendants provided him and which have support in the record. Flaws in Mr. Howie's factual basis go to the weight the jury affords the testimony, not to its admissibility. *See, e.g., Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 362–63 (7th Cir. 2001) (observing that "admissibl[ity] under the *Daubert* standard is different from the weight to be accorded" the expert testimony); *Jordan v. City of Chi.*, No. 08 C 6902, 2012 WL 254243, at *9 (N.D. Ill. Jan. 27, 2012) (denying *Daubert* challenge and holding that the movant could explore alleged weaknesses in expert's testimony "through vigorous cross examination at trial"); *see also BASF Corp. v. Aristo, Inc.*, No. 2:07 CV 222 PPS, 2012 WL 2529213, at *5 (N.D. Ind. June 29, 2012) ("It is for the jury to decide the correctness of the facts that underlie each of these experts' opinions."). Ms. Goldberg may cross-examine Mr. Howie on these issues at trial. *See, e.g., Lapsley*, 689 F.3d at 805 (stating that, if expert testimony meets the *Daubert* threshold of relevance and reliability, the opposing party may test the strength of the evidence and basis before the jury with "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof") (citing *Daubert*, 509 at 596); *see also Harrington v. Richter*, 131 S. Ct. 770, 792, 1278 L. Ed.2d 624 (2011) ("In many instances cross-examination will be sufficient to expose defects in an expert's presentation."); *see also Bielskis v. Louisville Ladder*,

*Inc*., 663 F.3d 887, 894 (7th Cir. 2011) ("We have recognized that 'shaky' expert testimony may be admissible, subject to attack on cross-examination."); *Smith v. Ford Motor Co.* , 215 F.3d 713, 719 (7th Cir. 2000) ("The question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based."). The Court will, therefore, allow Mr. Howie to opine, based on his experience, what a developer with hotel-condominium experience similar to the Trump Organization's would know regarding the importance of not including as common elements of the condominium association any essential property facilities that would be required for a successful and competitive hotel operation.

## II. Other Opinions Offered by Mr. Howie

In her reply, Ms. Goldberg also argues that the Court should bar Mr. Howie from offering new opinions or a direct "response" to Levin's report that Defendants did not disclose. (Reply at 5, 11.) Ms. Goldberg notes that, despite Defendants retaining Mr. Howie "to respond to certain points" made by Mr. Levin, Mr. Howie never reviewed Mr. Levin's report. (Reply at 5; Resp. at 2; Howie Dep. at 263:24-264:1.) First, a reply to a motion *in limine* is not the appropriate mechanism for asking the Court to bar additional opinions. Second, Defendants do not seek to introduce opinions not previously disclosed. Rather, the opinions which Ms. Goldberg cites from Defendants' response brief are merely paraphrased versions of the two over-arching opinions with Mr. Howie included in his report. (Compare Resp. at 2 with Levin Rept. at ECF 11, 15.) The Court, therefore, denies Goldberg's request to bar "the so-called other opinions" as moot. (Reply. at 11.) Additionally, because the Court denies this request, the Court denies as

moot Defendants' motion to strike the portions of Ms. Goldberg's reply regarding these "other opinions." (R. 244, Mot. to Str.)

**III. Plaintiff Calling Mr. Howie as Witness in Her Case-in-Chief And/Or Reading His Deposition Testimony at Trial**

In a footnote in her memorandum, Ms. Goldberg notes that, after Defendants saw Mr. Howie on her witness list, they stated that they intended to move *in limine* to bar her from calling Mr. Howie as a witness or reading to the jury portions of his deposition testimony. (Mem. at 1, n. 1.) Defendants, however, did not file any such motion *in limine*. In their response to this motion, Defendants addressed Ms. Goldberg's footnote and stated that they would decline to make Mr. Howie, who lives more than one hundred miles away in Florida, available to testify in her case. (Resp. at 12 (citing Fed. R. Civ. P. 45(b)(2).) Defendants also argue that Ms. Goldberg cannot read portions of Mr. Howie's testimony as part of her case because it constitutes hearsay and she will have an opportunity to question him during Defendants' case. (Resp. at 14-15.)

If Defendants call Mr. Howie as a witness in their case, the Court will allow Plaintiff to conduct a direct examination of Mr. Howie at that time. If Defendants do not call Mr. Howie, the Court will allow Ms. Goldberg, pursuant to Rule 32, to read portions of Mr. Howie's deposition into the record as part of her case-in-chief. *See* Fed. R. Civ. P. 32(a)(4)(B). If the latter occurs, the Court will require Ms. Goldberg to submit deposition designations, to which Defendants may object. The Court directs Defendants to inform the Court at the final pre-trial conference on May 2nd whether they intend to call Mr. Howie as a witness. If they will not call Mr. Howie as a witness, the Court will set a deadline for Ms. Goldberg to submit deposition designations.

## CONCLUSION

For the foregoing reasons, the Court denies Ms. Goldberg's motion and denies as moot Defendants' motion to strike portions of Ms. Goldberg's reply to this motion.

**DATED: April 15, 2013**

**ENTERED**

______________________________
**AMY J. ST. EVE**
**United States District Court Judge**