# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JACQUELINE GOLDBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09 cv 6455 |
| ) | |
| 401 NORTH WABASH VENTURE LLC and ) | Judge Amy J. St. Eve |
| TRUMP CHICAGO MANAGING MEMBER ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIMS AND PUNITIVE DAMAGES

Stephen Novack
John F. Shonkwiler
Rebekah H. Parker
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Doc. #578714

Defendants 401 North Wabash Venture LLC and Trump Chicago Managing Member LLC, by and through their attorneys, pursuant to Federal Rule of Civil Procedure 50(a), respectfully submit this Motion for Judgment as a Matter of Law on: (1) Plaintiff's Consumer Fraud Act (the "Fraud Act") claim; (2) Plaintiff's Interstate Land Sales Full Disclosure Act (the "Land Sales Act") claim; and (3) Plaintiff's prayer for punitive damages under the Fraud Act.

## LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue . . . [and] a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). "In other words, the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff. '[A] mere scintilla' of evidence, however, will not suffice." Hall v. Forest River, Inc., 536 F.3d 615, 619 (7th Cir. 2008) (citations omitted).

## BACKGROUND

As this Court has held numerous times -- and recently re-affirmed -- "Plaintiff's theory of liability for each of these counts is that Defendants 'knew all along that they would never deliver the ownership of the hotel property and operations to HCU buyers,' and therefore misrepresented, failed to disclose, omitted and/or concealed material information in connection with the sale of the HCUs." (Dkt. No. 313 at 2 (quoting Dkt. No. 170, at 21-22.) In other words, Plaintiff must prove -- with respect to each alleged misrepresentation -- that Defendants had a secret contrary intent that they concealed. (Id.)

The Court described the alleged misrepresentations that comprise each of Plaintiffs' claims as follows:

> Ownership of Common Elements. Defendants *represented* that "Goldberg would receive her proportionate share of the Trump Tower Common Elements that included Meeting/Function Rooms, Ballrooms, storage areas and laundry facilities" *but concealed* that Defendants "were going to remove the Hotel Meeting/Function Rooms, Ballrooms, storage areas and laundry facilities from the common elements . . . and convert them into commercial property" (R. 48, Am. Compl. ¶¶ 81(d), 82(d));
>
> Estimated Operating Budget. Defendants *represented* that "the HCU Condominium Association would receive approximately five million dollars in commissions and rental fees generated by the Trump Tower Meeting/Function Rooms and Ballrooms" *but concealed* that Defendants "were going to keep all rental fees and commissions generated by the Trump Tower Meeting/Function Rooms and Ballrooms" (*id.* ¶¶81(e), 82(e));
>
> The HCU Rental Program. Defendants *represented* that (1) Plaintiff would be "able to use her HCU as much as she wanted without adversely affecting her ability to rent it through the [rental program]"; (2) Defendants would promote the "fair allocation of rental opportunities [based on a rotation system]"); and (3) owners would "receive the gross revenue for daily rental," *but concealed* that Defendants "were going to require Goldberg to contractually agree, as a condition of her participation [in the rental program]" that: (1) "each use of her HCU would adversely affect her ability to rent her HCU" through the program; (2) she would pay "previously undisclosed daily charges"; (3) Defendants "have complete discretion" over the allocation of rental opportunities; and (4) she would pay "for all damages to her unit caused by guests . . . as well as all charges, including room rental and hotel services incurred by such guests for which they failed to pay" (*id.* ¶¶ 81(a)-(c) & 82(a)-(c), (g));
>
> Health Club. Defendants *represented* that owners were "entitled . . . to use the Trump Tower Health Club at any time," *but concealed* that Defendants would only permit owners to use the Health Club when "actually occupying [the] unit" (*id.* ¶¶ 81(f), 82(f)).

(Dkt. No. 313 at 2.)

2

As explained in more detail below, Plaintiff has not introduced any direct evidence of concealment. Instead, she relies on Mr. Trump's testimony about his awareness that condominium associations are not well suited to <u>operate</u> ballrooms and meeting rooms. (5/15/13 Tr. at 529-531). But, as explained below, this circumstantial evidence is not sufficient to allow a reasonable jury to find that Defendants concealed any secret plans with respect to ownership of the ballrooms and meeting rooms. And, it does not relate at all to Plaintiff's claims that Defendants' concealed plans relating to storage areas, the Rental Management Program, or the health club. Indeed, it seems Plaintiff has abandoned her claims based upon these alleged misrepresentations altogether.

Finally, with respect to "laundry facilities," Plaintiff introduced evidence that Defendants decided, as of October 2004, not to have commercial laundry facilities on the Trump Tower premises. (5/15/13 Tr. at 729-731.) But, as explained below, she failed to establish that: (a) Defendants ever represented that there would be on-site "laundry facilities"; or (b) that any alleged misrepresentation concerning the "laundry facilities" was material to her decision to purchase HCUs.

## **ARGUMENT**

I. **Plaintiff Has Not Introduced Sufficient Evidence That Defendants "Knew All Along" They Would Change Ownership Of The Meeting/Function Rooms And Ballrooms**

Plaintiff has no direct evidence that Defendants concealed any secret plans pertaining to ownership of the common elements, including the meeting/function rooms and ballrooms. She has no documents that refer to any secret plan; she never heard anyone discussing a secret plan; and she has not elicited any testimony from anyone from the Trump Organization admitting to a secret plan. While this Court has already ruled that Plaintiff can attempt to prove an alleged

3

secret plan through circumstantial evidence, Plaintiff does not have enough circumstantial evidence for a reasonable jury to find in her favor.

Plaintiff's circumstantial case boils down to Donald Trump's testimony that he believed that condominium associations generally are not well suited to <u>run</u> or <u>manage</u> ballrooms, meeting rooms, and food and beverage operations. (5/15/13 Tr. at 529-531.) For one thing, the ability to manage food and beverage is irrelevant because unit owners were never going to own the food and beverage operations, and Plaintiff introduced no evidence to the contrary. And, as for the meeting rooms and ballrooms, it is not sufficient that Mr. Trump had doubts about the Association's ability to manage these facilities. That is because Mr. Trump testified that he was aware, before Plaintiff signed the Purchase Agreements, that the condominium association would <u>not</u> be operating the meeting/function room and ballrooms; rather, it was always the intent that the Trump Organization manage these facilities. (5/15 Tr. at 528:6-12, 561:11-12, 569:19-20).

What matters is whether Mr. Trump was aware -- before Plaintiff signed the Purchase Agreements -- that condominium associations should not be permitted to <u>own</u> these types of facilities, even if they contracted with third parties to operate them. And Plaintiff has no evidence -- not even circumstantial evidence -- that Mr. Trump knew that it was not a good idea to allow the condominium association to <u>own</u> these facilities before Plaintiff signed the Purchase Agreements. In fact, Mr. Trump repeatedly testified that he did not become aware of the problems with <u>ownership</u> until Mr. Petrus brought them to his attention sometime in <u>2007</u> -- after Plaintiff signed the Purchase Agreements. (<u>E.g.</u>, 5/14/13 Tr. at 427:2-8; 5/15/13 Tr. at 560:21-561:5, 561:18-562:4, 569:21-570:2, 570:24-571:3.) Further, there is no evidence that Mr. Trump even discussed ownership of the common elements with Mr. Reiss. In fact, Mr. Reiss testified that he made the decision as to what would be included in the hotel condominium common

4

elements in the First Amendment -- without discussing it with Mr. Trump. (5/14/13 Tr. at 332:3-334:2; 334:25-335:3.)

Plaintiff's only other circumstantial evidence of alleged misrepresentations is the opinion testimony of her expert, Robert Levin. Mr. Levin was asked whether, in his professional opinion, there were any misrepresentations in the Property Reports provided to Plaintiff when she signed the Purchase Agreements. He testified that "the whole atmosphere between the third and the fourth amendment of the property report changed the entire manner in which the association would be run from the fourth amendment on." (5/17/13 Tr. at 1288:4-13.) His testimony is entirely consistent with Defendants' explanation that they amended the Property Report: (a) consistent with their contractual right to do so; (b) because the executives who made the initial decision about the common elements left; and (c) new executives joined the Trump Organization and recommended these changes to the common elements.

Moreover, Mr. Levin's testimony has nothing to do with Defendants' knowledge or intent before Plaintiff signed the Purchase Agreements; rather, it focuses solely on the period of time after Plaintiff signed the Purchase Agreements. All of the relevant jury instructions (Nos. 34, 35 and 39), however, focus on Defendants' conduct before or at the time of Plaintiff's purchase. Thus, Mr. Levin's testimony does not support the inference that the Third Amendment concealed changes that Defendants knew they would make in the Fourth Amendment.

Because Plaintiff has no direct evidence, and only a scintilla of circumstantial evidence, in support of her claim that Defendants concealed their plans at the time she signed the Purchase Agreements, the Court should grant Defendants judgment as a matter of law as to the alleged misrepresentations concerning the meeting/function rooms and ballrooms.

5

## II. Plaintiff Has Not Introduced Any Evidence That Defendants Made Any Misrepresentations As To The Storage Areas, Health Club, Or Rental Management Program (Paragraphs Three Through Five)

Plaintiff has alleged that Defendants made misrepresentations concerning the storage areas, health club and Rental Management Program, all the while concealing their true intentions. Plaintiff has not substantiated any of these allegations at trial. She has not introduced any evidence that Defendants made misrepresentations as to these subjects; that Defendants concealed any facts as to these subjects; or that any of these subjects were material to a reasonable HCU purchaser. At best, all Plaintiff has proven is that these items were changed by the Fourth Amendment. But Plaintiff has no evidence -- not even circumstantial evidence -- that Defendants concealed plans to make these changes.

## III. Plaintiff Has Not Introduced Sufficient Evidence That Defendants Made Any Material Misrepresentations Regarding Any Laundry Facilities (Paragraph Two)

Plaintiff claims that Defendants represented that she would own her proportionate share of the "laundry facilities" but concealed their secret intent to take ownership of these facilities. This claim fails for at least two independent reasons.

First, the provision in the Property Report and its amendments is unambiguous and did not represent that there were any plans to include any particular "laundry facilities" in Trump Tower. Specifically, the term "laundry facilities" -- which is not defined anywhere in the Property Report or any of its amendments -- appears only in Section 3.1 of the Declaration to the Property Report. (E.g., Ex. 1B at SJ000019.) Section 3.1 starts by reciting the definition of Common Elements -- i.e., "all portions of the Property, except the Units" (both of which are defined terms) -- and then states that they include, "without limitation and if applicable, any of the following items located at the Property: . . ." (Id.; emphasis added.) The list that follows is not exhaustive (i.e., it is "without limitation"); it includes items that may or may not be part of

6

the plans for the property; and also includes non-precise descriptive terminology (e.g., "structural parts of the Building"). The inclusion of the term "laundry facilities" in that list reflected that, if anything generally matching that description was included in the "Property," it would be a Common Element. Because this language is unambiguous, the Court can interpret it as a matter of law. See, e.g., Kallman v. Radioshack Corp., 315 F.3d 731, 735 (7th Cir. 2002) ("'[i]f the language [of the contract] unambiguously answers the question at issue, the inquiry is over'") (quoting Church v. General Motors Corp., 74 F.3d 795, 799 (7th Cir. 1996)).

Second, even assuming arguendo that Defendants represented that "laundry facilities" would be located onsite at Trump Tower, Plaintiff cannot establish that this fact was material to her decision to purchase two HCUs. Both claims going to the jury -- the Fraud Act claim and Land Sales Act claim -- require a misrepresentation or concealment of a material fact. Indeed, this Court has already ruled that the jury will be given the following "materiality" instruction with respect to both claims:

> The deception must have been material to plaintiff. Deception is "material" where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase. (Dkt. No. 313 at 4, Order re Consumer Fraud Act Instructions; Dkt. No. 314 at 1, Order re Land Sales Act Instructions.)

Materiality can be determined as a matter of law "where "the misrepresentation 'is of such a nature that there can be no dispute as to its materiality.'" Bageanis v. Am. Bankers Life Assur. Co. of Florida, 783 F. Supp. 1141, 1145 (N.D. Ill. 1992) (quoting Commercial Life Insur. v. Lone Star Life Insur., 727 F.Supp. 467, 470 (N.D. Ill. 1989)); see also Endo v. Albertine, 863 F. Supp. 708, 717 (N.D. Ill. 1994) (materiality is a question of law "if the established misrepresentations or omissions are so obviously important or so obviously unimportant").

7

Here, Plaintiff's evidence has confirmed that: (a) "laundry facilities" were never defined in the Property Report or any of its amendments (Exs. 1B, 601-603); (b) "laundry facilities" were never mentioned in Defendants' marketing materials (Ex. 1B); (c) the only mention of "laundry facilities" in the approximately 300 pages of Property Reports and amendments that Plaintiff received before she signed the Purchase Agreements is its inclusion in a long list of items that comprise the Common Elements "if applicable" and "located at the Property" (Ex. 1B at SJ000019; Ex. 601 at SJ000005); (d) no documents, including the Property Reports, suggest that "laundry facilities" meant something that would generate revenue for unit owners; and (e) no witness testified that Plaintiff was ever told that she would receive revenue on account of any "laundry facilities".

Even Plaintiff did not claim at trial to have any memory of being told that there would be laundry facilities in the common elements, much less revenue-generating laundry facilities. All Plaintiff did was point to a provision in the marketing materials that said there would be "[d]ry cleaning and laundry valet services" available, which: (a) did not represent that any particular "laundry facilities" would be located onsite at the building; (b) did not say anything at all about the common elements; and (c) made no mention of revenue associated with any "laundry facilities." (Ex. 75, at DEFS 004380.) In any event, the single document to which Plaintiff referred -- which bears the heading "Residences" -- pertains to <u>residential</u> condominiums and makes <u>no</u> mention of <u>hotel</u> condominiums. (<u>Id.</u>)

In light of these facts, no reasonable jury could find that the mere mention of "laundry facilities" as a <u>potential</u> common element in almost 300 pages of material would cause a <u>reasonable</u> buyer to purchase an HCU. <u>See</u>, <u>e.g.</u>, <u>Ryan v. Wersi Electronic GmbH & Co.</u>, 59 F.3d 52, 54 (7th Cir. 1995) (alleged oral statements could not be material in light of contradictory written materials; affirming granting of defendant's motion for summary judgment

8

on Fraud Act claim); Zhou Jie Plant v. Merrifield Town Center Ltd. P'ship, 751 F. Supp. 2d 857, 867-8 (E.D. Va. 2010) (developer's failure to disclose information required under Sales Act was not material because reasonable purchaser of expensive condominium in prominent location would not have needed such information); Mack v. Plaza Dewitt Ltd. P'ship, 484 N.E.2d 900, 906, 137 Ill. App. 3d 343, 351 (1st Dist. 1985) (Fraud Act claim failed because alleged miscomputation of unit owner's percentage interest of common elements could not have been "of such essential importance to a prospective unit owner that no purchase of the unit would have been made"). Accordingly, the Court should grant judgment as a matter of law as to any alleged misrepresentation concerning laundry facilities.

**IV. Even If The Court Allows The Fraud Act Claim To Stand, Plaintiff Has Not Demonstrated Aggravated Circumstances To Support An Award Of Punitive Damages**

Plaintiff seeks punitive damages only in connection with her Fraud Act claim. Even if the Court finds that Plaintiff's alleged circumstantial evidence of concealment is sufficient to go to the jury, it does not satisfy Illinois' stringent punitive damages standard.

**A. Punitive Damages Are Disfavored And Must Be Supported By Aggravated Circumstances**

Punitive damages are disfavored in Illinois. E.g., Roboserve, Inc. v. Kato Kagaku Co., 78 F.3d 266, 275 (7th Cir.1996); Loitz v. Remington Arms Co., 138 Ill. 2d 404, 415, 563 N.E.2d 397, 402 (1990). Because of their penal nature, "courts must ensure that punitive damages are not awarded improperly or without consideration." Caparos v. Morton, 364 Ill. App. 3d 159, 178, 845 N.E.2d 773, 789-90 (1st Dist. 2006).

Illinois law is clear that the mere existence of a tort -- even an intentional tort -- is insufficient to support punitive damages. Canel & Hale, Ltd. v. Tobin, 304 Ill. App. 3d 906, 920, 710 N.E.2d 861, 873 (1st Dist. 1999). Indeed, "[p]unitive damages should not be awarded if the

9

defendant's misconduct is not <u>above and beyond</u> the conduct needed for the basis of the underlying cause of action."  <u>Id.</u> (emphasis added).  In other words, courts allow punitive damages only when "aggravated circumstances" accompany a wrongful act.  <u>Id.</u>

The "aggravated circumstances" that can justify an award of punitive damages "must 'involve some element of outrage similar to that usually found in a crime.'"  <u>Roboserve</u>, 78 F.3d at 276 (quoting Restatement (Second) of Torts § 908); <u>accord</u> <u>Loitz</u>, 138 Ill. 2d at 415.  "[I]f the evidence demonstrates only a garden variety fraud -- under Illinois law the question of punitive damages is not even submitted to the jury."  <u>Roboserve</u>, 78 F.3d at 276.  In order to elevate beyond "garden variety" fraud so as to justify the imposition of punitive damages, courts applying Illinois law generally require "evidence of an intent to injure constituting gross misconduct or malicious behavior[.]"  <u>Id.</u> at 277.

These standards apply equally to claims under the Fraud Act.  <u>See</u>, <u>e.g.</u>, <u>Smith v. Am. Gen. Life & Accident Ins. Co.</u>, 99 C 3743, 2002 WL 215527, at *9 (N.D. Ill. Feb. 11, 2002) (applying <u>Roboserve</u> and granting partial summary judgment on punitive damages prayer with respect to Fraud Act claim); <u>In re Saltzman</u>, 95 B 1522, 1997 WL 539660, at *14 (N.D. Ill. Aug. 22, 1997) aff'd sub nom. <u>Richeson v. Saltzman</u>, 142 F.3d 440 (7th Cir. 1998) (Fraud Act claim involved "at most simple fraud" rather than gross fraud and, thus, plaintiff was not entitled to punitive damages as a matter of law); <u>In re Hernandez</u>, 452 B.R. 709, 725 (Bankr. N.D. Ill. 2011) ("the court does not find such extraordinary or exceptional circumstances clearly showing malice and intent to injure as would warrant an award of punitive damages" on Fraud Act claim).

**B.     The Evidence Does Not Justify An Award Of Punitive Damages**

Even if the circumstantial evidence described above -- Mr. Trump's testimony and Mr. Levin's opinion -- were sufficient evidence to go to the jury on liability, it does not establish Plaintiff's entitlement to punitive damages.  That is because merely proving liability is not

enough. Illinois law requires "extraordinary or exceptional circumstances clearly showing malice or willfulness" that go "above and beyond" the underlying tort. E.g., Roboserve, 78 F.3d at 275-77 (while defendant "indeed played loose with its contractual obligations and was less than candid-and may even have lied-about its present actions and future plans[,]" this amounted to "little more than simple deceit and obfuscation"); Hernandez, 452 B.R. at 725 (while "fraud was clearly established" and evidence established a pattern of deceit, fraud was not "so gross as to warrant punitive damages"). Plaintiff's circumstantial evidence does not go "above and beyond" proving Defendants' liability. It does not demonstrate any aggravated circumstance, such as gross fraud, malice, or other wrongdoing akin to a crime. Therefore, the Court should grant Defendants judgment as a matter of law as to punitive damages.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court: (a) award judgment in favor of Defendants and against Plaintiff as to alleged misrepresentations concerning the meeting/function rooms and ballrooms; (b) award judgment in favor of Defendants and against Plaintiff as to alleged misrepresentations concerning the health club, Rental Management Program, and storage areas; (c) award judgment in favor of Defendants and against Plaintiff as to alleged misrepresentations concerning any "laundry facilities"; (d) award judgment in favor of Defendants and against Plaintiff as to punitive damages; and (e) grant Defendants such other and further relief as is appropriate.

    Respectfully submitted,

    401 NORTH WABASH VENTURE LLC
    and TRUMP CHICAGO MANAGING
    MEMBER LLC

    By: /s/ Stephen Novack
        One of Their Attorneys

## **CERTIFICATE OF SERVICE**

    Stephen Novack, an attorney, certifies that he caused copies of the foregoing to be served by electronically filing the document with the Clerk of Court using the ECF system this 21st day of May, 2013.

                                                                                              /s/ Stephen Novack