1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3
     JACQUELINE GOLDBERG,             ) Docket No. 09 C 6455
 4                                    )
                          Plaintiff, )
 5                                    )
                vs.                   )
 6                                    )
     401 NORTH WABASH VENTURE, LLC,   )
 7   a Delaware Limited Liability     )
     Company, et al.,                 ) Chicago, Illinois
 8                                    ) May 2, 2013
                          Defendants.) 10:17 o'clock a.m.
 9

10        TRANSCRIPT OF PROCEEDINGS - FINAL PRETRIAL CONFERENCE
                   BEFORE THE HONORABLE AMY J. ST. EVE
11

12   APPEARANCES:

13
     For the Plaintiff:          KULWIN, MASCIOPINTO & KULWIN, LLP
14                               BY:  MR. SHELLY B. KULWIN
                                      MR. JEFFREY R. KULWIN
15                               161 North Clark Street, Suite 2500
                                 Chicago, Illinois  60601
16

17   For the Defendants:         NOVACK AND MACEY, LLP
                                 BY:  MR. STEPHEN NOVACK
18                                    MR. JOHN F. SHONKWILER
                                 100 N. Riverside Plaza, Suite 1500
19                               Chicago, Illinois  60606

20
     Court Reporter:            MR. JOSEPH RICKHOFF
21                              Official Court Reporter
                                219 S. Dearborn St., Suite 1232
22                              Chicago, Illinois  60604
                                (312) 435-5562
23              * * * * * * * * * * * * * * * * * *

24                    PROCEEDINGS RECORDED BY
                      MECHANICAL STENOGRAPHY
25                 TRANSCRIPT PRODUCED BY COMPUTER
```

1          THE CLERK:  09 C 6455, Goldberg vs. 401 North Wabash

2    Venture.

3          THE COURT:  Good morning.

4          MR. NOVACK:  Good morning, Judge, Steve Novack and

5    John Shonkwiler on behalf of the defendants.

6          MR. J. KULWIN:  Good morning, your Honor, Jeff Kulwin

7    and Shelly Kulwin, who just stepped out in the hall for a

8    minute.  He'll be back in just a moment.

9          THE COURT:  Good morning.

10          Sorry I am running late.  Nobody could get along this

11    morning.  I am hoping you will change that.

12          (Laughter.)

13          THE COURT:  You are here for a final pretrial

14    conference.  Your trial date is May 13th.  That is a firm

15    trial date.

16          We are also going to do jury instructions today.

17          I set another status for you for next week -- you

18    should have received that --

19          MR. NOVACK:  We did.

20          THE COURT:  -- in case you have other issues that the

21    Court needs to address or for things that we do not fully

22    resolve today.

23          So, I have your case statement at Page 3, that I

24    will -- of your final pretrial order, that I will -- use to

25    read to the venire.

 1           I also have your list of witnesses.  I would like to

 2   go through those today to see if there is anybody that you

 3   know you are not going to call.

 4           And I am working off of your final pretrial order.

 5   This is Exhibit A, Plaintiff's Trial Witness List.

 6           And I think a couple of these are still subject to

 7   motions in limine, which I will get that last motion in limine

 8   group out --

 9           MR. SHONKWILER:  Your Honor, one --

10           THE COURT:  -- shortly.

11           MR. SHONKWILER:  One question about the case

12   statement.  There is a reference to breach of contract claims

13   in there.  Should that be removed?

14           THE COURT:  We are going to talk about that today, if

15   that is -- it is an issue for the Court.  I will hear you out

16   on whether or not I should get an advisory verdict from the

17   jury on that particular issue, given that the evidence is

18   completely intertwined with the evidence on the other counts.

19           So, I will talk about that later.

20           MR. S. KULWIN:  Okay.

21           THE COURT:  I will not talk about that at the moment.

22           So, I am working off of plaintiff's trial list.

23           Do you still plan on calling everyone who is listed

24   on your "Will Call"?

25           MR. S. KULWIN:  No.

1          THE COURT:  Goldberg, Levin, Vogue?

2          MR. S. KULWIN:  No, Judge.

3          THE COURT:  Okay.

4          So, tell me, if you would, please, Mr. Kulwin who you

5     are not going to call.

6          MR. S. KULWIN:  As we notified counsel yesterday, we

7     do not plan currently on calling, in our case-in-chief,

8     Mr. Flicker --

9          THE COURT:  Okay.  Which number is that, please?

10          MR. S. KULWIN:  That's No. 8.

11          THE COURT:  Okay.

12          MR. S. KULWIN:  No. 9, Mr. O'Callaghan; No. 14; No.

13     15.

14          THE COURT:  So, Pierson, Martens.

15          MR. S. KULWIN:  Right.

16          You've stricken 16 and 17.

17          And I think that's it.

18          There's one more.  Mr. Kulwin is telling me there's

19     one more.

20          MR. SHONKWILER:  Mr. Weiss?

21          MR. S. KULWIN:  Mr. Weiss.  That's correct.  We're

22     not planning on calling Mr. Weiss in our case-in-chief.

23          THE COURT:  And that is No. 6, Andrew Weiss.

24          MR. S. KULWIN:  That is No. 6.

25          THE COURT:  Okay.

1          MR. S. KULWIN:  With the following caveats.  We

2     reserve the right to call any one of them or all of them in

3     rebuttal.

4          We assume that we will open our rebuttal case in the

5     defense case, just like we assume that they will open up their

6     case in the plaintiff's case, without anyone waiving their

7     directed verdict motions, to save time.

8          THE COURT:  And I was going to ask you that.  I have

9     no problem, if you are both going to call the same witness --

10    so you do not have to recall -- that if Mr. Kulwin calls

11    Mr. Trump, for example, that rather than have to recall him in

12    your case, that you can just put in your case during

13    cross-examination of him.

14         MR. NOVACK:  Judge, we would intend to do that.  We

15    think it's a good idea.

16         The one caveat that we would have, similar to what

17    Mr. Kulwin just said, is that if stuff comes up during the

18    case that requires testimony from somebody -- testimony in our

19    case from someone -- who's already testified in plaintiff's

20    case, then we will call them for that purpose.  Because when

21    you -- when we first examine a witness, let's say the first

22    witness they call is one of our -- one of the witnesses we

23    would have called in our case.  We will certainly do our best

24    to cover all issues with that witness at that time.  But if

25    things come up in successive witnesses in their case, we need

1   the right to rebut.

2          THE COURT:  Okay.

3          MR. S. KULWIN:  Right.

4          THE COURT:  You will have that right.  Just raise it

5   with me first --

6          MR. S. KULWIN:  And I know that you said --

7          THE COURT:  -- before you recall.

8          MR. NOVACK:  Oh.

9          THE COURT:  You gave me a look of question.

10         So, if you want to recall Charles Reiss after he has

11  already testified, been crossed during your case, just raise

12  it with me first so that we can make sure that it is a true --

13  that it is appropriate to recall him in light of this

14  agreement.

15         MR. S. KULWIN:  And --

16         THE COURT:  You are giving me a puzzled look,

17  Mr. Novack.  Do you understand?

18         You are giving me a puzzled look.  Do you understand?

19         MR. NOVACK:  Oh, I didn't mean to.

20         THE COURT:  Okay.  Good.

21         I just want to make sure you understand.

22         MR. S. KULWIN:  He gives me that look all the time.

23         THE COURT:  I understand why he gives it to you.

24         MR. S. KULWIN:  Right.

25         (Laughter.)

```
 1           MR. NOVACK:  I have no comment as to whether I do

 2   that with Mr. Kulwin, my friend.

 3           (Laughter.)

 4           MR. NOVACK:  But at no time will I ever intend to do

 5   it to your Honor.

 6           THE COURT:  Well, if you do not understand something,

 7   I just want to make sure that you do.

 8           MR. S. KULWIN:  Point well-taken, Judge.  Point

 9   well-taken.

10           The other thing that we would caveat is, with respect

11   to some of these people that we're not calling, we do intend,

12   pursuant to Rule 32 and Rule 803, to read certain selected

13   party admissions.

14           THE COURT:  Okay.

15           MR. S. KULWIN:  And we would be reading them from

16   Mr. Weiss.

17           THE COURT:  Via deposition designations?

18           MR. S. KULWIN:  Yes.

19           THE COURT:  So, you plan on putting on his testimony

20   via --

21           MR. S. KULWIN:  Some.  Very --

22           THE COURT:  -- deposition?

23           MR. S. KULWIN:  Very limited.  It will just save a

24   lot of time to do it that way.

25           THE COURT:  Who do you plan on using deposition
```

1    designations for?

2              And, then, I am going to give you some tight

3    deadlines, given where we are.

4              MR. S. KULWIN:  Sure.

5              Right now we're planning on Mr. Weiss -- let me just

6    be sure -- possibly Mr. O'Callaghan.

7              And I will say there's one witness of ours that's on

8    the bubble.  We can't decide whether to call him in our case

9    or not.  And that's Mr. Flicker.  And if we decide not to call

10   him, we'll let them know as soon as possible.  We're going to

11   go through and see if we can do it by designation first.

12   We're trying to speed things along.

13             THE COURT:  Okay.

14             MR. S. KULWIN:  Okay?

15             THE COURT:  So, Weiss, O'Callaghan and possibly

16   Flicker.

17             You should --

18             MR. S. KULWIN:  And possibly Martens, too.  I'm

19   sorry.

20             THE COURT:  Martens.  Okay.

21             You should provide your deposition designations --

22             MR. S. KULWIN:  Monday?

23             THE COURT:  Yes, Monday.

24             MR. S. KULWIN:  That's fine, Judge.  That's what

25   we --

```
 1              THE COURT:  -- to opposing --

 2              MR. S. KULWIN:  Right.

 3              THE COURT:  Send it over to Mr. Novack and then --

 4              MR. S. KULWIN:  That's what we had told him we were

 5   going to do yesterday:  Send it over by Monday.

 6              THE COURT:  You can designate your counter

 7   designations; get together; and, then, I want -- because if I

 8   have to rule on them, I want them sooner rather than later --

 9   by May 8th I want you to file with me your, hopefully,

10   all-agreed deposition designations.

11              But if they are not, I want you to file your

12   designations and any objections.  It is easiest for me, when

13   you do this, if you drop off a hard copy of the entire

14   deposition and if you somehow color code --

15              MR. S. KULWIN:  Right.

16              THE COURT:  -- your designations and respective

17   objections and, then, tell me what your objections are.

18              MR. S. KULWIN:  We'll do that, Judge.

19              THE COURT:  So, it is easiest to have the entire

20   transcript rather than just the snippets --

21              MR. S. KULWIN:  Here's what we'll do --

22              THE COURT:  -- because then I can put it in context.

23              MR. S. KULWIN:  We'll send a hard copy over to

24   Mr. Novack with our yellow designations.

25              THE COURT:  Okay.
```

 1            MR. S. KULWIN:  He can pick any color he wants and

 2    come back.  If he really wants yellow, I'll give him yellow.

 3    So, whatever he wants.  He can tell me after court.  And,

 4    then, we'll send it over to you, and we'll have our

 5    objections.

 6            THE COURT:  As long as I know what the code is --

 7    just give me the color code --

 8            MR. S. KULWIN:  We'll give that to you.

 9            THE COURT:  -- and then I will rule quickly.

10            MR. NOVACK:  Judge, the one question I would ask --

11    and I guess I am puzzled -- is if they do a designation that

12    we think just has to be addressed by a counter-designation so

13    the jury isn't sitting there with that, we're going to do it.

14            THE COURT:  Absolutely.

15            MR. NOVACK:  But we want our witnesses to be able to

16    testify live and not be limited because we put in a deposition

17    designation.

18            MR. S. KULWIN:  Absolutely, Judge.  The

19    designations --

20            THE COURT:  Absolutely.

21            MR. S. KULWIN:  -- he's talking about are for

22    context.  I'm not precluding him from calling the person live,

23    just like I'm not precluding us from calling the person in

24    rebuttal.

25            This is just -- I'm just saying certain points, that

1  we think are important to our case in our case-in-chief, we

2  want to read in.  And we don't think they're going to be very

3  long.  We don't know --

4          THE COURT:  Okay.

5          MR. S. KULWIN:  -- but we'll do our best.

6          THE COURT:  But nothing would preclude you from

7  calling them live.

8          MR. NOVACK:  Thank you.

9          And even covering a point that we put a counter-

10  designation on?

11          THE COURT:  You may need to --

12          MR. NOVACK:  Right.  Thank you.

13          THE COURT:  -- to put it in context.

14          MR. NOVACK:  Thank you.

15          THE COURT:  It might not logically make sense if you

16  skip over it.  I get it.

17          MR. S. KULWIN:  It's not a problem.

18          THE COURT:  Mr. Novack, I would like to go through

19  your list of witnesses at Exhibit B.  On your "Will Call"

20  list, is there anybody that you do not intend to call?

21          If it is easier, by the way, for you to sit, I do not

22  mind if you sit.  We are going to be here for a little bit of

23  time.

24          MR. S. KULWIN:  I'd rather stand, if it's okay with

25  you.

1          THE COURT:  You can stand.  That is fine.

2          MR. NOVACK:  There's no one we would eliminate unless

3  they are called in the other case and we're examining them and

4  don't need them.

5          THE COURT:  What about your "May Call"?

6          Do you plan on calling O'Callaghan if plaintiff does

7  not or just puts in designations?

8          MR. NOVACK:  I think the answer to that, is we would

9  not need him.  He is not somebody that we think we have to

10  bring in besides clarifying deposition designations.  But,

11  again --

12          THE COURT:  Okay.

13          MR. NOVACK:  -- since we don't know what the facts

14  are they're going to bring out --

15          THE COURT:  I will leave him on then.

16          What about Manolo?

17          MR. S. KULWIN:  We're calling her, Judge.

18          THE COURT:  You are.  Okay.

19          MR. S. KULWIN:  Yeah, we are.

20          THE COURT:  She is on yours.

21          And Martens?  Same response:  You may call her; you

22  --

23          MR. NOVACK:  Right.

24          THE COURT:  -- just need to see --

25          MR. NOVACK:  Depending on --

13

1          THE COURT:  That is fine.

2          MR. NOVACK:  -- designations.

3          MR. S. KULWIN:  And just so the Court knows,

4    Mr. O'Callaghan, he's got a long deposition; but, in light of

5    everything that's happened between that and now, I don't even

6    know if we're going to designate anything on him.  He's at the

7    bottom of our list.  But we'll see.

8          THE COURT:  Okay.

9          MR. S. KULWIN:  Okay?  We'll find out.  We're working

10   on it.

11         THE COURT:  We will find out.

12         MR. S. KULWIN:  We're doing our best.

13         THE COURT:  I know you have said you think it will

14   take two weeks to try this case.  It does not seem to me to be

15   a two-week case.  I am guessing, based on my review of

16   everything, that a week-and-a-half at the most.  But I do not

17   know how you feel about that.

18         MR. S. KULWIN:  Well, let me address that first,

19   Judge.

20         THE COURT:  I have two weeks saved.

21         MR. S. KULWIN:  Sure.

22         I guess the first thing is, you know, normally

23   knowing about your trial schedule, knowing how you do things,

24   normally I would expect to pick a jury in three hours and give

25   opening statements right after lunch.  That would be my guess.

1    Okay?

2            With Mr. Trump being involved -- I don't know if

3    you're planning on getting more people in the venire or not;

4    probably will -- it could take longer.

5            THE COURT:  It could take a day.

6            MR. S. KULWIN:  It could take a day.

7            So, if it takes a day and we do openings first thing

8    on Tuesday, the way I've plotted it out, I think that we would

9    finish our case -- with their case involved -- in the first

10   week.  I think.  Maybe bleed to Monday.  But that's my --

11   that's my goal, having reviewed my examinations thus far.

12           THE COURT:  That is a fair assessment.

13           My guess is a week-and-a-half.

14           Again, I have two weeks.  I am going to tell the jury

15   potentially two weeks.  I am just trying to get a better

16   sense.

17           MR. S. KULWIN:  I think a week -- I'd be surprised if

18   we weren't closing by Wednesday.  That would be my guess.

19           THE COURT:  That seems consistent with my review of

20   everything.

21           I do not know if you have a different view,

22   Mr. Novack.

23           MR. NOVACK:  If everything gets in in that first

24   week, we'll be 90 percent of our case.  We may have, you know,

25   only our expert or some rebuttal fact witnesses.

1          THE COURT:  Okay.

2          MR. NOVACK:  Well, I take that back.  If they're not

3    calling Weiss, et cetera, we may have to call them.  But I

4    think it's only a couple of days at the most.

5          THE COURT:  You do get full trial days here.  So --

6          MR. NOVACK:  By the way, what are the hours of the

7    trial?

8          MR. S. KULWIN:  9:00 to 5:00.

9          THE COURT:  No, no, no.  We will get there.

10         MR. S. KULWIN:  They're legendary.

11         THE COURT:  They are not that bad.

12         You are out of here usually before 5:00.

13         MR. S. KULWIN:  That is not what I've heard, Judge.

14         THE COURT:  Well, you are getting bad information.

15         MR. S. KULWIN:  Okay.

16         THE COURT:  I do not keep juries past 5:00 o'clock.

17   That is for sure.

18         Your typical day is, I like to start with the jury by

19   9:15.  So, I want you to be here by 9:00 in case you have any

20   issues for me beforehand.  But I really do like to start by

21   9:15.  I tell them to be here by 9:15.  I do not like to make

22   juries wait.  I am very respectful of their time.  So, please

23   do not be late.

24         I do not expect that from any of you.  But please do

25   not be late because that is, I think, my one pet peeve.  You

1    may know of others.  But I really do -- we are asking these

2    jurors to give up their lives, their time.  When I tell them

3    9:15, I do not want to have to wait for all the lawyers.

4            MR. S. KULWIN:  Sure.

5            THE COURT:  And we will end -- I aim to end by 4:45.

6    It might be 4:40 one day if you just finished a witness and it

7    makes sense and I do not feel like the case is delaying.  It

8    might be 5:00 o'clock.  But I do aim for 4:45.  I have rarely,

9    rarely kept a jury past 5:00, unless there is a witness who

10   has five minutes left and she is in from out of town and we

11   are trying to finish.  But I really do not like to keep jurors

12   past 5:00.

13           Now, if there is an issue for me that you have, it

14   may be that you are here past 5:00 o'clock if there is some

15   dispute that we need to deal with at the end of the day and

16   you are not too tired.  We will do it at the end of the day.

17           But, typically, the trial hours are 9:15 to 4:45.

18   Again, a morning and an afternoon break, a lunch break at some

19   logical time.  I do not have set break times.  I try to go

20   until about 12:30 before lunch, but that is not set in stone.

21           MR. S. KULWIN:  I have two questions.

22           THE COURT:  Yes, go ahead.

23           MR. S. KULWIN:  One relates to the trial day, and one

24   relates to one of their witnesses.

25           On the trial day -- can we go off the record for one

 1   second?  Just one second, I promise.

 2           THE COURT:  That makes me nervous --

 3           MR. S. KULWIN:  It shouldn't.

 4           THE COURT:  -- going off the record.

 5           MR. S. KULWIN:  It shouldn't.  It's for personal

 6   reasons.

 7           THE COURT:  Do you mean ex parte over here?

 8           MR. S. KULWIN:  No.  They can hear.  I just don't

 9   want it on the record.  It's okay.

10           It's about Mrs. Goldberg.  She may need to get up

11   from time to time and leave during the trial to use the

12   restroom --

13           THE COURT:  That is fine.

14           MR. S. KULWIN:  -- because of her age.

15           THE COURT:  That is fine.

16           MR. S. KULWIN:  And I don't think we need to take a

17   full break.  I just -- I don't want it to look -- I just

18   wanted to tell you.

19           MR. NOVACK:  Wait.  Does that apply to me, too?

20           (Laughter.)

21           THE COURT:  If I --

22           MR. S. KULWIN:  In 20 years.

23           THE COURT:  I can tell the jury that the witnesses

24   and parties may be in and out of the courtroom; that they

25   should not read anything into that; that there are things that

1   need to be done outside.

2         I do not care if you need to get up and step out and

3   come back in and somebody is covering.  If you need a break

4   and I have not called for one, let me know.

5         MR. S. KULWIN:  Sure.

6         THE COURT:  But that does not bother me.

7         MR. S. KULWIN:  All right.

8         THE COURT:  Please have your witnesses ready.

9         MR. S. KULWIN:  That's our plan.

10        THE COURT:  There is an attorney/witness room out

11  there.  I do not want you to have to run outside trying to

12  find somebody.

13        MR. S. KULWIN:  Most of our witnesses are them.

14        THE COURT:  Okay.

15        MR. S. KULWIN:  So, we'll be working with them very

16  closely.

17        There is one thing.  As you may recall, you said that

18  they were going to call Mr. Howie live.  That means we don't

19  have to do any designations.  Now we won't be doing any

20  designations.

21        But we're not going to rest our case, okay, when it's

22  traditionally time to rest our case.  We're going to say,

23  "Judge, at this time the defense -- the plaintiffs -- are

24  going to pause in their case and we'll be calling some other

25  people down the road," because based on your ruling, we have

```
 1   to call them in their case.

 2            THE COURT:  Right.

 3            Maybe you could work out that he is one of your last

 4   witnesses and one of your first witnesses so you can --

 5            MR. S. KULWIN:  Well, he is going to be one of our

 6   last witnesses.

 7            THE COURT:  -- put him on.

 8            So, I will let you try to work that out.  But given

 9   the ruling, I will permit you to do that.

10            MR. S. KULWIN:  Okay.

11            THE COURT:  Okay.

12            We are bouncing around.  Let us go back.

13            MR. NOVACK:  Judge -- I'm sorry.

14            THE COURT:  As long as we are on -- did you have a

15   question about the trial day?

16            MR. NOVACK:  I was just going to ask about that first

17   trial day.  Should we be prepared to do openings and witnesses

18   on the first day or --

19            THE COURT:  Here is what I want to talk to you about.

20   I have drafted a questionnaire.

21            (Document tendered.)

22            THE COURT:  I have picked many, many juries in

23   different ways.  Given Mr. Trump's involvement here and given

24   that it is a potential two-week trial and this is their second

25   week of jury service, it might make sense to give them this
```

1    brief questionnaire to complete before they come up.  I did

2    something similar to this in the bartender case, and it worked

3    great to prescreen some of the sensitive issues.

4         This is not all of the voir dire that I will ask.  I

5    conduct voir dire.  I do not let you do it.  I based this on

6    my own questions and the voir dire that you submitted to me.

7    I will have follow-up for them, as well, based on some that

8    you gave me and based on their responses.

9         We do not have to use a questionnaire.  I am open to

10   discussion with you.  I do think, given Mr. Trump's

11   involvement here, that it would make sense to do this.

12        It actually went much quicker than I anticipated when

13   I used one similar to this in the bartender case, and we got a

14   jury much faster than I anticipated.

15        Let me just finish telling you what I propose doing,

16   and then I will hear your comments or suggestions.

17        I plan on picking eight total jurors, maybe nine, but

18   at least eight total jurors.  That would give us two extras in

19   a civil case.  You each get three strikes.

20        I anticipate calling in somewhere between 40 and 50

21   potential jurors -- which is more than I usually do -- given

22   Mr. Trump's involvement here and some of the media attention

23   that this has received.  I will split them up into a morning

24   voir dire and afternoon voir dire, call maybe 25 in the

25   morning.

1       When they come, Katie will go down and give them this

2   questionnaire; have them complete the questionnaire downstairs

3   in the jury room; make copies for all of us; bring us the

4   copies.  You will get copies.  I will get copies.  And, then,

5   we will get a random order to call them in, and I will call

6   the first 25.

7       I will fill the box with 16, question them based on

8   the questionnaires; make some general comments to everybody;

9   follow-up questions, based on some additional questions that,

10  I think, are necessary to ask.

11      After I am done questioning the entire 16 in the box,

12  we will have a sidebar.  If there is anybody you want me to

13  follow up on, I can follow up.  If there is anybody who has

14  something confidential or sensitive they want to talk to us at

15  sidebar about, I will have them come down.

16      Once I am done with those 16, I will excuse them and

17  tell them to call in at the end of the day or tell them to --

18  depending on if we are going to do this in two shifts -- tell

19  them to go back to the 2nd Floor.  I will give them

20  directions.

21      I will finish the next group, so that we go through

22  the entire group of 25, based on their questionnaires and

23  their oral responses.  The next group will follow the same

24  procedure.  I will question them based off of their

25  questionnaires.  I will ask them some additional questions I

 1    have.  We will have a sidebar for follow-up, either for me to

 2    go back and do or for them to come back down.  And when they

 3    are done, I will give them a similar direction of what they

 4    will do.

 5           That will take us through a panel of 25 in the

 6    morning.

 7           Now, it may be that we get a panel that has no issues

 8    and you say, "Let's just pick our jury based on this panel of

 9    25."  That happened in the bartender case.  We had a panel

10    that did not have -- really had not seen anything, that did

11    not have any issues.

12           So, if not, we can go to the afternoon session and

13    question the additional 20, 25 -- however many are called --

14    in the afternoon with the same process.

15           The other option is not to use a questionnaire and

16    just do it like I normally do, question by question.

17           But I really think in this type of case a short

18    questionnaire like this will be very beneficial -- be

19    beneficial to your interest in getting some answers you want,

20    be beneficial to streamlining things and beneficial to getting

21    a fair and impartial jury.

22           I am open, though, to your thoughts, comments,

23    reactions.

24           MR. NOVACK:  I'm all for it.  In fact, it bleeds into

25    an issue we were going to raise with you on voir dire anyway,

 1   which was that we do think there has to be questions about

 2   reactions to Mr. Trump:  "Can you do it fair?" and all that;

 3   but, what I urge strongly, that the Court not allow anybody to

 4   explain why they have -- if they answer, "I've got a

 5   negative," that they don't say, "That's because he was against

 6   President Obama," so everybody else now who didn't know that

 7   is now --

 8          THE COURT:  I have picked a lot of juries.  I will be

 9   very cautious --

10          MR. NOVACK:  Okay.

11          That happened to me in another case and --

12          THE COURT:  -- of how that is --

13          MR. NOVACK:  -- I haven't forgotten it.  So, I'm glad

14   you're on that --

15          THE COURT:  And if you look at Questions 19 and 20,

16   Question 20 will at least give us an initial indication --

17          MR. NOVACK:  Sure.

18          THE COURT:  -- of how they are going to come out;

19   and, if it is negative, I will have them come down.  I am not

20   going to have them explain --

21          MR. NOVACK:  Well, they'll also, I guess --

22          THE COURT:  -- in open court.

23          MR. NOVACK:  On your question, they'll explain, and

24   nobody will see that explanation except all of us.

25          THE COURT:  Except us.

1          And if it is something that needs elaborating on --

2    which it might -- I will have them come down and do it.  So, I

3    do not know.

4          Thoughts on jury selection proposal.  Are you okay

5    with the proposal?

6          MR. S. KULWIN:  Fabulous.

7          MR. NOVACK:  I have one question.

8          THE COURT:  Yes.

9          MR. NOVACK:  When we get finished with that first 25,

10   how is it that it's decided whether we stop there and work

11   with them or we go to the --

12         THE COURT:  I will ask you.

13         MR. NOVACK:  -- go to the next group?

14         THE COURT:  And the last time I did this, the lawyers

15   were the ones who said, "We don't need to do this afternoon.

16   This panel is great.  Let's go with this panel."

17         So, I will see your reaction.  If I think there are a

18   lot -- if we have a lot of people coming in with strong

19   feelings one way or the other, we will take the afternoon,

20   too.

21         MR. NOVACK:  Okay.

22         So, if I can repeat a question I asked before, should

23   we come prepared to do openings that day and witnesses or --

24   some judges say, "Look, when I get a jury, I let them go home,

25   get their affairs in order," and then they come back the next

1   day.  And I just don't know your Honor's preference on that.

2         THE COURT:  How long do you think your openings will

3   be, which might give me guidance on that?

4         MR. NOVACK:  I was thinking about 45 minutes to --

5         THE COURT:  To an hour?

6         MR. NOVACK:  -- an hour.

7         THE COURT:  Mr. Kulwin?

8         MR. S. KULWIN:  Same.

9         THE COURT:  Okay.  That is what I anticipated.

10         I usually do like to get to openings and witnesses

11   the first day.  I do not think there is any way we will get to

12   witnesses the first day here.  And I am fine with getting a

13   jury, doing openings and then letting them go and start

14   witnesses on Tuesday morning.

15         MR. S. KULWIN:  Can we agree on that, Judge?  Only

16   because --

17         THE COURT:  Yes.

18         MR. S. KULWIN:  In fairness to the defense, too.

19   Some of these people are coming from New York.

20         THE COURT:  Yes.  Yes, we can agree on that.  We can

21   start --

22         MR. S. KULWIN:  That way we can tell them -- I

23   apologize.

24         Our plan is, if they agree, to tell them our proposed

25   first five witnesses on Monday in return for them agreeing to

1    tell us who they plan to call -- their first five

2    witnesses are -- the following Monday.

3              THE COURT:  I require you to do that --

4              MR. S. KULWIN:  Okay.

5              THE COURT:  -- whether you agree or not.  And I will

6    ask you --

7              MR. S. KULWIN:  So, one week before.

8              THE COURT:  -- at the end of every day --

9              MR. S. KULWIN:  Who's next.

10             THE COURT:  -- "Who do you plan on calling tomorrow

11   and in what order?"  And I fully expect you to keep that order

12   unless --

13             MR. S. KULWIN:  Right.

14             THE COURT:  -- something extreme comes up.

15             MR. NOVACK:  Right.

16             THE COURT:  A plane gets delayed or --

17             MR. S. KULWIN:  So --

18             MR. NOVACK:  Because our --

19             THE COURT:  There should not be surprises at this

20   point.

21             MR. NOVACK:  Because our people are coming from out

22   of town, we need that order no later -- we'd like to get that

23   order today so people can make air reservations.

24             MR. S. KULWIN:  I can't give it to them today, Judge,

25   only because we got -- we're doing a number of things.  I'm

1    pretty confident about what the order is.  We're getting

2    together over the weekend.  I will absolutely have it to them

3    first thing Monday morning.

4              THE COURT:  When do you plan on calling Mr. Trump,

5    Sr.?

6              MR. S. KULWIN:  As I've said --

7              THE COURT:  Is he your first witness still?

8              MR. S. KULWIN:  No, he is not, but he is in the first

9    three.  He might be second.  He might be third.

10             THE COURT:  Do you think we will get to him on

11   Tuesday?

12             I do not know how long your other witnesses --

13             MR. S. KULWIN:  It is -- it is possible, but -- I

14   would say it's possible.  I think the first witness -- I'm not

15   sure who that's going to be yet.  I'm kind of up in the air.

16             THE COURT:  I think you told us before he was your

17   first witness.

18             MR. S. KULWIN:  No, I didn't.  I said he's going to

19   be in the first three.  I promise.  Scout's honor.

20             THE COURT:  Joe can tell us.

21             MR. S. KULWIN:  Joe can check.

22             I said -- and I said this before -- and if I'm wrong,

23   I will stand corrected.  But what I've said before is, is that

24   I anticipate that he will be in the first couple of witnesses.

25   He's going to be first -- he's going to be second or third.

1    He is definitely not going to be first.

2            THE COURT:  Okay.  He is not going to be first.

3            MR. S. KULWIN:  No, absolutely not.

4            MR. NOVACK:  Are the first witnesses all going to be

5    our people?

6            MR. S. KULWIN:  Yes.

7            THE COURT:  Okay.

8            Ideally, you can let Mr. Novack know tomorrow, but at

9    the latest, let him know on Monday since these witnesses are

10   coming in from out of town.  Especially if you can give him a

11   better sense of Mr. Trump --

12           MR. S. KULWIN:  He will know --

13           THE COURT:  -- in particular, if he is a Tuesday or a

14   Wednesday.

15           MR. S. KULWIN:  He will know by Monday before noon.

16   And, as I've told him before, as I told him last night in my

17   letter, I would expect that Mr. Trump will be on the stand

18   Tuesday or Wednesday.

19           THE COURT:  Okay.

20           MR. S. KULWIN:  That's my expectation.  Now, you

21   know, he might end up being Tuesday and Wednesday --

22           THE COURT:  Right.

23           MR. S. KULWIN:  -- depending where it ends.

24           THE COURT:  He should plan on staying in Chicago

25   Tuesday night, it sounds like.

1          MR. NOVACK:  I don't know if he has a place to stay.

2          (Laughter.)

3          THE COURT:  My guess is he can find a very nice one.

4          Okay.

5          MR. NOVACK:  Just on the reciprocity, which I'm all

6     for giving advanced notice; but, the thought that we're going

7     to know the first day of trial --

8          THE COURT:  I understand.

9          MR. NOVACK:  -- what our --

10         THE COURT:  You probably will not.

11         MR. NOVACK:  -- witnesses -- because it's all -- part

12    of this is all dependent on what happens in their case.

13         THE COURT:  I understand.

14         MR. NOVACK:  They can rest assured that Mr. Howie

15    will be a witness and likely to be an early one at that.

16         MR. S. KULWIN:  I understand that.

17         MR. NOVACK:  But the other ones sort of depend --

18    well, I guess that's not right.  They've withdrawn Mr. Weiss

19    and Mr. Flicker.

20         So, I just think it's unrealistic --

21         THE COURT:  Let us say for you --

22         MR. NOVACK:  -- to give a whole week's advance

23    notice.

24         THE COURT:  -- by Wednesday, by the 15th, let them

25    know who you anticipate your first witnesses will be, that you

1    will have a better sense then.

2          MR. S. KULWIN:  And just so that Mr. Novack doesn't

3    leave with a misimpression, Mr. Flicker's on the bubble.

4    We're not sure yet.

5          THE COURT:  Yes.  That is what you have said.

6          MR. S. KULWIN:  I just want to make sure.

7          THE COURT:  I know how talented both of you are.  And

8    I know that both of you have a lot of trial experience.  But

9    just so you are on notice -- based on my experience that

10   sometimes when high-profile individuals come in the courtroom,

11   lawyers do not always behave the way they should -- I fully

12   expect that you will behave professionally and the way you

13   should.  I will say no more.  But I fully expect that and will

14   let you know if you are not.  So --

15         MR. S. KULWIN:  I don't anticipate --

16         THE COURT:  -- I will say no more.

17         MR. S. KULWIN:  I don't anticipate examining Mr.

18   Trump any differently than anybody else, and I'll examine him

19   the way same way I did at his deposition.

20         MR. NOVACK:  Judge, I would just say this --

21         MR. S. KULWIN:  In terms of level of intensity.

22         THE COURT:  Just keep it professional.  I do not

23   appreciate grandstanding when you are doing it for -- I do not

24   appreciate grandstanding.

25         So, I do not think I am going to have a problem with

1    you; but, out of fairness, I am putting you on notice.

2              MR. NOVACK:  Judge, I will just say this.  If there's

3    anything that I do, or John does, that is not right in your

4    estimation or is getting on your nerves, or whatever it is,

5    the second you feel that way, would you please tell us.

6    Because the worst thing --

7              THE COURT:  It takes a lot to get on my nerves.

8              MR. NOVACK:  Okay.

9              THE COURT:  It takes a lot.  You could ask Joe, who

10   has been with me for almost 11 years now.  I do not -- try

11   your case.  I do not want to try your case.  Try your case.  I

12   am not going to interfere with it.  I do expect

13   professionalism.

14             MR. S. KULWIN:  I'm just laughing because Judge

15   Darrah once called me over for an ex parte sidebar to say to

16   me, "Mr. Kulwin, you're doing a great job.  Stop doing this

17   (indicating), will you.  You're doing this (indicating), and

18   it's driving me nuts."

19             THE COURT:  You know, those quirks do not drive me

20   nuts.  Hopefully, Mr. Kulwin will let you know if you are

21   doing things like that.

22             MR. S. KULWIN:  Let's hope so.

23             THE COURT:  That is not my job.

24             But if there is an issue that rises to that level, I

25   will bring it to your attention.  If I bring it to your

 1   attention, you have brought it to a very high level.

 2        MR. S. KULWIN:  Judge, as long as we're on that thing

 3   about how we're going to behave in court, I assume you want

 4   standing objections and --

 5        THE COURT:  Yes.  And I will get to that.  Yes.

 6        Okay.  So, we are talking about jury selection.  Is

 7   everybody okay with what I proposed?

 8        MR. NOVACK:  Yes.

 9        MR. S. KULWIN:  Yes.

10        THE COURT:  I know I just handed you the

11   questionnaire.  Take a look at it.  If you have any issues

12   with it, we can talk about it next week.  I have taken it off

13   of your proposals, questions that were not objected to, things

14   that I think are appropriate.  I will be surprised if you have

15   issues.  But if you do, you can let me know when you come in

16   next week, because I will need to get these copied.

17        Okay.  Outstanding motions.  I still have a couple of

18   the plaintiff's motions in limine, that I am almost done with.

19   You can expect a ruling today or tomorrow on those.

20        Let us talk about trial procedures.  We have done a

21   little bit already.

22        All exhibits should be premarked and copies provided

23   to the other side.  I would like copies of all premarked

24   exhibits by next Wednesday --

25        MR. S. KULWIN:  Question.

1             THE COURT:  -- which is May 8th.

2             MR. S. KULWIN:  Question:  Do you want them hard

3   copied, electronically, PDF?  You can have your choice.  You

4   can have all of them.

5             THE COURT:  Hard copies are usually easiest.

6             MR. S. KULWIN:  Okay.

7             MR. NOVACK:  Judge, before we leave that issue, we

8   would like all exhibits to just be marked Trial Exhibit

9   No. ____ or Exhibit No. ____, not plaintiff's exhibits,

10  defendants' exhibits.  That's kind of an irrelevancy.

11            But if the plaintiff goes first and puts in, just

12  say, for example, the purchase agreement and says "plaintiff's

13  exhibit," we have two choices.  We can work with plaintiff's

14  exhibit and let the jury think that they wanted it in and we

15  didn't, or we make another exhibit -- it's the same exhibit --

16  with the defendants' number, which causes too much confusion.

17            THE COURT:  I will be honest with you, Mr. Novack.

18  And I have tried a lot of cases and I have talked to every

19  jury after every trial.  I do not think that really matters to

20  a jury.

21            If you want to mark it with your own exhibit number

22  and use your exhibit; if you want to say, "This is the same as

23  Defendants' Exhibit 5 and I will work with plaintiff's," I do

24  not care.  I am not going to say you have to mark it

25  just "Exhibit" without saying plaintiff's or defendants'.

1          But I really -- I honestly do not think that matters

2     to a jury.  I will leave it to your --

3          MR. NOVACK:  But if that's so, how is there any harm

4     if it just says "Exhibit"?

5          THE COURT:  Because it is plaintiff's case and they

6     are introducing it, and if they want to call it a plaintiff's

7     exhibit, they can call it a plaintiff's exhibit.

8          MR. S. KULWIN:  Back to --

9          THE COURT:  When a witness is on the stand, you only

10    need to ask me one time per witness to approach.  You do not

11    have to ask me every time.

12         Objections.  You mentioned this.  Please do stand.

13    Not only is it professional, but I often cannot hear you if

14    you are sitting down and you object.  And if I cannot hear

15    you, I cannot rule on it.

16         You should not directly address the jury during the

17    evidentiary portion of the case.  During openings and

18    closings, they are all yours.  But if you want to know if they

19    can hear or see something, please ask me and I will ask them.

20         Do you plan on presenting your exhibits

21    electronically to the jury, or do you plan on doing it the

22    old-fashioned way, the hard copy?

23         MR. S. KULWIN:  Mostly electronic.

24         THE COURT:  Okay.

25         MR. S. KULWIN:  Almost exclusively.

 1          THE COURT:  All right.

 2          We --

 3          MR. S. KULWIN:  Unless they can't see it for some

 4   reason.

 5          THE COURT:  We will have a monitor set up --

 6          MR. S. KULWIN:  Sure.

 7          THE COURT:  -- at the end of the jury box, as well as

 8   the big screen that comes down here.  The courtroom is set up

 9   that you can plug your computer in and it will project.  I

10   also have the Elmo.

11          You can use everything you want in here, but you

12   should come in and try it out outside of the presence of the

13   jury first.  Try it out next week or have your -- work with

14   Katie on when I am not in court.  I just do not want you

15   fumbling around or finding out it does not work in front of

16   the jury.  Please come in and try it out in advance.

17          MR. S. KULWIN:  I think our tech guy has already been

18   in touch with the courtroom --

19          THE COURT:  Great.

20          MR. S. KULWIN:  -- and is already getting ready to

21   set things up.  That's what he told me.

22          THE COURT:  Okay.

23          MR. S. KULWIN:  I assume he's telling the truth.

24          THE COURT:  Make sure -- Joe Novak is our courtroom

25   tech guru.  You can contact him.  Katie can give you the

1   number after court, if you need.

2           MR. S. KULWIN:  Great, Judge.

3           MR. NOVACK:  Judge, on the question of exhibits --

4           THE COURT:  Yes.

5           MR. NOVACK:  -- electronic versus hard copy, some of

6   the exhibits are hundreds of pages, amendments to property

7   reports and the like.  So, that is the exhibit.  However, when

8   we focus --

9           THE COURT:  And that is what will go back to the

10  jury.

11          MR. NOVACK:  Pardon?

12          THE COURT:  That is what will go back to the jury,

13  the hard copy.

14          MR. NOVACK:  Right.

15          When we want to draw the witness' and jurors'

16  attention to a particular page, that's when we intend to use

17  the Elmo.

18          THE COURT:  That is fine.

19          I am only raising it -- I do not care how you do it.

20  I do not care if you use the Elmo.  I do not care if you

21  electronically project it.  It does not matter to me.  I just

22  want you to use the equipment and try it out before the jury

23  is in the box.

24          MR. NOVACK:  But is there any reason for us to give

25  to the jury this 200-page exhibit if we're only going to focus

1   on a page?

2          THE COURT:  Typically, if an entire exhibit is

3   admitted into evidence, the entire thing goes back when they

4   deliberate.

5          MR. NOVACK:  I understand that.  But, I mean, during

6   the trial --

7          THE COURT:  Oh, no.

8          MR. NOVACK:  -- when we're talking about it, we don't

9   have to --

10          THE COURT:  No, no.

11          Not from my standpoint.  There is no reason to give

12   it to them.

13          There is no reason to hand them any hard copies.  You

14   can do everything electronically or on the Elmo.

15          MR. S. KULWIN:  Our plan is to do it all

16   electronically, Judge.  We may give the witness a hard copy

17   just so if they want to --

18          THE COURT:  That is fine.

19          MR. S. KULWIN:  -- refer back and forth, in fairness.

20   Some might say, "Well, gee, I thought it was somewhere else."

21          "Good.  Take a look."

22          We're going to do the same.  We're going to focus on

23   certain things.

24          THE COURT:  Again, I do not care how you do it as

25   long as you are following the rules.  I just want you to make

1    sure you try out the equipment before trial.

2          MR. NOVACK:  Judge, on the approaching question --

3          THE COURT:  Yes.

4          MR. NOVACK:  -- what is fair game here without

5    saying, "Can I approach?"  I mean, can we walk over here

6    (indicating) and ask --

7          THE COURT:  Yes.

8          MR. NOVACK:  -- the question?

9          THE COURT:  I am not a stickler about things like

10   that.  I do not care where you stand in openings, as long as

11   you are not in the jury box.  I do not care where you stand in

12   closings.

13         If you want to approach, approach to me is when you

14   are up there at the box with them.  I do not care if you

15   question from over there; I do not care if you question from

16   the back of the courtroom, as long as we can hear you.  I am

17   not a stickler on where you stand.

18         I will, again, ask you at the end of every day who

19   you plan on calling the next day and in what order and expect

20   you to meet that.

21         Realtime.  If you have an interest in realtime or

22   daily transcripts, please talk to Joe sooner rather than

23   later.  I do not know the details for that.  I do not care.

24   But I have seen lawyers come in at the very last minute and

25   not be able to get what they want because Joe needs to make

1    sure that he has the appropriate backup that he needs.

2              Exhibits.  Let us go back to that for a minute.

3              Even exhibits that are not objected to in your final

4    pretrial order, they are not automatically admitted into

5    evidence.  You need to formally move on the record any

6    exhibits that you want admitted into evidence.

7              If you have exhibits that you do not object to -- you

8    know that purchase agreement is coming in; you know those

9    property reports are coming in -- if there are exhibits that

10   you are in agreement on, I do not care if you come in Day One

11   and say, "We move Exhibits 1 through 100 in without

12   objection."

13             I do not care how you do that, but you do need to

14   formally move them in.

15             And I would love an updated exhibit list, for

16   purposes of the trial, from each of you.

17             I have defendants' trial exhibit list.  I like the

18   format of that.  You do not have to follow that exactly, but a

19   place where I can mark if things are admitted into evidence.

20             MR. S. KULWIN:  While you were talking, Judge, we

21   just reached our first agreement in the case.

22             MR. NOVACK:  No, we didn't do that.  We weren't

23   interrupting her.

24             MR. S. KULWIN:  No, no.  We were --

25             MR. NOVACK:  By osmosis that came to each of us --

```
 1              MR. S. KULWIN:  Whatever.  He's older than I am, so
 2    I'll yield to him.
 3              (Laughter.)
 4              MR. NOVACK:  What we'd like to do, if it's okay, is
 5    on that first day move to admit the exhibits that we don't
 6    have objections on.
 7              THE COURT:  I just said that is fine.
 8              MR. S. KULWIN:  That's our plan.
 9              THE COURT:  That is fine.
10              MR. S. KULWIN:  And do you want --
11              THE COURT:  That makes sense.
12              MR. S. KULWIN:  Do you want your copy in a binder?
13              THE COURT:  Sure.
14              MR. S. KULWIN:  Okay.  Very good.
15              THE COURT:  Note-taking.  I allow the jury to take
16    notes.  I will give them the appropriate instruction that they
17    do not have to if they do not want to and that they are not
18    evidence, but I do allow them to.
19              Demonstratives.  Do either of you have
20    demonstratives?
21              MR. S. KULWIN:  Yes, many.
22              THE COURT:  Have you exchanged them?
23              MR. S. KULWIN:  No.  We have an agreement in the
24    pretrial order.  I think we're going to do it on Friday before
25    trial --
```

1            THE COURT:  Okay.

2            MR. NOVACK:  We have an --

3            THE COURT:  I would like you to do it next week with

4    enough time that you can review them, so if you have a problem

5    with them --

6            MR. S. KULWIN:  Right.

7            THE COURT:  -- you can raise it with me on Thursday.

8    Ideally you can exchange them by Monday or Tuesday of next

9    week, if you are prepared to, so that if there are objections,

10   I will take them up on Thursday when you are in.

11           MR. S. KULWIN:  Okay.  What I would say about that is

12   we have drafts of what we think we're going to use.  We have

13   somebody working who is a lot better at graphics than I am

14   kind of like making them more visually pleasant to the eye.

15   We may be able to give him drafts by Tuesday, but the full

16   color, Disney World version of them, we might --

17           MR. NOVACK:  That would be fine.

18           And I'd like a couple days after that because I may

19   need to counter something that I hadn't intended to do.

20           THE COURT:  Turn them over on Tuesday, and I will

21   assume that you are going to turn over and exchange with each

22   other everything you have.

23           If there is something that you think you need for

24   demonstrative in rebuttal, you can raise it with me on

25   Thursday.

1        I do not need to see any of these unless you have

2   objections.  If you do have objections, I want you to bring

3   those on Thursday and let me know what your objections are.

4        MR. NOVACK:  Judge, I wonder if we could exclude from

5   the requirement of pre-disclosure if all we're doing by

6   demonstratives is blowing up --

7        THE COURT:  Yes.

8        MR. NOVACK:  -- an exhibit --

9        MR. S. KULWIN:  Yes.

10       THE COURT:  You can exclude that.

11       MR. NOVACK:  -- or an excerpt of the exhibit.

12       MR. S. KULWIN:  Agreed.

13       THE COURT:  You may exclude that.

14       MR. S. KULWIN:  Agreed.

15       And our demonstratives, we'll also exchange -- we're

16   going to have demonstratives, and we're going to have a couple

17   of summary exhibits.  We'll give him those, too.

18       THE COURT:  Yes.  Those should absolutely be turned

19   over.

20       MR. S. KULWIN:  We're working on those, too.

21       THE COURT:  When a witness is on the stand, you each

22   get two rounds.  There is direct, cross, redirect, recross,

23   done.  We do not drag it out beyond two rounds.

24       MR. S. KULWIN:  By the same attorney, right?

25       THE COURT:  Pardon me?

```
 1              MR. S. KULWIN:  By the same lawyer, right?

 2              THE COURT:  Yes.

 3              MR. S. KULWIN:  No tag teams, right?

 4              THE COURT:  Interim statements.  Have either of you

 5     used interim statements?

 6              MR. NOVACK:  I was glad you were going to say that.

 7              THE COURT:  I have.  I think they work well,

 8     especially in a case like this.  I think they would be

 9     effective.  Lawyers really like them.  I have used them in

10     many cases, and lawyers really like them.

11              What they are, is I will give you a certain amount of

12     time -- probably ten minutes per week -- to use as you like

13     for interim statements.  They are not argument.  What interim

14     statements are used for is to tell a jury at some point, kind

15     of summarize what the evidence has been or what witnesses have

16     testified to or to tell them, "Tomorrow you are going to hear

17     from these witnesses, and these witnesses will address these

18     topics."

19              It is to help the jury understand what you have

20     covered and where you are going.  So, they are not closing

21     arguments.  They are mini interim statements to address -- to

22     help the jury understand the case.

23              MR. NOVACK:  So, is that something that you

24     anticipate would come at the end of the day or can we do it

25     before or after a witness?
```

1          THE COURT:  I have seen it used many different ways.

2     I have seen lawyers wait until the end of the week and kind of

3     say, "Here is where we have been this week and here is where

4     we are going."  I have seen lawyers do it after a witness.

5          The only thing I require is that you not do it in the

6     middle of a witness.  You either have to do it once a witness

7     is off the stand or before the next one gets on so you are not

8     interrupting a particular witness' testimony.

9          And I will instruct the jury that, like openings and

10    closings, the interim statements are not evidence; that it is

11    your opportunity to address them about what you think is

12    coming.

13         You can think about it.  You do not have to tell me

14    today.

15         MR. S. KULWIN:  I'm for it.

16         MR. NOVACK:  I wonder if while we're thinking about

17    it, we might propose that the ten minutes apply during the

18    first week at any time and, then, an additional ten minutes at

19    the end of the last day of the first week of trial.

20         THE COURT:  No.  I am not going to give you an

21    additional.  You can use ten minutes however you want.

22         If you want to talk to somebody who has done this

23    before, you can talk to Jim Figliulo.  He has used these.

24    Rick Godfrey over at Kirkland.  We could give you a bunch of

25    other names of individuals who have used them.

1          MR. NOVACK:  The ten minutes would apply to the whole

2    trial or each week?

3          THE COURT:  Ten minutes each week per side.  So,

4    there would be 20 minutes of interim statements per week:  Ten

5    from the plaintiff, ten from the defendant.

6          MR. S. KULWIN:  Can we go -- I'm for it, by the way.

7          So, he can think about it.

8          MR. NOVACK:  I'm for it.

9          THE COURT:  Okay.  You are for it.

10         MR. S. KULWIN:  Yeah, everybody's for it.

11         MR. NOVACK:  Yes.

12         THE COURT:  And I will give you the appropriate jury

13   instruction for it.

14         MR. S. KULWIN:  Going back to the two rounds -- so,

15   the defense gets the last word?

16         THE COURT:  Yes.  Recross, it is called.

17         MR. S. KULWIN:  Okay.

18         THE COURT:  Until closing arguments.  Then you get

19   the last word.

20         MR. S. KULWIN:  Yes, then I get the last word.  Okay.

21         THE COURT:  That is all I have in terms of procedure.

22         I have some substantive issues I want to talk to you

23   about.

24         Do you have any questions --

25         MR. S. KULWIN:  Yes.

1          THE COURT:  -- on procedure?

2          MR. S. KULWIN:  Yes, Judge.  Real minor things.

3          Is the jury going to be allowed to ask questions

4    during the trial?

5          THE COURT:  I do not think so.  I have never done

6    that.  I am not sure this is the test case I want to use for

7    that.

8          MR. S. KULWIN:  And can they -- so, I, therefore,

9    assume they cannot ask questions of the witness, either.

10         THE COURT:  Pardon me?

11         MR. S. KULWIN:  Ask questions of the witness.

12    They're not allowed to do that, either?

13         THE COURT:  No, no, no.

14         MR. S. KULWIN:  Okay.

15         With respect to the computer stuff, when we plug in,

16    can we have Wi-Fi -- because we use LexisNexis -- just in

17    case, or no?

18         THE COURT:  What is your feeling on Wi-Fi?

19         MR. S. KULWIN:  Not to tweet or anything like that,

20    God forbid.

21         (Laughter.)

22         THE COURT:  You better not tweet.

23         MR. S. KULWIN:  No tweeting.

24         THE COURT:  You will get in trouble for that.

25         MR. S. KULWIN:  No tweeting.  We're not going to be

1    watching Yahoo! or anything like that.

2         But just so that we can access electronic research,

3    if we need to.

4         THE COURT:  Mr. Novack, do you have any objection to

5    Wi-Fi access for both sides?

6         MR. NOVACK:  No.  As long as the jurors aren't

7    sitting there with their --

8         THE COURT:  No, they will not.  I will give them lots

9    of instructions about that.

10        MR. NOVACK:  Judge, I was just checking my own

11   checklist --

12        THE COURT:  Wait one second.

13        (Brief pause.)

14        THE COURT:  You can bring your -- Mr. Kulwin, I am

15   told by Joe that you can bring your own cards in for the Wi-Fi

16   access.

17        MR. S. KULWIN:  Our own cards?

18        THE COURT:  Yes.

19        MR. S. KULWIN:  Okay.  Whatever that means.

20        THE COURT:  We do not have it here.  And maybe just

21   double-check with Joe Novack.

22        MR. S. KULWIN:  Okay.

23        Mr. Novack just asked me -- I'm going to go through

24   my list and he needs to go through his, but it does raise a

25   good point.

1    The closing demonstrative exhibits, we would do that

2    a couple -- a day before, the night before.  How do you want

3    to do that?

4    THE COURT:  Why don't you see if you can reach some

5    type of agreement.  Let me know next Thursday.

6    MR. NOVACK:  I think we actually already reached that

7    agreement.

8    MR. S. KULWIN:  We'll talk about it.

9    THE COURT:  Okay.

10    MR. S. KULWIN:  Still on my list is -- I assume it's

11    fine for us to leave our stuff in the cloakroom locked --

12    THE COURT:  Yes.

13    MR. S. KULWIN:  -- every night?

14    Okay.

15    THE COURT:  And you can often leave it in the

16    courtroom.

17    MR. S. KULWIN:  Okay.

18    THE COURT:  Because you will be the last ones here,

19    and then it is locked after you leave.

20    MR. S. KULWIN:  I anticipate, again, it to be a

21    little bit hectic on the day Mr. Trump testifies.  What I

22    don't want is, at least for the plaintiff -- I don't care what

23    the defense wants; they can talk to you about it -- but we'd

24    like the first two rows kept open.

25    THE COURT:  I cannot leave the first two rows open.

```
 1              MR. S. KULWIN:  The first row?

 2              THE COURT:  The courtroom is small enough.

 3              MR. S. KULWIN:  First row?

 4              THE COURT:  What do you want it open for?

 5              MR. S. KULWIN:  A, for our exhibits that we always

 6    put there; and, B, for people that we either need or want to

 7    be there that day.

 8              THE COURT:  Give me a list of who you want --

 9              MR. S. KULWIN:  To be there that day?

10              THE COURT:  -- to be there.

11              But given First Amendment rights and other things, I

12    cannot block off two.

13              MR. S. KULWIN:  Okay.

14              On that day, though, then we would have to move our

15    exhibits off the bench?

16              THE COURT:  Yes, you should move your exhibits off

17    the bench.  You can put them in the cloakroom, under the

18    table --

19              MR. S. KULWIN:  Okay.

20              THE COURT:  -- up against the jury box, but not on

21    the first row.

22              MR. S. KULWIN:  Okay.

23              I think I have one more -- a couple more --

24              THE COURT:  It will not be hectic, by the way.  The

25    marshals -- we will have court security and --
```

1       MR. S. KULWIN:  I know.

2       THE COURT:  -- everything will be under control.

3       MR. S. KULWIN:  It's going to be Perry Mason-esque,

4  though.  You know, full courtroom.  I've only done that

5  rarely.  In any event, I don't want it to be a distraction, is

6  what I'm really getting at.

7       I assume this is more substantive, about what you are

8  going to tell the jury about the claims that you are deciding.

9  So, I will wait on that.

10      THE COURT:  Yes.  I want to have a --

11      MR. S. KULWIN:  And similarly --

12      THE COURT:  -- discussion about that.

13      MR. S. KULWIN:  -- just from a procedural point of

14  view -- and we'll get into this substantively -- it's my view,

15  always has been my view, that the lawyers are responsible to

16  tell the witnesses about the Court's rulings on motions in

17  limine.

18      THE COURT:  Absolutely.

19      MR. S. KULWIN:  Okay.

20      THE COURT:  You are responsible for making sure your

21  witnesses know my rulings, and I do not expect them to violate

22  those rulings.

23      MR. S. KULWIN:  So, it's not on me -- I'm going to be

24  asking questions that's going to be going right to the heart

25  of those areas.  And if they suddenly blurt it out, that's not

1  my fault.  I'm not going to try -- for example -- let me give

2  you an example.

3        I'm not going to ask a question like, "Well, did you

4  talk to your lawyer about that?"  That would be on me.

5        But I may ask a question like, "Okay.  So, the

6  decision about X or Y was yours, correct?"

7        They have said in their depositions from time to

8  time, "We left that to the lawyers."

9        It's an important issue in the case.  That's not on

10  me.  That's on them.  They should be told not to talk about

11  the lawyers.

12        THE COURT:  And you might want to preface that with

13  "other than talking to your lawyers."

14        MR. NOVACK:  Right.  I think that's the solution.

15        MR. S. KULWIN:  See, I don't think that that's the

16  solution, and I'll tell you why, Judge.  Because if -- I don't

17  want lawyers in the case.  You know, you've ruled.  That's

18  fine.  As far as I'm concerned, they don't exist other than in

19  the contract negotiations that you've allowed to bring in,

20  unless, of course, the door is opened.  And, then, I'll ask

21  for a sidebar at that point in time.  I will not just start

22  talking.  I'll move to sidebar and say, "Judge, we think we

23  they've opened the door to this.  What do you want to do?"

24        But I don't want to preface questions, nor do I want

25  Mr. Novack to preface questions, with "other than the lawyers

1    -- " blah-blah-blah, because then the jury knows, oh, well,

2    why weren't there lawyers, what about the lawyers, what did

3    they say, et cetera.

4         THE COURT:  Certainly -- and I am not going to write

5    your direct examinations for you -- you are expected to fully

6    prep your witnesses about my rulings so that they do not step

7    into something.

8         If there is a question that you know the answer is "a

9    lawyer," then I think as an officer of the court knowing my

10   rulings, you have to be cautious about that so it does not

11   look like you are trying to push them --

12        MR. S. KULWIN:  To open the door.

13        THE COURT:  -- and open the door.

14        If you ask them the question and then you ask it,

15   again, and you ask it, again, and finally they blurt out,

16   "Well, my lawyer was there" --

17        MR. S. KULWIN:  Let me give you one example.  Okay?

18   I really hate to foretell my examinations, but what the heck.

19   Okay.

20        THE COURT:  My guess is Mr. Novack knows --

21        MR. S. KULWIN:  The evidence --

22        THE COURT:  -- where you are going.

23        MR. S. KULWIN:  The evidence is what it is.  You

24   know, there's not going to be a lot of surprises in this case.

25   I doubt there will be any.

1          So, for example, an issue in the case, I think -- one

2     of the two biggest issues in the case -- is materiality.

3     We're going to be asking people who were very involved in

4     gathering the information for the amendments, "Okay.  So,

5     you're the one who gathered that information, correct?"

6          "Yes."

7          "And you decided to provide that information into the

8     amendments?"

9          They're going to say, "Well, I got it for the

10    lawyers, and the lawyers told me to do it."

11         Now, given your ruling, they shouldn't be saying

12    that.  They should just be saying "Yes."  That's an example.

13         I'm not going to keep pressing them.  If they say, "I

14    don't remember" or "I don't recall," well, that's fine.  Maybe

15    I'll live with that.  I'll see how it comes up in the context.

16    But I don't think that one's on me.  That's on them.

17         So, that's what I mean.

18         THE COURT:  I think that is right.

19         MR. NOVACK:  If he asks them a question that

20    truthfully -- if he says, "I want to know everybody in the

21    world that you talked to about the fourth amendment prior to

22    having that fourth amendment issue," a witness can't lie.

23         MR. S. KULWIN:  Rest assured --

24         MR. NOVACK:  If he asks it that way, he is the one

25    that's making it so that this door that he wants opened

1    desperately could arguably be opened.

2         MR. S. KULWIN:  Honestly, I'm not that desperate.

3         Rest assured, Judge, I'll never ask anybody, ever,

4    "Tell me everybody in the world that you talked to about

5    this," ever.

6         THE COURT:  So, you should --

7         MR. NOVACK:  This isn't the discovery deposition to

8    even ask, "Okay, who did you rely on?"

9         MR. S. KULWIN:  No.

10        THE COURT:  I cannot write your examination for you.

11        MR. S. KULWIN:  Right.

12        THE COURT:  You have the general guidance.  You are

13   experienced lawyers.  Your witnesses should not blurt out

14   "lawyers."

15        But in the same vein, you need to be cautious.  The

16   perfect example is pushing them --

17        MR. S. KULWIN:  Right.

18        THE COURT:  -- over and over:  "Are you sure there

19   wasn't anybody else?  Are you really sure there wasn't anybody

20   else?"

21        MR. S. KULWIN:  I'm not going to do that, Judge.

22        And I don't mean to belabor the record or your time

23   with this issue, but I want to be crystal clear.

24        An issue in the case, as you well know -- probably

25   sick of knowing -- is that, you know, what goes into the

1    amendment, you know.  Who put it in the amendment.  And I'm

2    going to ask these witnesses -- some of them -- "So, you're

3    the one who gathered the information that went into the

4    amendment.  What you chose, what you needed that you thought

5    had to go into the amendment because you thought it was

6    significant enough."

7            THE COURT:  Again, I am not going to write your --

8            MR. S. KULWIN:  Right.

9            THE COURT:  You guys get it.

10           MR. S. KULWIN:  Okay.  Just so they know.

11           THE COURT:  I am not going to write your examinations

12   for you.

13           MR. S. KULWIN:  Just so they know.

14           THE COURT:  One issue on a lawyer that was left open

15   that I wanted to hear more from you, because I was not sure

16   what your position was, on the timing of the fourth

17   amendment --

18           MR. S. KULWIN:  Sure.

19           THE COURT:  -- property report.

20           It was delayed because, in part, as I understand the

21   facts, the lawyers were looking at it and it took a while to

22   consult with the lawyers.

23           MR. NOVACK:  And not just lawyers for Trump.  Lawyers

24   for the lender, lawyers for --

25           MR. SHONKWILER:  Mezzanine lenders.

```
 1              MR. NOVACK:  -- mezzanine lenders.

 2              MR. SHONKWILER:  Three sets of big-firm lawyers.

 3              MR. NOVACK:  So, not even lawyers we have privilege

 4    over.

 5              THE COURT:  Okay.

 6              MR. NOVACK:  It's just a fact.

 7              MR. S. KULWIN:  We don't -- our position -- again,

 8    I'll reveal my case.  We never intend to say that they delayed

 9    issuing the fourth amendment.

10              THE COURT:  Okay.

11              MR. S. KULWIN:  We will go into what they were

12    saying --

13              THE COURT:  Absolutely.

14              MR. S. KULWIN:  Okay.

15              THE COURT:  Absolutely.

16              MR. S. KULWIN:  -- before it was issued.

17              THE COURT:  That should not be an issue then.

18              MR. S. KULWIN:  Okay.

19              THE COURT:  So, we should not have to worry about any

20    response that the lawyers were involved and that was the

21    reason for the delay in the fourth amendment, because you are

22    not going to bring up the fourth amendment.

23              If a question comes up about the delay in the fourth

24    amendment, if you think you need to ask such a question, let

25    us go to sidebar.
```

1        MR. S. KULWIN:  Well, let me go to sidebar right now

2    just --

3        THE COURT:  Which I do not like sidebars, by the way.

4    But I realize we have to use them sometimes.

5        MR. S. KULWIN:  So, let me to the sidebar right now.

6    I'm not revealing anything that wasn't in our summary judgment

7    argument.  Okay?

8        I am not going to say to you, "And didn't you delay

9    issuing the fourth amendment or didn't you -- " no.  I am

10   going to say, "After you made the decision that there was

11   going to be a fourth amendment and that these guys weren't

12   getting this stuff anymore, you kept selling and you didn't

13   tell anybody."

14       That I am going to go into, because that's fair game

15   and that is important evidence.

16       MR. NOVACK:  Until a property amendment is issued,

17   you can't change the -- what's in the property amendment.  You

18   can't say to somebody that you are trying to sell a unit to,

19   for example, "Oh, by the way, I know that I just gave you the

20   property report, but I want to tell you that you can ignore

21   this part, this part and this part because we're thinking

22   about -- or we're going to, in the future, change that part."

23       THE COURT:  But you are --

24       MR. NOVACK:  You can't do it.

25       THE COURT:  -- arguing something different now.

 1          MR. NOVACK:  No, because if he's saying, in a sense,

 2    "You did stuff between this business decision to do it and the

 3    actual submission," that's where we would need to say we

 4    couldn't -- we couldn't -- it's like insider trading.  We

 5    couldn't tell somebody about this thing.

 6          THE COURT:  What is the timing between the time that

 7    the business decision was made and the property -- fourth

 8    property -- report was issued?

 9          MR. S. KULWIN:  If I may address that, Judge.  If you

10    accept -- our view, of course, obviously is that the business

11    decision was made in '03.  But their view, if you accept their

12    version of the evidence --

13          THE COURT:  I do not know what -- I know your view.

14    I know what your view is.  I do not know what the witnesses

15    are going to say.

16          MR. S. KULWIN:  Okay.

17          THE COURT:  Let us say what you get from the

18    witnesses when they say, "Okay, we made this decision."

19          What is the time frame?

20          MR. NOVACK:  It's about four --

21          MR. S. KULWIN:  Hold on.

22          MR. NOVACK:  About four months.

23          MR. S. KULWIN:  If I may.

24          THE COURT:  Weeks?

25          MR. S. KULWIN:  No.

1      THE COURT:  Days or weeks?

2      MR. NOVACK:  Four months.

3      THE COURT:  Months.

4      MR. NOVACK:  June through October.

5      MR. S. KULWIN:  If I may.

6      Their witnesses are going to say either they don't

7  remember and don't know; or, they're going to say, "It

8  definitely was done -- " "we don't know when it was done, but

9  it was definitely finished and done by May 10th of 2007."

10      The fourth property report went out in October of

11  2007.

12      During that four-month period, there was no reason

13  why they couldn't have withdrawn advertising.  There's no

14  reason why they couldn't have sent a letter to all the prior

15  buyers saying that --

16      THE COURT:  Okay.  Now you are arguing facts.

17      I am just focusing on the legal issue.

18      MR. S. KULWIN:  Sure.

19      THE COURT:  I do not want your client saying that

20  there was that four-month delay because Trump needed to

21  consult with lawyers.  If a question comes up about the

22  delay -- which Mr. Kulwin may ask some questions that skirt

23  around the issue -- they can say they had to talk to their

24  consultants.  I do not care if you use "consultants."  I just

25  do not want "lawyers" coming out.

```
 1              Or if the other companies -- the mortgage companies
 2   or others -- needed to talk to their lawyers, that is a
 3   separate issue.  That does not implicate the issues here.
 4              It is Trump consulting with his lawyers that should
 5   not come out.  But they can refer to them as consultants and
 6   keep the "lawyer" issue out.
 7              MR. NOVACK:  Okay.
 8              MR. S. KULWIN:  Thank you, Judge.
 9              MR. NOVACK:  Just so it's not deemed an admission by
10   not objecting, this whole time period after -- between this
11   May and October -- is completely irrelevant in this case
12   because Mrs. Goldberg bought in August of --
13              THE COURT:  I know.
14              MR. NOVACK:  -- the previous year.
15              THE COURT:  I understand that argument.  And I have
16   addressed that in many motions in limine, how that can be
17   used.
18              MR. S. KULWIN:  Thank you, Judge.
19              MR. NOVACK:  Let me address one open-the-door issue
20   that I see --
21              THE COURT:  Is it on this lawyer issue or something
22   else?
23              MR. NOVACK:  It's something else.
24              THE COURT:  Okay.
25              Mr. Kulwin, were you done with your list?
```

1          MR. S. KULWIN:  The only other issue that I had, I

2   think you're going to address, is:  What are we telling the

3   jury about the counts here?

4          THE COURT:  Yes.

5          MR. S. KULWIN:  We'll get to that.

6          I think my list is now fully exhausted.

7          THE COURT:  Go ahead, Mr. Novack.

8          MR. NOVACK:  Thank you.

9          I have three.

10          The open-the-door one that, I think, segues in, your

11   Honor has barred their expert Mr. Levin from testifying about

12   any affirmative intent or state of mind --

13          THE COURT:  Correct.

14          MR. NOVACK:  -- or secret plan and all that stuff.

15   And that's --

16          THE COURT:  Correct.

17          MR. NOVACK:  -- fine, and we asked for that, and

18   thank you for the ruling.

19          In another ruling denying the motion that we had to

20   not let him say the word "misrepresentation," you said denied,

21   but we're free to cross-examine him about what that means.

22   And one of the things I intend to have to raise at that point

23   would be, "But you're not saying, when you say 'misrepresent,'

24   that they had a secret intent to the contrary or anything like

25   that?"

1     THE COURT:  Let us hear --

2     MR. NOVACK:  That is a fair way to do the cross you

3 suggested, but I do not want unwittingly to then step into

4 something -- "Judge, Mr. Novack just opened the door by

5 getting -- by asking the witness that question."

6     THE COURT:  I need to hear -- let me hear the

7 expert's testimony, and you can raise it with me before

8 cross-examination.

9     MR. NOVACK:  Okay.

10     MR. S. KULWIN:  We would object to that question,

11 Judge.

12     THE COURT:  That is number one.

13     Number two?

14     MR. NOVACK:  The second one is with respect to the

15 witness exclusion rule.  And the first thing I would ask the

16 Court -- because different judges do it different ways -- what

17 is your rule in having the exclusion as to whether witnesses

18 can be told about what happened in the trial, read

19 transcripts, as long as they're not in the courtroom?

20     THE COURT:  They cannot.

21     MR. NOVACK:  Okay.

22     THE COURT:  So, I will invoke the witness exclusion

23 rule.  Corporate representatives can be -- I do not know if

24 you have a corporate representative or who that will be.  He

25 or she can remain in here the entire time.  Obviously, the

1    plaintiff can be in here the entire time.

2           But you cannot tell them about other -- about the

3    testimony of other -- witnesses or let them read the

4    transcripts.

5           MR. NOVACK:  Understood.

6           But I would like to ask if an exception can be made

7    for both parties' experts in terms of --

8           THE COURT:  Experts are different.  Experts can sit

9    in the courtroom during the other experts' testimony,

10   certainly.

11          MR. NOVACK:  So, if they don't, they can be -- they

12   can --

13          THE COURT:  They can read it.

14          MR. NOVACK:  -- read a transcript or whatever?

15          THE COURT:  Yes.  There is a difference with experts.

16          MR. S. KULWIN:  The only thing I would bring up about

17   that, Judge, is, is that normally experts are allowed to sit

18   in because they have to hear what the other expert is going to

19   say.

20          THE COURT:  Right.

21          MR. S. KULWIN:  In this case, I don't think that's

22   accurate.  I think --

23          THE COURT:  Well, certainly, my guess is that

24   Mr. Novack's expert is going to want to hear what your expert

25   has to say because he may have a few comments on it, if it is

1    along the opinion.  So --

2          MR. S. KULWIN:  So, Mr. Levin can come back and sit

3    through Mr. Novack's expert --

4          THE COURT:  Absolutely.

5          MR. S. KULWIN:  -- and be called in rebuttal?

6          THE COURT:  Absolutely.

7          MR. S. KULWIN:  Okay.

8          MR. NOVACK:  And, then, the last one, Judge, is --

9    and your ruling addressed this -- with respect to the two

10   lawyer witnesses that were subpoenaed, that the other side

11   cannot say to the jury that, "Gee, we subpoenaed them.

12   They're not here."

13          MR. S. KULWIN:  We're not going to say that.

14          MR. NOVACK:  But I want to --

15          THE COURT:  Nobody should --

16          MR. NOVACK:  -- ask that that --

17          THE COURT:  -- say that about any witness.

18          MR. NOVACK:  Okay.

19          THE COURT:  Neither side --

20          MR. SHONKWILER:  Thank you.

21          MR. NOVACK:  That's it.

22          THE COURT:  -- should say, "I subpoenaed this party

23   and they are not here."

24          If you have a problem with a subpoena and somebody

25   has not shown up, you bring it up to me outside of the

1    presence of the jury.  But nobody should suggest that somebody

2    who was supposed to be here is not here.

3           MR. NOVACK:  Or that somebody didn't bring a witness?

4           THE COURT:  You should not suggest that.

5           MR. NOVACK:  Okay.

6           THE COURT:  And if you have discovery dispute issues,

7    they should not be raised -- I do not want to hear in front of

8    the jury, "Well, this is the first time I'm seeing this."  If

9    you have a problem with that, you let me know.

10          MR. S. KULWIN:  I think what Mr. Novack's concern is

11   -- and I will bring it up to the Court -- is that at a lot of

12   the allegedly critical meetings that occurred, all -- the

13   entire Trump family was present.

14          THE COURT:  That is fair game.

15          MR. S. KULWIN:  That's what I thought.

16          THE COURT:  And you can argue about that -- but in

17   closing arguments -- that you did not -- I think it is fine to

18   say these witnesses were there and -- you know, I have to see

19   how you are going to use it.

20          MR. S. KULWIN:  Okay.

21          THE COURT:  There is no "missing witness" instruction

22   here.

23          MR. NOVACK:  No.

24          THE COURT:  There is no -- you are free to call

25   anybody you want --

 1          MR. S. KULWIN:  Right.  I know.

 2          THE COURT:  -- other than the lawyers.

 3          MR. S. KULWIN:  I know.

 4          THE COURT:  So, if you are going to go -- you cannot

 5  argue, "Okay, Mr. Novack didn't call X."

 6          MR. S. KULWIN:  Can't?

 7          MR. NOVACK:  No.  I agree with that.

 8          THE COURT:  Raise it with me first --

 9          MR. S. KULWIN:  I'll raise it with you first.

10          THE COURT:  -- if you want to, so I can see how you

11  want to use it.

12          MR. NOVACK:  So, if --

13          THE COURT:  Because you have subpoena power.  You are

14  free to call whoever you want, other than the lawyers that I

15  said you cannot.

16          MR. S. KULWIN:  I don't --

17          THE COURT:  I need to hear what you are going to say.

18          MR. S. KULWIN:  And we don't have subpoena power over

19  those family members.

20          MR. NOVACK:  They asked us -- every witness they

21  asked us to bring, we brought.

22          MR. S. KULWIN:  Well --

23          MR. NOVACK:  They didn't ask us to bring those

24  people.

25          MR. S. KULWIN:  Well, they weren't identified --

1    that's the key, Judge.  They didn't identify any of those

2    people as having relevant knowledge.

3              THE COURT:  Okay.

4              This is something that should have been brought up

5    with me before.  You are too late bringing up disclosure

6    issues.

7              MR. S. KULWIN:  All right.

8              THE COURT:  We are on the eve of trial.

9              Was that your third point, Mr. Novack?

10             MR. NOVACK:  I think that is my list.  If I think of

11   something later, don't get mad at me, because it's not because

12   I'm holding back.  I've checked off everything I had.

13             THE COURT:  I do not think I have ever really gotten

14   mad at you, Mr. Novack.

15             MR. NOVACK:  I'm just being -- maybe I'm being too

16   colloquial.  I apologize if I am.

17             THE COURT:  No, no.  I am allowed to give it back.

18             (Laughter.)

19             THE COURT:  I have a couple of questions for you

20   before we talk about jury instructions.

21             Mr. Novack, are you still asserting any affirmative

22   defenses?  Because I did not get any jury instructions for

23   any.

24             I know your counterclaims are out.  And you had in

25   your answer multiple affirmative defenses.  But I have not

1  gotten any jury instructions on any affirmative defenses.

2          And I know when you were here last time, that was

3  specifically raised when you moved to dismiss your

4  counterclaims.  You said, "But we're not dismissing our

5  affirmative defenses."

6          But I do not have jury instructions on those.  So, I

7  do not know -- it does not seem to me that you are asserting

8  any affirmative defenses.

9          MR. NOVACK:  I think we withdrew formally, pursuant

10  to the same agreement we had, without prejudice, the

11  affirmative defense of her breach of the contract.  I'm quite

12  sure we did that.  And I'm not remembering any other

13  affirmative defenses.

14          MR. SHONKWILER:  We are not.

15          THE COURT:  I believe in the answer you had other

16  ones listed.  If you are not pursuing them, that is fine.  I

17  just want to make clear, for everybody's benefit, that you are

18  not.

19          MR. NOVACK:  I'm sorry, I'm just not remembering the

20  other ones.

21          THE COURT:  Double-check and --

22          MR. NOVACK:  We will.

23          THE COURT:  -- you can let me know.

24          Let Mr. Kulwin know by Monday.  You can let me know

25  at the hearing next week if you are.

1            Out of curiosity, how many buyers were there of these
2   condominium units?

3            I know you have had multiple motions in limine to get
4   certain buyers in.

5            MR. S. KULWIN:  To date, there's been 154.

6            THE COURT:  How about at the time of the closing
7   here?

8            MR. S. KULWIN:  At the time of the closing here, it
9   was roughly about 144.

10            THE COURT:  Okay.

11            MR. S. KULWIN:  Out of 339.

12            THE COURT:  Mr. Kulwin, you have listed and itemized
13   certain damages.  One of them you have claimed is lost
14   investment damages.

15            MR. S. KULWIN:  Right.

16            THE COURT:  How do you plan on proving that?

17            MR. S. KULWIN:  Through Ms. Goldberg.  She testified
18   about it.

19            THE COURT:  Okay.

20            Just her testimony?

21            MR. S. KULWIN:  Just her.

22            THE COURT:  The complaint.  What is your feeling on
23   sending a redacted version of the complaint back to the jury?

24            MR. S. KULWIN:  I think they should have it.

25            THE COURT:  I typically do.  But it will have --

1        MR. NOVACK:  Of the complaint?

2        THE COURT:  Yes.

3        MR. NOVACK:  Respectfully, I would object to that.

4   They're hearing the evidence in the case.  They don't need to

5   see in writing allegations that are one-sided.  They will hear

6   the testimony from both parties.  I think a complaint going

7   back to the jury room is prejudicial.

8        THE COURT:  Okay.

9        I will keep that under advisement.

10       Now, what is your feeling on an advisory opinion from

11  the jury on the counts that are equitable in nature and for

12  the Court to decide?

13       MR. S. KULWIN:  We oppose it.

14       You know, Judge, if you are going to take those

15  counts, what we would like you to do is tell the jury there

16  are two other counts that the Court --

17       THE COURT:  I am not going to tell them anything.  I

18  am either going to tell them about them or I am not going to

19  tell them anything.

20       MR. S. KULWIN:  If I may on that one, Judge -- and

21  here's why we would respectfully ask you to reconsider that

22  position.

23       Having, let's just say, factually investigated

24  reactions to this case among people, we think it's important

25  that the jury be told that, "There are two other counts, and

1    the Court is going to decide them.  You don't have to worry

2    about them.  You just focus on these two counts."

3            THE COURT:  Why?  Why would I tell them that?

4            MR. S. KULWIN:  Because otherwise, what's going to

5    happen, especially in light of the defense that, you know,

6    "The contract lets us do this and this and this," you could

7    have jurors going back there and going, "Well, why didn't they

8    sue for breach of contract?  What about the contract?  What's

9    going on with that?"  Or, "Isn't there some statute that deals

10   with this?  Why are they suing for fraud?  Why didn't they do

11   this or this?"

12           If you tell them that, "I'm on that, don't worry

13   about that," then as soon as somebody says that, another juror

14   appropriately will say, "That's not for us to consider.  We're

15   supposed to consider this, and just this."

16           THE COURT:  What about my instruction to them that

17   they are only supposed to consider what I tell them to

18   consider and only supposed to consider the evidence in the

19   case and not speculate on anything else?

20           MR. S. KULWIN:  I think that that's helpful, but I

21   don't think it seals the deal, from what we've discovered in

22   our testing.

23           THE COURT:  Mr. Novack, what --

24           MR. NOVACK:  Judge, I think that they should hear

25   what they hear, be instructed on what they're supposed to do,

1    be told "not to speculate about anything else that has not

2    been presented in this courtroom or told to you by me."  And

3    that's the way I've always seen it.

4            To tell them, "Oh, by the way, there's something

5    else," that's going to cause more speculation and bewilderment

6    than saying nothing.

7            THE COURT:  Okay.

8            I will keep that under advisement, and we will talk

9    about it next week when you are back.

10           MR. S. KULWIN:  Okay.

11           THE COURT:  Have you seen defendants' motion for

12   leave to file certain exhibits that was filed --

13           MR. S. KULWIN:  I yield --

14           THE COURT:  -- at Record 293?  Is there any objection

15   to that?

16           MR. S. KULWIN:  I yield to Mr. Kulwin.

17           THE COURT:  Okay.

18           No objection.  All right.

19           I will grant Record No. 293, the motion for leave to

20   file the exhibits.

21           MR. NOVACK:  Thank you.

22           THE COURT:  Mr. Kulwin, I had asked you -- you wanted

23   to bring in specific media reports and you never identified

24   which ones, and you still have not identified which ones.

25           MR. S. KULWIN:  Okay.

1          I will -- well, when I say I want to bring them in, I

2   want to cross-examine with them, Judge.  Okay?

3          THE COURT:  Well, that is a separate issue than

4   bringing them in as substantive evidence.

5          MR. S. KULWIN:  Let me talk to Mr. -- can I talk to

6   Mr. Kulwin first?

7          THE COURT:  Yes.

8          Because you have not identified, and I do not know,

9   how you could get around hearsay.

10         MR. S. KULWIN:  If I can talk to Mr. Kulwin?

11         THE COURT:  You may.

12         (Brief pause.)

13         MR. S. KULWIN:  Anything substantively that we would

14  introduce in the form of newspaper was in marketing materials

15  issued by Trump and is their business records.  That's our

16  view of that.  And go to state of mind.

17         Other -- there's a series of documents that we call

18  the Butler Reports.  Okay?  We intend to cross-examine their

19  expert with those reports.  They are public knowledge.  They

20  are on the Internet.  That's where we got them.

21         THE COURT:  Cross-examination is separate.  In terms

22  of -- you made it sound like you had Time Magazine articles --

23         MR. S. KULWIN:  No.

24         THE COURT:  -- about Mr. Trump that you wanted to use

25  for some improper question.

1          MR. S. KULWIN:  When we started looking, Judge, there
2    were so many hundreds of them, we just gave up.
3          THE COURT:  There may be hundreds of them, but I
4    still do not know how you would ever get them into evidence
5    here.
6          MR. S. KULWIN:  Well, we --
7          THE COURT:  So --
8          MR. S. KULWIN:  We couldn't even figure out where to
9    start.  So, we just abandoned it.
10          THE COURT:  Okay.
11          So, there will be none then.
12          MR. S. KULWIN:  No books.
13          THE COURT:  This was on Motion in Limine No. 7.
14          That is all I have for you other than jury
15    instructions.
16          MR. NOVACK:  Could I ask what the Butler Report is?
17    I'm not familiar with it.
18          THE COURT:  After court today, you can talk all you
19    want to Mr. Kulwin about the Butler Report.
20          MR. S. KULWIN:  I have a couple others, Judge.  I'm
21    sorry.
22          THE COURT:  Yes.
23          MR. S. KULWIN:  This is substantive.
24          Stipulated facts.  Our view -- and I assume it's
25    Mr. Novack's view, as well -- is that everything in the 56

1    that wasn't objected is stipulated fact:  Jurisdiction, things

2    of that nature.  Can we --

3          THE COURT:  You do not have to prove jurisdiction for

4    purposes of the jury.

5          MR. S. KULWIN:  I just wanted to be sure.

6          THE COURT:  You do not have to prove jurisdiction

7    for --

8          MR. S. KULWIN:  There are other stipulated facts that

9    will speed things along -- like how much she paid, things of

10   that nature -- that I don't think the parties disagree with.

11         THE COURT:  If you want to stipulate to certain

12   things, you certainly can.  56.1's are for summary judgment

13   purposes only.

14         MR. S. KULWIN:  Right.

15         THE COURT:  Those are not stipulated facts for

16   purposes of trial.

17         MR. S. KULWIN:  We'll send them to Mr. --

18         MR. NOVACK:  That's what I was just going to say.

19         MR. S. KULWIN:  We'll send them to Mr. Novack.  If he

20   wants to stipulate, fine.  I'm just trying to streamline the

21   case.

22         THE COURT:  If you want to stipulate to anything, you

23   can reach stipulations and read them to the jury.  Otherwise,

24   you have to prove it.

25         But jurisdiction is a Court issue, not a jury issue.

1          MR. S. KULWIN:  Great.

2          Can I just look at my notes?  I think I've covered

3     everything.

4          THE COURT:  I am going to take a brief break, and I

5     will be back in about five minutes and we will do jury

6     instructions.  I have ruled on a lot of them already.  So, I

7     do not think it is going to take us too long.  I have until

8     about 12:15.  What we do not finish today, I will finish next

9     week with you.

10         MR. S. KULWIN:  Okay.

11         MR. NOVACK:  Thank you.

12         May I ask one more question, your Honor?

13         THE COURT:  You may.

14         MR. NOVACK:  Are you going to rule on objected -- on

15    objections to exhibits before the trial starts or --

16         THE COURT:  Probably not, because I really need to

17    hear those -- other than the ones I have addressed in motions

18    in limine, like the newspaper reports -- I really need to hear

19    those in the context of the witness.

20         If there are particular exhibits, Mr. Novack, you

21    think I can do without that, you can bring them to my

22    attention.  But a lot of the foundation objections, the

23    hearsay, I really need to hear in the context of a particular

24    witness.

25         MR. NOVACK:  Okay.  Thank you.

1          THE COURT:  I will be back in about five minutes.

2          MR. S. KULWIN:  Thanks, Judge.

3          (Brief recess.)

4          THE COURT:  Let us talk about jury instructions.

5          MR. NOVACK:  Can I ask one question before you do?

6          THE COURT:  I am going to work off of the agreed ones

7    first at Exhibit F.

8          Yes.

9          MR. NOVACK:  May I ask one question before we start?

10          THE COURT:  You may.

11          MR. NOVACK:  John and I heard things differently.  I

12   thought you said we were not going to do openings or witnesses

13   on Monday.

14          THE COURT:  We are not going to do witnesses.

15          MR. NOVACK:  We are going to do openings on Monday?

16          THE COURT:  We might get to them.

17          MR. NOVACK:  Okay.

18          THE COURT:  If we end up going into the afternoon

19   with the panel, then we may not.  But we might get to them.

20   But I will not make you do witnesses.

21          MR. S. KULWIN:  We're going to sit down for jury

22   instructions, if that's okay.

23          THE COURT:  Go right ahead.

24          So, you gave me some introductory instructions at

25   Exhibit F that were agreed to.  I am not going to use those

1    specific instructions.  I give my own set and my own comments

2    which cover these issues.  But I do not read from formal

3    instructions.  So, I will give my own set of comments to them

4    at the beginning.

5           MR. S. KULWIN:  That's fine.  No objection.

6           THE COURT:  Agreed Instruction 2 -- which is not

7    really agreed; there is an objection -- this is the functions

8    of the Court and the jury.

9           I will give the pattern instruction in its entirety,

10   including, "Do not allow sympathy, prejudice, fear or public

11   opinion to influence you."  Given the media attention this is

12   likely to get, that is an appropriate instruction, and I will

13   give that in its entirety.

14          Agreed 3.  I will put you both at ease.  In 11 years,

15   I have never asked a witness a question in front of the jury,

16   and I do not plan on doing your jobs for you.  So, No. 3 will

17   not be necessary.

18          No. 4, evidence, is agreed and I will give.

19          Do you expect there to be any facts that you want me

20   to take judicial notice of?

21          We can address these, again, at the end of the trial,

22   but I would be surprised here --

23          MR. S. KULWIN:  Not that I can think of.  But I just

24   want it just in case.

25          THE COURT:  Of course.  Of course.

1        So, we will revisit that if there is anything for

2   judicial notice.

3        The Instruction 5, I will add the "interim."  They

4   are called interim statements, not intermittent statements.

5   So, the modification should be made.

6        Mr. Kulwin, I am going to ask if you would please

7   make all these changes that I am ruling on now, and then I am

8   going to have you e-mail a set back to me that we will be able

9   to work off of.

10       The set that you e-mail back to me should include

11  everything I have ruled on today, and any ones that I keep

12  under advisement, you should note that they are under

13  advisement.

14       MR. S. KULWIN:  Do you want a red-line version,

15  Judge?

16       THE COURT:  I do not need a red-line, because I have

17  ruled and will double-check those.

18       MR. S. KULWIN:  Okay.

19       THE COURT:  6, 7, 8, 9, I will give.  They are all

20  agreed.

21       10 deals with believability.  You disagree on whether

22  or not the witness' age should be a factor there.  Are there

23  any juvenile witnesses here?

24       MR. NOVACK:  No.  At least not by age.

25       (Laughter.)

1        THE COURT:  Well, I am not going to make those kind

2    of factual findings.

3            (Laughter.)

4        THE COURT:  I do not know why that would be relevant.

5    I can wait and see if something comes up.  But I do not --

6    typically, the witness' age is relevant when you have a really

7    young witness.

8            MR. S. KULWIN:  We're opposed to it.  So, it's fine.

9        THE COURT:  I do not know why you want --

10            MR. NOVACK:  She -- I'm sorry.  I don't mean to say

11    "she."  Mrs. Goldberg, the plaintiff, is in her 80s, I

12    believe.

13            MR. S. KULWIN:  87.

14            MR. NOVACK:  87.

15        THE COURT:  Okay.  I will wait and see.

16        11, 12, 13 of your agreed; 14, 15 of your agreed, I

17    will give all of these, if appropriate.

18        16, you have an instruction for stipulated summaries

19    and for not stipulated summaries.  Do you have both sets of

20    summaries?  Do you have ones that are stipulated, ones that

21    are not?

22            MR. S. KULWIN:  I don't think we have any stipulated

23    summaries, Judge.

24        THE COURT:  Okay.

25            Mr. Novack?  No?

 1          MR. NOVACK:  We don't.

 2          THE COURT:  So, I will use the "not stipulated,"

 3   unless something comes up during trial.

 4          17, 18, 19, 20, 21, 22, 23, I will give.  They are

 5   agreed to.

 6          Agreed 24.  I have never given this Bates number

 7   instruction before.  I do not have a problem with it.  I think

 8   I will wait and see if you refer to things by Bates numbers,

 9   if it is relevant, rather than just confusing the jury.

10          MR. S. KULWIN:  I thought --

11          MR. NOVACK:  I think you are going to see that we

12   will because that's how -- that's the only way some of these

13   pages are numbered.

14          MR. S. KULWIN:  One second, Judge, if I may.

15          (Brief pause.)

16          MR. S. KULWIN:  Could I have one moment on this one,

17   Judge?

18          THE COURT:  Sure.

19          (Brief pause.)

20          MR. S. KULWIN:  That's fine.

21          THE COURT:  Agreed 25, cautionary instruction before

22   recess.  I am not going to use this particular one, but I am

23   always cautioning them about not contacting people, not using

24   social media.  I will tell them that at the end of every day,

25   but I am not going to use or read from this particular

1    instruction.

2            Agreed 26, I will wait and see if I -- I may or may

3    not give that.  I am going to keep that under advisement.

4    There are other instructions that address that.

5            Agreed 27, I will give.

6            Agreed 28, if we use deposition designations, I will

7    give.

8            Agreed 29, I will keep that under advisement and see

9    if it is relevant.

10           MR. S. KULWIN:  I can tell you, Judge, that we will

11   be reading some of those --

12           THE COURT:  Okay.

13           MR. S. KULWIN:  -- I think.

14           MR. J. KULWIN:  Judge --

15           THE COURT:  Agreed 30, I will put you at ease, as

16   well.  I have never had to use Agreed 30 about cautioning

17   lawyers in front of the jury.  It is not my practice.  I do

18   not want to have to scold either of you, and I certainly do

19   not want to have to do it in front of the jury.  So, chances

20   are we will not need that.

21           MR. J. KULWIN:  Judge, on the ones that you are

22   taking under advisement, do you want those included in the set

23   that we give you?

24           THE COURT:  Yes, please.

25           And you can just put at the bottom "Under

1    Advisement."

2            MR. J. KULWIN:  Thank you.

3            THE COURT:  Agreed 31, 32, 33 and 34, I will give.

4            That takes care of the agreed instructions.

5            Plaintiff's 1, I have ruled on with Record 296.  I am

6    giving the pattern instruction.  That addresses Plaintiff's 1,

7    Plaintiff's 6, Defendants' 2 and Defendants' 5, what is at

8    Record 296.

9            MR. SHONKWILER:  I'm sorry, for number -- oh, I'm

10   sorry.  I understand.  No. 2, you've ruled on.

11           THE COURT:  Plaintiff's 3, all litigants are equal

12   before the law.  I will give Plaintiff's 3.  It is the pattern

13   instruction.

14           I am sustaining the objection to Defendants' 4, which

15   is the counterpart.  I do not think it is accurate here to say

16   that plaintiff and defendant are from the same station of

17   life.

18           I am going to use Plaintiff's 3, again, which is the

19   pattern and an accurate statement of the law.

20           Plaintiff's 6, as I have already indicated, I issued

21   a written opinion on that, that is at Record 296.

22           Plaintiff's 9 --

23           MR. S. KULWIN:  We're going to withdraw that one,

24   Judge.

25           THE COURT:  -- is withdrawn.

1          MR. S. KULWIN:  Under the theory of -- any complaint

2     that they ultimately see, if you decide, will be redacted to

3     take things like that out.

4          THE COURT:  That is exactly right.

5          So, I will note that Plaintiff's 9 is withdrawn.

6          Plaintiff's 10.  What is the relevance of this:

7     Other potentially liable parties?

8          MR. S. KULWIN:  Here's the relevance, Judge.  We get

9     a lot of questions, almost from everybody --

10          THE COURT:  Pull the microphone closer towards you,

11     please.

12          MR. S. KULWIN:  I'm sorry.  I'm just doing everything

13     wrong today.

14          (Laughter.)

15          MR. S. KULWIN:  We get a lot of questions, Judge,

16     "Why isn't this a class action?  Why didn't you bring it as a

17     class action?"  I sometimes wonder why I didn't bring it as a

18     class action.  But I remember at the time, we researched it

19     and there were reasons why we didn't do it that way back in

20     the day.

21          We get questions like, "Why didn't you sue the

22     brokers?  Why isn't Trump personally being sued?"

23          All of that is speculation that can be harmful to the

24     jury focusing on what they should be focusing on.

25          THE COURT:  I am not sure this will be necessary.  I

1    will hear the evidence and how things come in.  If an issue is

2    raised that makes this appropriate -- I will keep this under

3    advisement until later.

4            Plaintiff's 13, I have already ruled on.  I ruled on

5    this on April 29th.  I do not --

6            MR. S. KULWIN:  Judge --

7            THE COURT:  It is in Record No. 290.

8            Yes?

9            MR. S. KULWIN:  Can I go back to 10 for a second?

10           THE COURT:  You may.

11           I am taking it under advisement.

12           MR. S. KULWIN:  Right.

13           Is there another one that you were thinking about

14   giving that I'm not -- maybe I missed it -- that deals with

15   this -- what you are talking about?

16           Are you going to tell the jury that, "You are

17   considering the contract claim and that there's two other

18   claims that -- " and you said why isn't that covered by just

19   focus on --

20           THE COURT:  On the general instruction that, "Your

21   job is to consider the evidence before you, and your job is to

22   -- " "here are the claims and here are the elements of the

23   claims."

24           MR. S. KULWIN:  I got it.  Okay.  So -- all right.

25   Great.  So, this one's under advisement.  That's fine.

1           THE COURT:  That one is under advisement.

2           MR. S. KULWIN:  Okay.

3           THE COURT:  13 I have already ruled on with Record, I

4   believe it is, 290.

5           Plaintiff's 14, I am sustaining the objection.  This

6   is more like an opening statement than a summary of the

7   claims.

8           Corresponding with this is Defendants' 1, which

9   really is an opening statement.  I am sustaining the

10  objection.

11          The purpose of the summary is not to argue your case.

12  You will have the opportunity to do that.  The purpose of the

13  summary instruction is to give them a road map that, "Here are

14  the claims that are before you, and I will instruct you on

15  each claim in a moment."

16          Defendants' 7, I am going to give with modification.

17  This will be the summary of the claim.

18          MR. S. KULWIN:  May I ask a question?

19          THE COURT:  Yes.

20          MR. S. KULWIN:  When you say -- are you going to send

21  us the modification that we'll see?  For example, in the first

22  paragraph, it says "misrepresenting and"; it should be "or."

23  Things of that nature.

24          THE COURT:  I was about to go through that.

25          MR. S. KULWIN:  Oh, okay.

 1          THE COURT:  Where did you say "and" instead of "or"?

 2          MR. S. KULWIN:  Well, it should be, "Plaintiffs claim

 3    defendants induced her to sign the purchase agreement -- " I'm

 4    going to slow down.

 5          "Plaintiffs claim that defendants induced her to sign

 6    the purchase agreements by misrepresenting and/or -- "

 7          THE COURT:  That is fair, yes.  I will make that

 8    modification.

 9          The second paragraph --

10          MR. S. KULWIN:  If I can just read it?

11          THE COURT:  -- will read, "Defendants deny that they

12    misrepresented or concealed information."

13          I am not going to put the rest of the paragraph in.

14    That is really argument.

15          The third paragraph is, "You will be considering -- "

16    again, depending on --

17          MR. S. KULWIN:  Two.

18          THE COURT:  -- if I -- it will be two, unless I send

19    an advisory opinion to them.  And if I send -- if I want an

20    advisory verdict from them on the other claims, I am not going

21    to tell them it is advisory.  I am going to send it to them as

22    if they are giving a verdict on it.

23          If I do not do an advisory, it will read, "You will

24    be considering two claims alleged by plaintiff."  I will leave

25    the first as is; the second as is; take out the third; and,

1    then, leave in the last two sentences.

2            So, that is the modified Defendants' 7.

3            MR. NOVACK:  You'll just need to change that last

4    line to "two claims"?

5            MR. S. KULWIN:  Yes.

6            THE COURT:  Yes.

7            So, I will give Defendants' 7 with those

8    modifications.

9            Plaintiff's 15, I am sustaining the objection.  This

10   is argumentative and not necessary.

11           Plaintiff's 16, the same thing.  I am sustaining the

12   objection.  This is really opening statement material, very

13   one-sided.  I am not going to give Plaintiff's 16.

14           Plaintiff's 17, this corresponds with Defendants' 8.

15           I have ruled -- I am looking at Element 2 on

16   Plaintiff's 17 dealing with "defendants intended for

17   prospective buyers to rely on the deceptive or unfair business

18   practice."

19           Now, I have already ruled that there is not a

20   separate unfair business practice -- in the ethical sense --

21   claim here.  I have ruled on that in writing, that it is part

22   of the deceptive practice.  So, that language would come out.

23           MR. S. KULWIN:  The only problem with that, Judge,

24   is -- and maybe I'm jumping ahead, is -- that if I read your

25   ruling yesterday correctly, I thought it was pretty clear that

1 the defendants can be held liable for an innocent

2 misrepresentation.  And that might confuse the jury when you

3 say only deceptive.

4    See, if it's deceptive and/or unfair -- unless we

5 define "deceptive," as we've attempted to do, as including an

6 innocent misrepresentation.  That I'm fine with.

7    MR. SHONKWILER:  Your Honor, can we be heard on this

8 briefly?

9    THE COURT:  Yes.

10    MR. SHONKWILER:  Your Honor's summary judgment

11 opinion, which quotes a rather detailed concession by

12 plaintiffs at that time -- which was not an inadvertent one.

13 It was an accurate statement of the theory of the case under

14 the Fraud Act and the Land Sales Act.  And your Honor not only

15 quoted them, but also elaborated on it and explained why, in

16 your eyes, it was an accurate description of the theory of the

17 case.

18    It's Page 11 of the -- if you are looking at the

19 Westlaw version of the summary judgment opinion, it's Page

20 star 11.

21    THE COURT:  I do not have it before me.  So --

22    MR. SHONKWILER:  Okay.

23    And I can read a little bit of it, and then I'll just

24 explain in my own words.

25    But this is quoting -- the opinion, quoting --

1    defendant:  "Plaintiff's theory of liability for each of these

2    counts -- " and it's referring to the Interstate Land Sales

3    Act and the fraud count -- "is that defendants knew all along

4    that they would never deliver the ownership of the hotel

5    property and operations to the HCU buyers and, therefore,

6    misrepresented, failed to disclose, omitted and/or concealed

7    material information in connection with the sale of the HCUs."

8           And, then, the five paragraphs that follow is the

9    Court saying more specifically -- and, then, what you've done

10   here is broken down their allegations of the changes that were

11   made in 2007 by subject matter into the health club, the

12   rental program, the operating budget and the common elements

13   changes.

14          And for each of those changes, you've explained that

15   the claim they've alleged here is that we represented X, but

16   concealed that we were going to do Y.  And that's the way it's

17   phrased each time here.  And that's your Honor's reading of

18   Paragraphs 81 and 82 of the common -- of the Fraud Act claim.

19         There isn't any way, under the theory that's alleged

20   in this case, that a representation of the plans that

21   defendants had for the property before the purchase agreement

22   was signed could be an objective, untrue statement or

23   misrepresentation unless the defendants' plans at the time

24   they made those statements were different, were otherwise.  An

25   innocent or unknowing misrepresentation is possible under the

1    Fraud Act, as you've explained, and so is an unfairness

2    theory.

3            Deception, unfairness and misrepresentation under the

4    Fraud Act can take a variety of forms.  In this case, the form

5    is a knowing misrepresentation of plans for the property.  A

6    statement of one's plans cannot be -- and certainly not the

7    way it's been articulated here in this complaint -- anything

8    but a knowing statement of an objectively untrue fact.  And

9    for that to be so, the plans had to be different at the

10   time -- there had to be different plans in place -- other than

11   what was represented.

12           This all --

13           THE COURT:  Legally, Mr. Kulwin, an innocent

14   misrepresentation under the Supreme Court case in Illinois can

15   be actionable under the Illinois Consumer Fraud Act.

16           MR. S. KULWIN:  Right.

17           THE COURT:  What I am hearing is that that has not

18   been the theory of your case and that has not been what the

19   defendants have been defending against here.

20           MR. S. KULWIN:  Well, you know, Judge, that's just

21   not accurate.  Okay?

22           First of all, our theory of the case has always been

23   that they made a misrepresentation or failed to disclose and

24   concealed.  We've always said that.  We submitted, in this

25   case, negligence instructions and things of that nature

1   because we believed -- we believed -- that an innocent

2   misrepresentation could be actionable.

3            THE COURT:  Well, negligence would not be innocent.

4            MR. S. KULWIN:  Well, it's innocent -- yeah, sure it

5   would be.  They made a misrepresentation without looking into

6   it, without thinking about it, and then it turned out to be

7   untrue.

8            You've accurately stated the law.  Okay?

9            We have pursued that theory all along.  And for them

10  to say that they're surprised is ridiculous, because our

11  expert is going to testify that there were misrepresentations,

12  without ever saying there's intent or anything like that.

13           Our client talked about it in her deposition.  We

14  cross-examined their witnesses.  We argued it in summary

15  judgment.  They have been on notice, number one.  And, number

16  two --

17           THE COURT:  I do not think you argued an innocent

18  misrepresentation --

19           MR. S. KULWIN:  We argued --

20           THE COURT:  -- in the summary judg- -- let me finish.

21           MR. S. KULWIN:  Okay.  I'm sorry.  You are right.

22           THE COURT:  -- in the summary judgment.

23           MR. S. KULWIN:  We respectfully disagree, but we

24  argued -- we argued -- that we didn't have to prove that they

25  knew in advance.

1      But be that as it may, they're not prejudiced in any

2  way.  And there's nothing in the rules that bars us from

3  getting our case heard, as the law states.  And you've stated

4  it very clearly.  That's why you rejected their instruction.

5  The instruction that you said, was it can be either-or.

6      What you said in your motion to dismiss was very

7  clear.  We went back and looked at it.  Okay?  You said, if I

8  can use very colloquial language, hey, guys -- plaintiffs --

9  you can't conceal something unless you know it.  So, you have

10  to know it.  You went on to say, so, you have to prove you

11  knew it's for failure to disclose or misrepresented.  You said

12  you can prove it by proving they knew it and failed to

13  disclose or that they misrepresented.

14      The "or that they misrepresented" is part of our

15  theory.  We've pursued it.  They're not prejudiced.  There's

16  nothing they could have done differently.  What would they

17  have done differently in the course of the case?  Say they

18  didn't make the misrepresentation?

19      MR. SHONKWILER:  Your Honor --

20      MR. S. KULWIN:  This case is about two things, and

21  it's always been about two things.  Their argument has

22  consistently been it's an immaterial misrepresentation.  And

23  we've defended their defense by saying it is material.

24      THE COURT:  Okay.

25      Here is what I want you to do:  By Monday at noon, I

1    would like you to file something with the Court -- because I

2    do not know the record; I do not know what evidence you have

3    developed -- where it is clear that you have pursued this

4    innocent misrepresentation theory.

5            And, then, by Wednesday, May 8th at noon, file your

6    response.

7            MR. S. KULWIN:  May I be heard very --

8            THE COURT:  Because under the law, you certainly

9    could pursue such a theory, but the question is unfair

10   surprise at this late hour, which would be a shift to say all

11   along you have been pursuing intentional misrepresentations

12   and now you want to switch to an innocent.

13           MR. S. KULWIN:  Well, hold on a second.  If I may be

14   heard on that, Judge?

15           THE COURT:  You may, on May 6th at noon.  So, file

16   something.

17           MR. S. KULWIN:  With respect, Judge, may I briefly be

18   heard before we have to start briefing this?  Please.

19           THE COURT:  No.  Just file something on this.  We are

20   never going to get through things.  I only have 15 minutes

21   left.

22           You may be heard, and I will hear from you more when

23   you come back next Thursday.

24           Plaintiff's 18 -- so, I will keep Plaintiff's 17

25   under advisement.

1          Plaintiff's 18 and Defendants' 9 go together.

2          I am not going to give Plaintiff's 18, and I am

3     sustaining that for the reasons in my recent ruling on

4     knowledge.

5          I am going to give a modified version of Defendants'

6     9, which I will either issue or give to you next Thursday.  I

7     will probably issue it.  So, it will be a modified version,

8     consistent with my recent ruling.

9          Plaintiff's 19 and Defendants' 10 go together.  This

10    is regarding reliance.

11         My notes are hard for me to decipher, so I am going

12    to give you -- I will take this under advisement, and I will

13    give you -- a revised version of Defendants' 10, again,

14    consistent with my prior rulings on this particular element.

15         Plaintiff's 21, which deals with damages, and

16    Plaintiff's 38 go together -- also deals with damages -- and

17    Defendants' 11.  Those three are damages that go together.

18         Mr. Kulwin, is there any objection to, for

19    consistency's sake, calling the damages you are seeking

20    "actual" rather than "compensatory"?

21         Because under the law, the compensatory and the

22    actual are the same.  And in some instructions we use

23    "actual"; in some we use "compensatory."  I think "actual" is

24    a more understandable word to the jury.

25         Is there any objection to modifying your 38, which is

1    the same as Pattern 3.10, and calling damages "actual"?

2              MR. S. KULWIN:  I think, Judge, that given that her

3    testimony is going to be about her stress, her anxiety and

4    things of that nature, the jury might interpret the word

5    "actual" as if there's no doctor, it can't be actual, you

6    know.  And that's my problem with it.

7              THE COURT:  If there is no, what?

8              MR. S. KULWIN:  Doctor.  No medical evidence.

9              THE COURT:  But the instructions would address that.

10             I see what you are saying.

11             MR. S. KULWIN:  That's why we say "compensatory."

12             They might give it a stricter version than is

13   required under the law.

14             MR. NOVACK:  Well, I think that's exactly the point,

15   though.  He's talking about the stress business that there's

16   going to be no evidence of.  The jury should know that there's

17   -- only actual damages can be compensated.

18             THE COURT:  Well, they are the same.

19             MR. S. KULWIN:  Right.  He just highlighted --

20             THE COURT:  All right.  Let me play with that and

21   see.  I am just trying to make it easier.  They are

22   compensatory.  Compensatory and actual are the same.

23             I am going to give Defendants' -- I am sorry,

24   Plaintiff's -- 38, which is Pattern 3.10.  I am sustaining the

25   objection to Plaintiff's 21 and Defendants' 11.  And I will

 1    let you know about the compensatory versus actual.

 2            Plaintiff's 22 is proximate cause, and this

 3    corresponds with Defendants' 12.  I am going to keep this

 4    under advisement and will give you some modified version of

 5    both.

 6            Plaintiff's 23 --

 7            MR. S. KULWIN:  I'm sorry, Judge, I missed 22.  Are

 8    you giving 22?

 9            THE COURT:  I am taking it under advisement.  I am

10    going to give some modified version, and I will let you know

11    what that is.

12            I am sustaining the objection to Plaintiff's 23 -- it

13    is not an accurate statement of the law -- for the reasons the

14    Court addressed in its ruling at Record No. 297 on knowledge.

15    The same -- I have already ruled on this, but just so you are

16    clear today -- Plaintiff's 24, Plaintiff's 25, Plaintiff's 26

17    and Plaintiff's 27, I am sustaining the objection to each of

18    those for the reasons in Record No. 297, where I addressed

19    knowledge.

20            Plaintiff's 28, I am sustaining the objection.  This

21    is very argumentative and stepping on the province of the

22    jury.  This is a jury decision.  You are free to argue it, but

23    it is not appropriate for an instruction.

24            Plaintiff's 29, I am not giving for the same reasons.

25    That goes hand in hand with Plaintiff's 28.

1      Plaintiff's 30, I am going to keep this under

2  advisement for the same reasons that I am going to wait and

3  see what you file on Monday or Wednesday -- and Wednesday --

4  because they go hand in hand.

5      Plaintiff's 31, definition of "unfair practice," I am

6  sustaining the objection for the reasons in Record No. 295.

7  This is not an unfair practice case in the sense of unethical

8  behavior.  That is not what this case has been about.

9      Plaintiff's 32 --

10      MR. S. KULWIN:  We're withdrawing that, Judge, in

11  light of what we filed yesterday.

12      THE COURT:  Okay.

13      32, and then 32-A, 32-B and 33, are you withdrawing

14  each of those in light of what you filed yesterday?

15      MR. S. KULWIN:  Yes.

16      THE COURT:  Okay.

17      So --

18      MR. SHONKWILER:  I don't think you're withdrawing 33.

19      MR. S. KULWIN:  No, we're not withdrawing 33.

20      THE COURT:  Plaintiff's 32, 32-A and 32-B are

21  withdrawn.

22      And Defendants' 13 goes along with that, the

23  definition for the Interstate Land Act.  I know you filed your

24  revised instructions at about 8:30 last night.  I am not ready

25  to address them, but I will, consistent with the ruling you

1   got at Record No. 292. So, you will get revised ones from me

2   on that before next Thursday.

3         The breach of contract claims, I am not going to

4   address today because that is only relevant if I decide to

5   send that issue to the jury.

6         MR. S. KULWIN: Your Honor, just very quickly, I

7   think that the brief that we're going to file on Monday is

8   also going to address the Interstate Act. It's the same

9   argument. They're arguing they're prejudiced. We're arguing

10   they're not. When you see our instructions, you'll see what I

11   mean.

12         THE COURT: What about the Interstate Land Act?

13         MR. S. KULWIN: Well, it's the same thing. Under the

14   law, which is completely uniform, there's no knowledge

15   requirement under the Interstate Land Act. It's a consumer

16   protection. We don't -- --

17         THE COURT: I have already ruled on that, though.

18         MR. S. KULWIN: Right.

19         THE COURT: I do not know that you need --

20         MR. S. KULWIN: Okay.

21         THE COURT: -- to address that further.

22         MR. S. KULWIN: You have ruled --

23         THE COURT: I just have not given you the revised

24   instructions, and I do not think you necessarily --

25         MR. S. KULWIN: All right.

```
 1            THE COURT:  -- followed my ruling at 292.  So, I will
 2    give you --
 3            MR. S. KULWIN:  Okay.
 4            THE COURT:  -- the instructions.
 5            There is no knowledge requirement.  It comes through
 6    materiality.  But I have already ruled on that.  Do not give
 7    me anything else on that.
 8            MR. S. KULWIN:  Okay.  Fine.  Thank you, Judge.
 9            MR. SHONKWILER:  I want the briefing to be as
10    productive as possible.  We're not only arguing, "You should
11    have said this is something different earlier."  The other
12    component to it is, your allegations are what they are and the
13    theory can only be one thing.
14            It's not -- it's inconsistent inherently with any --
15    they could argue -- for example, they might have said in a
16    brief at some point that they want to prove that this is a
17    negligence case, but it is impossible based on the claims that
18    are alleged in this case, the claims that have always -- that
19    have been litigated from Day One.
20            So, it's inherently inconsistent with their theory of
21    the case as they've alleged and pursued throughout the case,
22    not just the prejudice argument.  There's two components to
23    it.
24            THE COURT:  Okay.
25            Address both in your brief, and I will take it up
```

1    next Thursday.

2         It is 12:15, and I have a meeting.  So, I am going to

3    stop at this point, and we will finish up when you are here

4    next week.

5         Is there anything else that really has to be

6    addressed today?  Otherwise, I will give you additional time

7    next week.

8         MR. NOVACK:  Thank you very much, Judge.

9         MR. S. KULWIN:  What time next week, Judge?

10         THE COURT:  Whatever time my minute order says.

11         MR. S. KULWIN:  Okay.  Thanks, Judge.

12         THE COURT:  I think it is the afternoon, but I am not

13    a hundred percent sure.

14         MR. S. KULWIN:  Okay.  Whatever it is.

15         THE COURT:  So, whatever time it says.

16         All right.  So, we will pick up -- you have your

17    homework, and we will pick up next Thursday.  And you will get

18    some additional rulings from me before then.

19         Thank you.

20              *    *    *    *    *

21

22    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.

23

24

      /s/ Joseph Rickhoff                    May 7, 2013
25    Official Court Reporter