IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE GOLDBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09 C 6455 |
| ) | |
| 401 NORTH WABASH VENTURE LLC and ) | |
| TRUMP CHICAGO MANAGING ) | |
| MEMBER LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Following an approximately two week trial, the Court entered judgment in favor of Defendants 401 North Wabash Venture L.L.C. and Trump Chicago Managing Member, L.L.C. ("Defendants") on all four of Plaintiff Jacqueline Goldberg's pending claims. (R. 369.) On June 21, 2013, Ms. Goldberg moved for a new trial. (R. 374.) On August 23, 2013, the Court denied Ms. Goldberg's motion for a new trial, and also granted Defendants $48,223 in costs as the prevailing party. (R. 368, 369.) Before the Court is Defendants' motion for fees and costs pursuant to 28 U.S.C. § 1927, the Court's inherent authority, and/or the Illinois Consumer Fraud Act (the "ICFA"). (R. 391.) For the following reasons, the Court denies Defendants' motion for fees.

**LEGAL STANDARD**

**I.      Section 1927**

Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Fednav Int'l Ltd. v.*

*Cont'l Ins. Co.,* 624 F.3d 834, 838 n. 1 (7th Cir. 2010). A district court may impose Section 1927 sanctions when an attorney has "acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice"; pursued "a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound"; or "pursued a claim that is without a plausible legal or factual basis," which includes a failure "to dismiss claims that are no longer viable." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (citations omitted). Section 1927 requires objective bad faith, which includes "extremely negligent conduct, like reckless and indifferent conduct," but it does not require subjective bad faith as long as "the attorney's actions otherwise meet the standard of objective unreasonableness." *Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005). Courts have said that "harassment, unnecessary delay, needless increase in the cost of litigation, willful disobedience, and recklessly making a frivolous claim" may be bad faith. *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009). Ordinary negligence is not sufficient to constitute bad faith. *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1185 (7th Cir. 1992).

## II.     The Court's Inherent Authority

"Judges have inherent authority to impose sanctions for misconduct by litigants, their lawyers, witnesses, and others who participate in a lawsuit over which the judge is presiding." *S.E.C. v. First Choice Mgmt. Serv., Inc.*, 678 F.3d 538, 543 (7th Cir. 2012) (citations omitted). A court may invoke its inherent power even if procedural rules exist which sanction the same conduct. *Mach,* 580 F.3d at 502. In its discretion, a court may impose attorney fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Because of their potency, "inherent powers must be exercised with restraint and discretion." *Id*. at 44. A

court must "comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id*. at 51. The only significant difference between an award under Section 1927 and an award pursuant to the court's inherent power is that the former can only be against attorneys whereas the latter can be against an attorney, a party, or both. *Mi-Jack Prodcuts v. Int'l Union of Operating Engs., Local 150, AFL-CIO*, No. 94 C 6676, 1996 WL 149133, at *5 (N.D. Ill. Mar. 28, 1996).

### III.  Illinois Consumer Fraud Act

Illinois courts look to a number of factors in determining whether attorney's fees under the ICFA are appropriate, including, but not limited to: "(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions." *See Krautsack v. Anderson,* 223 Ill. 2d 541, 554, 308 Ill. Dec. 302, 861 N.E.2d 633 (Ill. 2006); *see also* 815 ILCS 505/10a(c) (the district court "may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."). The Court has considerable discretion in awarding fees under the ICFA. *See Demitro v. General Motors Acceptance Corp.,* 388 Ill. App. 3d 15, 19, 327 Ill. Dec. 777, 902 N.E.2d 1163 (Ill. App. Ct. 2009).

Under the ICFA, a defendant, as the prevailing party, must make a threshold showing of bad faith to recover attorney's fees. *See Krautsack,* 223 Ill. 2d at 559-60. Courts have not specifically defined "bad faith" in this context. The Illinois Supreme Court, for example, has stated that it is "unclear" whether there is a difference between "bad faith" under the ICFA and

the oppression standard used to assess the propriety of an award of fees adopted by the Seventh Circuit in *Door Systems, Inc. v. Pro–Line Door Systems, Inc*., 126 F.3d 1028 (7th Cir. 1997). *Krautsack*, 223 Ill. 2d. at 560. In *Door System*, the Seventh Circuit analyzed when a court should award fees under the ICFA, stating in relevant part:

> We think it reasonably plain that bad faith is too narrow a standard. Even if a suit is brought in good faith, it could be so lacking in merit or so burdensome to defend against as to be oppressive, in which event the defendant would have a powerful equitable claim to recover a reasonable attorneys' fee.

*Door System*, 126 F.3d at 1030. The Seventh Circuit further described an oppressive suit as "something that might be described not just as a losing suit but as a suit that had elements of an abuse of process, whether or not it had all the elements of the tort." *Id*. Although the Illinois Supreme Court was "not persuaded that [it] should adopt the rationale of *Door Systems*," it concluded that applying Illinois Supreme Court Rule 137's sanctions standard in this context "provides useful guidance to litigants and judges," but is too narrow. *Krautsack*, 223 Ill. 2d. at 560. As explained below, Defendants have not provided evidence of bad faith under any of these standards.

## ANALYSIS

Defendants contend that 18 U.S.C. § 1927, the Court's inherent authority, and/or the ICFA support an award of feeds and costs against Ms. Goldberg's lead counsel, Shelly Kulwin ("Ms. Goldberg's Counsel"), and/or Ms. Goldberg. (R. 395, Mem. at 2.) Defendants do offer separate arguments under Section 1927, the Court's inherent authority, and the ICFA, but instead offer general arguments which they believe warrant an award of fees and costs under each of these provisions. The crux of Defendants' main argument is that Ms. Goldberg's Counsel "was determined to get a jury trial" and therefore (1) manufactured allegations of damages that Ms. Goldberg could not seek or which had no plausible legal or factual support; and (2) "dishonestly

4

represented to the Court that Plaintiff was reserving her right to <u>affirm</u> the Purchase Agreements." (*Id*. at 1.) According to Defendants, Ms. Goldberg and her Counsel, "as a means to get a jury trial, litigated in bad faith and thereby unreasonably increased the cost of the proceedings by continuing to pursue purported 'damages' claims for which they knew or should have known they had no evidence." (*Id.* at 5.) Defendants also argue that Ms. Goldberg's Counsel behaved inappropriately during trial "to improperly capitalize on the jury trial" and then filed a frivolous motion for new trial. (*Id.* at 14, 17.) The Court disagrees that Ms. Goldberg and/or her Counsel acted in any manner warranting an award of fees and costs.

I. **Affirmance of the Contract as a Remedy**

Defendants dedicate most of their memorandum to arguing that Ms. Goldberg and her Counsel improperly misrepresented that they might elect to affirm the contracts at issue, while knowing Ms. Goldberg had no intention to seek affirmance in order to obtain a jury trial. This argument is misguided for numerous reasons. Perhaps most troubling, Defendants' affirmance argument focuses on Ms. Goldberg's ICFA claim and breach of contract claim, which were only two of four claims which Ms. Goldberg brought to trial, and only one of which went to the jury. The jury decided Ms. Goldberg's Land Sales Full Disclosure Act claim ("Land Sales Act") in addition to her ICFA claim. (R. 365.) The Court ruled on Ms. Goldberg's Illinois Condominium Act claim and her claim for breach of contract. (R. 368.) The Court struck Ms. Goldberg's jury demand as to the latter two claims because Ms. Goldberg only sought equitable relief on those claims and, therefore, was not entitled to a federal jury trial. (R. 201, 298.) By comparison, Ms. Goldberg sought compensatory damages, including emotional distress, for the Land Sales Act claim and her ICFA claim. (*Id.*; R. 268.) Whether Ms. Goldberg sought to rescind or affirm her

contracts – an election she eventually made before trial – was, therefore, not dispositive of her jury right on her Land Sales Act claim or her ICFA claim.

Notably, Ms. Goldberg only had a right to a jury trial on her ICFA claim here because Defendants removed her case to federal court. Ms. Goldberg originally filed her case in Illinois state court – a court which does not recognize a right to a jury trial under the ICFA. (*Id*. at 13.) The Seventh Amendment, however, provides a right to a jury trial in federal court for an ICFA claim. (*Id*.) Consequently, Defendants' argument that Ms. Goldberg defrauded the Court in an attempt to obtain a jury trial is misguided considering Ms. Goldberg's initial choice to file in state court.

Furthermore, as the Court previously noted, the law did not require Ms. Goldberg to elect her remedy – breach or affirmance – early in litigation. (R. 201 at 9-10 (citing *Olympia Hotels Corp. v. Johnson Wax Develop. Corp*., 908 F.2d 1363, 1371-72 (7th Cir. 1990); *Williamson?Company, LLC v. AML & Assocs., Inc*., No. 09 C 2631, 2009 WL 2391841, at *2 (N.D. Ill. Aug. 3, 2009); *Donaldson v. Pharmacia Pension Plan*, 435 F. Supp. 2d 853, 869 n. 5 (S.D. Ill. 2006)). Her election via her itemization of damages, therefore, did not reveal some truth, as Defendants contend, that Ms. Goldberg never intended to seek any damages other than rescission. (Mem. at 9-10.) Ms. Goldberg and/or her Counsel's decision to plead both remedies and then elect rescission prior to trial does not equate to the type of bad faith that justifies an award of costs.

## II. Ms. Goldberg's Pursuit of Other Damages

Defendants also contend that Ms. Goldberg pursued baseless "loss of use" and emotional distress damages merely to obtain a jury trial. Rather than establishing some bad faith on Ms. Goldberg and/or her Counsel's part regarding these damages claims, Defendants' arguments merely rehash many of the arguments the Court repeatedly addressed before and during trial about what claims and types of damages Ms. Goldberg could present to the jury. (*See, e.g.,* R. 201, 298, 363.) The fact that Ms. Goldberg pursued emotional damages and "loss of use" damages, yet failed to support either theory with significant evidence does not justify an award of fees. Indeed, the Court declined to allow Ms. Goldberg to argue her "loss of use" damages to the jury in part because she had not previously sought or itemized these damages. (R. 325 at 4.) The Court also concluded that Ms. Goldberg failed to lay sufficient foundation to support her "loss of damages" claim. (Trial Tr. at 1367-1383.) Defendants fail to show that Ms. Goldberg pursued either of these theories frivolously or without any basis, even if Ms. Goldberg's counsel failed to sufficiently develop these theories before or during trial. *See, e.g., Krautsack*, 223 Ill. 2d. at 565 (concluding that plaintiff did not act in bad faith because, even though the trial court concluded that the evidence at trial did not support his theory, the plaintiff based his argument on certain deposition testimony).

Furthermore, regarding her emotional damages claim, Ms. Goldberg and her real estate attorney both testified – though in a very limited fashion – about the distress Ms. Goldberg suffered as a result of Defendants' alleged fraud. Indeed, as noted by Defendants, Ms. Goldberg testified during her deposition that she experienced anxiety and distress as a result of Defendants' conduct. (Mem. at 13.) If the jury had found in favor of Ms. Goldberg on her ICFA or Land Sales Act claim, they would have deliberated regarding her emotional damages claim,

7

based on the instructions given by the Court. Even if her claim for emotional distress damages was "an exceedingly weak claim from the start" as Defendants contend, a weak claim is not a baseless claim. (R. 417, Reply. at 11.) Any failure on Ms. Goldberg's Counsel's part to build a stronger case for emotional distress damages does not rise to the level of conduct that supports an award of damages. *See, e.g., Mi-Jack,* 1996 WL 149133 at *10 (finding that carelessness or negligence in eliciting evidence of lost profits did not rise to the level of bad faith). Defendants, therefore, have not shown that Ms. Goldberg or her Counsel defrauded the Court or acted in bad faith through the remedies and damages she sought.

### III. Ms. Goldberg's Counsel's Misconduct at Trial

Defendants further argue that Ms. Goldberg's Counsel's misconduct during the trial warrants an award of fees. (Mem. at 14-16.) Specifically, Defendants contend that Ms. Goldberg's Counsel's "closing argument was laden with inappropriate, mocking and sarcastic remarks as well as personal attacks against Mr. Trump and his counsel." (*Id*. at 14.) Defendants do not explain, however, how any such remarks made during closing argument demonstrate that Ms. Goldberg's Counsel brought the lawsuit frivolously or acted in bad faith. These comments also did not result in any needless delay or increase the litigation costs. Furthermore, any inappropriate comments – most of which Defendants did not object to at trial – also did not harm Defendants as they prevailed on all counts. The comments which Defendants cite, therefore, did not rise to the type of egregious conduct warranting an award of fees, such as filing motions and sworn affidavits containing false allegations. *See, e.g., Tygris Asset Fin. Inc. v. Abboud*, No. 10 C 339, 2011 WL 5184437, at *4 (N.D. Ill. Nov. 1, 2011) (awarding fees under Section 1927 because the plaintiff multiplied the proceedings through filing baseless pleadings and affidavits that flatly contradict documentary evidence).

Defendants also misguidedly argue that Ms. Goldberg's Counsel's objection to the admission of Defendants' Exhibit 522 – a letter from Ms. Goldberg's real estate agent, Terry Vogue, to Defendants' counsel – was baseless. (*Id*. at 14-15.) Exhibit 522 showed that Ms. Goldberg, via her counsel, attempted to amend a provision in the contract that gave Defendants "sole and exclusive" discretion to change the common elements. As explained in the Court's opinion denying Ms. Goldberg's motion for a new trial, this exhibit "was relevant to Ms. Goldberg's level of sophistication, what was material to her as a purchaser, and her awareness of the provision in the Purchase Agreements giving Defendants the ability to make changes, which related to whether Defendants deceived Ms. Goldberg." (R. 397 at 50.) Ms. Goldberg challenged the admission of Exhibit 522, in part, on hearsay grounds. Because Defendants established that Ms. Goldberg's real estate agent made the statements within the scope of her agency relationship with Ms. Goldberg, the Court admitted the exhibit as non-hearsay pursuant to Rule 801(d)(2)(D).

Defendants do not offer any evidence that Ms. Goldberg's Counsel acted in bad faith or delayed proceedings by zealously advocating for his client by attempting to prevent admission of a significant exhibit which cut against his client. At most, Defendants seem to argue that Ms. Goldberg's Counsel misled the Court by arguing that his client's testimony would provide that she did not know or endorse Exhibit 522. (Mem. at 16.) Ms. Goldberg, however, did, in fact, testify consistently with her Counsel's representations. (*Id.* (citing Trial Tr. at 1490).) Defendants, therefore, confusingly claim that testimony from Ms. Vogue, rather than Ms. Goldberg, shows Counsel's misconduct. Specifically, they argue that testimony from Ms. Vogue that Ms. Goldberg was aware of Exhibit 522 and had discussed it with Ms. Vogue demonstrates that Ms. Goldberg's Counsel's objections to this exhibit were "factually baseless." (*Id*.)

Defendants do not offer any evidence, however, that Ms. Goldberg's Counsel knew prior to Ms. Vogue's testimony that she would testify contradictorily to his client. There is no evidence that Counsel's objection was wholly baseless, in either fact or law. Defendants' speculation regarding this single exhibit does not support a claim for fees.

**IV.    Ms. Goldberg's Theory "Was Implausible from the Get-Go"**

Defendants argue that Ms. Goldberg and/or her Counsel made dishonest representations "from the get-go" about the evidence she intended to put forth on trial and that her evidence on liability was "insufficient as a matter of law." (Mem. at 16.) These arguments conflate a failure to prevail at trial with a frivolous, baseless claim that should never have been brought in the first place. (*See, e.g.,* Reply at 25 ("Thus . . . the absence of evidence at trial to prove a fact that was essential to each and every one of Plaintiff's legal theories meant that the theories were implausible 'from the get-go.'").) Here, Ms. Goldberg's claims survived both a motion to dismiss and a motion for summary judgment. Indeed, although the Court and the jury found that there was not sufficient evidence at trial for Ms. Goldberg to prevail, the Court at summary judgment found that issues of material fact existed which required a trial. (R. 170, Sum. Jgmt. Op.) Significantly, Defendants even concede that, based on Seventh Circuit law, "it would be unusual for a trial court to deny summary judgment and later hold that a suit was frivolous." (Reply at 26 (citing *eBeau v. Libbey-Owens-Ford Co.,* 799 F.2d 1152 (7th Cir. 1986).)

In its summary judgment opinion, the Court analyzed and cited to deposition testimony from Donald Trump, Sr. and other current and former Trump executives. (*Id.*) The Court noted that "[b]olstering Plaintiff's theory of the case is the testimony of various Trump witnesses who could not recall important dates or time periods relating to the Fourth Amendment, and who offered what the jury could find are unsubstantiated reasons supporting the changes made in the

Fourth Amendment." (Sum. Jgmt. Op. at 40.) The Court also concluded that "[a]lthough Plaintiff has not offered direct evidence to support her claims, she has nonetheless met her burden by relying on numerous pieces of circumstantial evidence that she strings together to provide a sufficient evidentiary foundation for her claims." (*Id*. at 41.) Far from deeming Ms. Goldberg's claims as frivolous and wholly baseless, the Court concluded that there were disputed issues, and a potentially viable circumstantial case, which it could not resolve at the summary judgment stage. Furthermore, the Court at that stage could not weigh any conflicting evidence or make credibility determinations. *See, e.g., Omnicare, Inc. v. UnitedHealth Grp., Inc*., 629 F.3d 697,704-05 (7th Cir. 2011). The fact that the Court and the jury, after weighing the evidence elicited at trial and evaluating the credibility of the witnesses, concluded that Ms. Goldberg did not carry her burden does not mean that her claims were baseless from the inception of this lawsuit.

Indeed, failing to ultimately prevail does not equate to bad faith or mean that plaintiff's theory of liability was implausible, as Defendants contend. (Mem. at 17.); *see, e.g., Olson v. Reynolds*, 484 Fed.Appx. 61, 65 (7th Cir. 2012) ("although Reynolds ultimately abandoned or lost his counterclaims and many of his affirmative defenses, this does not require a finding that these pleadings were implausible when he filed them or that he had pursued them unreasonably"). In *Krautsack*, for example, the court declined to award fees under the ICFA concluding that plaintiff did not act in bad faith despite pursuing an "uncommon" theory of liability. *Id*. at 564-66. In *G.M. Sign, Inc. v. Elm Street Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 771 (N.D. Ill. 2012), the court did not find bad faith under the ICFA when a plaintiff filed a "nearly identical suit" to a suit which it brought, and which a court dismissed, two years prior. This is not a case where there was "no conceivable basis" for Ms. Goldberg's claims. *Riddle &*

*Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (awarding fees under Section 1927); *see also Claiborne v. Wisdom*, 414 F.3d 715 (7th Cir. 2005) (issuing sanctions under Section 1927 because the plaintiff's counsel did not make a reasonable inquiry before bringing her suit, which she later voluntarily dismissed because it lacked any factual basis). Defendants have not shown that Ms. Goldberg's claims were wholly implausible or baseless to justify an award of fees.

**V.    Ms. Goldberg's New Trial Motion**

Defendants also contend that Ms. Goldberg and her Counsel "further extended and complicated the matter with a frivolous post-trial motion for new trial and 40-page brief in support thereof." (Mem. at 17.) Once again, Defendants seem to confuse Ms. Goldberg's failure to prevail on her motion with the type of frivolity that might support an award of fees. Furthermore, Defendants concede that Ms. Goldberg needed to argue that the Court's and jury's verdicts were against the manifest weight of the evidence to preserve the issue for appeal.[1] (*Id*. at 18.); *see also Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006) (holding that a failure to move for new trial or judgment as a matter of law after jury returned verdict precluded the party from seeking a new trial on appeal on the basis of insufficiency of the evidence). Defendants confusingly argue, however, that despite this necessity, Ms. Goldberg's argument was "so frivolous and meritless that there is no legitimate appeal on this point to preserve." (*Id.*) Notably, Ms. Goldberg has in fact filed a notice of

---

[1] Defendants attempt to change course in their reply brief by arguing that Ms. Goldberg did not need to bring her new trial motion in order to preserve this issue for appeal (Reply at 20-21). Defendants waived this argument, however, by not raising it until their reply and instead asserting the opposite contention in their initial brief. (Mem. at 18 ("Thus, while Plaintiff did have to bring this part of the New Trial Motion to preserve the issue for appeal . . .")); *see, e.g., See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 571 (7th Cir. 2012). Notably, even if the Court considered Defendants' tardy argument, they would not prevail because the case upon which Defendants rely is inapposite. Indeed, *Fuesting v. Zimmer, Inc*., 448 F.3d 936, 940-42 (7th Cir. 2006), relied upon by Defendants, relates to the preservation for appeal of objections to the admission of evidence, not whether a party must file a post-trial motion to preserve an appeal based on the sufficiency of the evidence. In fact, in *Fuesting*, the Seventh Circuit specifically distinguished the case before it from an appeal regarding the sufficiency of the evidence. *Id.* at 941 (Like the *Unitherm* Court, Wright and Miller specifically identify a sufficiency of the evidence challenge as uniquely requiring a postverdict motion in order to preserve appellate review.).

appeal in this case, and the Court is not in a position to evaluate the frivolity of that appeal. (R. 410.) Ms. Goldberg clearly disagrees with the Court's and jury's weighing of the evidence, and, therefore, challenged that assessment with her motion for new trial in anticipation of her appeal.

Defendants also claim that the portions of Ms. Goldberg's new trial motion challenging the Court's pre-trial and trial rulings were a "complete and unnecessary waste of time." (Mem. at 18.) Although the Court agrees that many of Ms. Goldberg's arguments merely rehashed her prior arguments without any indication of any error by the Court or a change in the law, the inclusion of these arguments does not necessitate an award of fees. *Contra Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 -721 (7th Cir. 2006) (awarding Section 1927 sanctions when a party filed additional motions "aimed at changing facts and responding to the court's conclusions" after the court dismissed the case with prejudice). Indeed, a party may obtain a new trial based on the cumulative effects of many errors. *See, e.g., Christmas v. City of Chicago*, 682 F.3d 632, 643 (7th Cir. 2012) (citing *United States v. Powell,* 652 F.3d 702, 706 (7th Cir. 2011)). Furthermore, unlike the cases which Defendants cite to support their argument, Defendants offer no evidence that Ms. Goldberg knowingly asserted baseless arguments. (Mem. at 19.) Ms. Goldberg's new trial motion, therefore, does not support an award of fees.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for fees and costs.

**DATED: September 25, 2013**

ENTERED

_____
**AMY J. ST. EVE
United States District Court Judge**

13